1                  UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                    SAN JOSE DIVISION

4    UNITED STATES OF AMERICA,

5         PLAINTIFF,         CASE NO.  CR-11-846-EJD

6     VS.               SAN JOSE, CALIFORNIA

7   ASHVIN DESAI,          SEPTEMBER 19, 2013

8        DEFENDANT.      VOLUME 8

9                 PAGES 1289 - 1394

10

11             TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE EDWARD J. DAVILA

12          UNITED STATES DISTRICT JUDGE

13          A-P-P-E-A-R-A-N-C-E-S

14

15   FOR THE PLAINTIFF:   U.S. DEPARTMENT OF JUSTICE
                   BY:  MELISSA S. SISKIND
                     ROBERT KENNEDY

16             601 D STREET, NW, ROOM 7806
             WASHINGTON, D.C. 20579

17

18   FOR THE DEFENDANT:   MARTIN A. SCHAINBAUM APLC
                   BY:   MARTIN A. SCHAINBAUM

19                  ANDREW ALLEN
             351 CALIFORNIA STREET, NO. 800

20             SAN FRANCISCO, CALIFORNIA 94104

21    (APPEARANCES CONTINUED ON THE NEXT PAGE.)

22   OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, CRR
                       CERTIFICATE NUMBER 8074

23

24    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
   TRANSCRIPT PRODUCED WITH COMPUTER.

25

1

   A P P E A R A N C E S: (CONT'D)

2


3      ALSO PRESENT:                U.S. TAX DIVISION
                                    BY:  SCHYLON L. LANE, PARALEGAL
4                                   601 D STREET, NW
                                    ROOM 7115
5                                   WASHINGTON, D.C. 20004

6
                                    LAFFER & GOTTLIEB
7                                   BY:  MARTIN G. LAFFER, CPA
                                    9454 WILSHIRE BOULEVARD
8                                   SUITE 920
                                    BEVERLY HILLS, CALIFORNIA 90212
9

10                                  DEPARTMENT OF THE TREASURY
                                    INTERNAL REVENUE SERVICE
11                                  BY:  MICHAEL HELGESEN, AGENT
                                    1200 FIRST STREET NORTHEAST
12                                  SUITE 4200
                                    WASHINGTON, D.C. 20002
13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                          INDEX OF PROCEEDINGS

3      FOR THE GOVERNMENT:

4      **JAMES OERTEL**
            DIRECT EXAM BY MS. SISKIND              P. 1292
5           (RESUMED)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   SAN JOSE, CALIFORNIA                    SEPTEMBER 19, 2013

 2                    P R O C E E D I N G S

 3        (JURY IN AT 9:13 A.M.)

 4            THE COURT:  WE'RE BACK ON THE RECORD IN THE DESAI

 5   MATTER.  ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

 6        WOULD YOU LIKE TO CONTINUE WITH YOUR EXAMINATION?

 7            MS. SISKIND:  YES, THANK YOU, YOUR HONOR.

 8        (GOVERNMENT WITNESS, JAMES OERTEL, PREVIOUSLY SWORN.)

 9                 DIRECT EXAMINATION (RESUMED)

10   BY MS. SISKIND:

11   Q.  GOOD MORNING, MR. OERTEL.

12   A.  GOOD MORNING.

13   Q.  AT THE END OF THE DAY YESTERDAY WE WERE TALKING ABOUT YOUR

14   CALCULATIONS OF INTEREST INCOME AND HIGH BALANCE, CORRECT?

15   A.  CORRECT.

16   Q.  AND REMIND THE JURY WHAT THE SOURCES OF INFORMATION THAT

17   YOU RELIED ON TO CALCULATE INTEREST INCOME AND HIGH BALANCE?

18   A.  I RELIED ON THE HSBC SPREADSHEETS, THE ONES THAT WERE DONE

19   IN FREMONT; THE SCREEN SHOTS, AND THE -- I'M TRYING TO

20   REMEMBER.  I CAN'T REMEMBER THE THIRD ONE.

21   Q.  WELL, WAS THERE ANYTHING THAT WOULD REFRESH YOUR

22   RECOLLECTION WHAT THE THIRD ITEM THAT YOU RELIED ON WAS?

23   A.  YES.

24   Q.  AND WHAT WOULD REFRESH YOUR RECOLLECTION?

25   A.  THE HSBC INTEREST STATEMENTS, I FORGOT.
```

1    Q.   OKAY.  AND ARE THOSE THE ONES IN EXHIBIT 137?

2    A.   YES.

3    Q.   AND, NOW, YOU TESTIFIED YESTERDAY THAT YOU FOUND SOME

4    DISCREPANCIES IN THESE DOCUMENTS; CORRECT?

5    A.   RIGHT.

6    Q.   FOR EXAMPLE, TRANSPOSED, FLIPPED, START, MATURITY DATES?

7    A.   THAT'S RIGHT.

8    Q.   AND ONE INSTANCE WHERE THE WRONG CURRENCY WAS USED?

9    A.   THAT'S RIGHT.

10   Q.   IN THOSE SITUATIONS WHERE YOU FOUND DISCREPANCIES, WERE

11   YOU ALSO ABLE TO LOOK AT THE SCREEN SHOT FOR THE HSBC COMPUTER

12   SYSTEM FOR THAT PARTICULAR DEPOSIT?

13   A.   I ALWAYS RELIED ON THE SCREEN SHOTS WHERE THEY WERE

14   AVAILABLE FOR A PARTICULAR ITEM.

15   Q.   AND ACCORDING TO THE TESTIMONY OF MS. KATJU AND MS. KUMAR,

16   THOSE SCREEN SHOTS COME FROM THE COMPUTER SYSTEM AT THE BANK IN

17   INDIA; IS THAT CORRECT?

18   A.   THAT'S CORRECT.

19   Q.   AND HOW LONG HAVE YOU BEEN A REVENUE AGENT?

20   A.   TWENTY-SEVEN YEARS.

21   Q.   AND IN THOSE 27 YEARS, HAVE YOU REGULARLY USED BANK

22   RECORDS TO CALCULATE UNREPORTED INTEREST INCOME?

23   A.   YEAH.  WELL, USUALLY I DON'T HAVE TO CALCULATE IT BECAUSE,

24   QUITE HONESTLY, INTEREST INCOME DOES NOT COME UP VERY OFTEN IN

25   MY CASES.  IT'S USUALLY SOME BUSINESS INCOME OR SOMETHING LIKE

1     THAT.

2     Q.   WELL, I SHOULD ASK THE QUESTION DIFFERENTLY.  DO YOU

3     REGULARLY USE BANK RECORDS TO CALCULATE INCOME GENERALLY?

4     A.   OH, YEAH, YEAH, I DO THAT EVERY DAY.

5     Q.   AND DO BANK RECORDS SOMETIMES HAVE MISTAKES IN THEM?

6     A.   HAVE WHAT?

7     Q.   MISTAKES IN THEM?

8     A.   OH, YEAH, I HAVE EVEN FOUND THEM IN MY OWN.

9     Q.   BUT IN THIS CASE WAS THERE ANY TESTIMONY OR ANY EVIDENCE

10    INTRODUCED DURING THE TRIAL THAT WOULD CAUSE YOU TO THINK THAT

11    YOU SHOULDN'T RELY ON THE BANK RECORDS IN THIS CASE TO

12    CALCULATE INTEREST INCOME?

13    A.   NO.  THE ONLY THING MS. KATJU STATED WAS THAT THE

14    SPREADSHEETS THAT WERE MADE AT HSBC IN THE FREMONT OFFICE, SHE

15    SAID THAT THOSE WOULD BE CORRECT EXCEPT FOR ANY TYPE OF MANUAL

16    ERRORS.  MANUAL ERRORS IS THE TERM THAT SHE USED.

17    Q.   AND HOW DO YOU ACCOUNT FOR THOSE POTENTIAL MANUAL ERRORS

18    IN DOING YOUR CALCULATION?

19    A.   I TAKE THEM OUT.

20    Q.   ACCORDING TO THE TESTIMONY OF MS. KATJU AND MS. KUMAR, DID

21    THEY RELY ON THE SPREADSHEETS AND THE SCREEN SHOTS IN

22    PERFORMING THEIR DUTIES AS RELATIONSHIP MANAGERS?

23    A.   YES.

24    Q.   AND DOES THAT INCLUDE PROVIDING INFORMATION TO THE

25    CUSTOMERS?

1   A.   YES, THAT'S WHAT THEY SAID THEY USED THEM FOR.

2   Q.   AND ACCORDING TO THE TESTIMONY OF MS. KATJU, DID THE

3   DEFENDANT EVER COMPLAIN TO HER THAT THE INFORMATION THAT SHE

4   WAS PROVIDING TO HIM ABOUT HIS ACCOUNTS WAS INACCURATE IN ANY

5   WAY?

6   A.   I -- NO.

7   Q.   HOW LONG HAVE YOU BEEN ASSIGNED AS A SUMMARY WITNESS TO

8   THIS CASE?

9   A.   ROUGHLY?  SOMETHING LIKE A YEAR, I GUESS.

10   Q.   AND DURING THE COURSE OF THAT YEAR HAVE YOU BEEN GOING

11   OVER YOUR CALCULATIONS OF INTEREST INCOME AND HIGH BALANCE?

12   A.   YES.

13   Q.   AND DID YOU DOUBLE-CHECK THOSE NUMBERS?

14   A.   YES.

15   Q.   AND TRIPLE CHECK THEM IN SOME CASES?

16   A.   YEAH.  QUADRUPLE CHECKED SOMETIMES, YES.

17   Q.   AND OVER TIME DID YOU MAKE ANY CHANGES TO YOUR

18   CALCULATIONS?

19   A.   OH, YEAH, SURE.

20   Q.   AND THE CALCULATIONS THAT THE JURY SAW YESTERDAY IN

21   EXHIBITS 23 AND 24, IS THAT THE MOST UP-TO-DATE VERSION OF YOUR

22   CALCULATIONS?

23   A.   YES.

24   Q.   AND THE RESULT OF YOU QUADRUPLE CHECKING YOUR WORK?

25   A.   YES.

1    Q.   AND BEFORE I MOVE ON TO A DIFFERENT TOPIC TODAY, I WANT TO

2    MAKE SURE, FOR THOSE OF US IN THE COURTROOM WHO HAVE NEVER HAD

3    TO CALCULATE INTEREST INCOME BEFORE, THAT EVERYONE UNDERSTANDS

4    HOW YOU DID IT.

5    A.   OKAY, SURE.

6    Q.   AND IF YOU COULD START OUT BY VERY BASICALLY TELLING US

7    WHAT IS A CD?

8    A.   A CD, THAT'S A TERM FOR CERTIFICATE OF DEPOSIT.  YOU PUT

9    MONEY INTO A CD AND IT'S FOR A PARTICULAR PERIOD OF TIME,

10   SIX MONTHS, A YEAR, WHATEVER, AND THAT'S AT AN INTEREST RATE, A

11   FIXED INTEREST RATE.

12   Q.   AND WHAT HAPPENS WITH THAT CD AT THE END OF THAT FIXED

13   PERIOD OF TIME?

14   A.   THAT'S WHEN YOU GET PAID YOUR INTEREST.

15   Q.   AND IS THAT ALSO CALLED MATURITY?

16   A.   OH, YEAH, IT HAPPENS AT THE MATURITY DATE.

17   Q.   AND IS THE INITIAL AMOUNT OF MONEY INVESTED IN THAT CD

18   CALLED THE PRINCIPAL?

19   A.   THAT'S RIGHT.

20   Q.   AND SO IF YOU KNOW THE PRINCIPAL FOR THE CD, THE TERM OF

21   THE CD, AND THE INTEREST RATE, CAN YOU CALCULATE INTEREST

22   INCOME?

23   A.   SURE.

24   Q.   IS THERE ANYTHING ELSE YOU NEED TO KNOW?

25   A.   WELL, IF YOU KNOW HOW IT'S COMPOUNDED, IF IT'S COMPOUNDED

1    DAILY OR MONTHLY OR SOMETHING LIKE THAT.  NOW --

2    Q.   LET ME JUST STOP YOU, WHEN YOU SAY COMPOUNDED, CAN YOU

3    EXPLAIN WHAT THAT MEANS?

4    A.   OH.  WHENEVER YOU ARE EARNING INTEREST, INTEREST CAN BE

5    ADDED DAILY.  THEY COULD TAKE WHATEVER THAT PRINCIPAL AMOUNT

6    IS, ADD A DAY'S WORTH OF INTEREST, AND THEN THE NEXT DAY TAKE

7    THE COMBINATION OF THE PRINCIPAL PLUS ONE DAY OF INTEREST AND

8    THEN ADD INTEREST TO THAT.  THAT'S HOW YOU DO IT DAILY.  OR YOU

9    CAN DO THE SAME SORT OF THING ON A MONTHLY BASIS, QUARTERLY,

10   WHATEVER THE TERMS ARE.

11   Q.   AND WHEN DOING YOUR CALCULATIONS FOR THIS CASE, DID YOU

12   COMPOUND INTEREST DAILY?

13   A.   YES.

14   Q.   AND WHY DID YOU CHOOSE TO DO IT THAT WAY?

15   A.   THAT TO ME JUST SEEMED LIKE THE MOST LOGICAL WAY TO DO IT.

16   Q.   IS THAT THE WAY YOU'VE DONE IT BEFORE IN YOUR WORK AS A

17   REVENUE AGENT?

18   A.   YES.

19   Q.   WERE ALL OF THE DEPOSITS THAT YOU INCLUDED IN YOUR

20   CALCULATION YESTERDAY, WERE THEY ALL CD'S?

21   A.   YES.

22   Q.   AND FOR EACH OF THE DEPOSITS THAT YOU INCLUDED IN YOUR

23   CALCULATIONS, WERE YOU ABLE TO DETERMINE THE PRINCIPAL, THE

24   TERM OF THE CD AND THE INTEREST RATE FROM LOOKING AT THE

25   RECORDS?

1    A.   YES.

2    Q.   AND IF THERE WAS A CD THAT SHOWED UP IN THE RECORDS THAT

3    YOU WERE MISSING ONE OF THOSE THREE PIECES OF INFORMATION, DID

4    YOU INCLUDE THAT CD IN YOUR CALCULATION?

5    A.   UM, NO.  IF THERE WAS AN INCONSISTENCY BETWEEN THINGS,

6    THEN I WOULD TAKE IT OUT, BUT THERE WERE SOME INSTANCES WHERE

7    ONLY THE HSBC INTEREST STATEMENT WAS AVAILABLE.

8    Q.   WHAT I'M ASKING YOU IS IF YOU WERE MISSING ONE OF THOSE

9    THREE PIECES OF INFORMATION, COULD YOU INCLUDE THAT CD IN YOUR

10   CALCULATION?

11   A.   OH, NO, I COULDN'T DO A CALCULATION WITHOUT THAT.

12   Q.   FOR THOSE CD'S -- WERE SOME OF THE CD'S IN THIS CASE HELD

13   IN SOMETHING OTHER THAN U.S. DOLLARS?

14   A.   THAT'S RIGHT.

15   Q.   AND IN THOSE INSTANCES WAS THERE ONE MORE STEP THAT YOU

16   HAD TO TAKE IN ORDER TO INCLUDE THAT CD IN YOUR CALCULATIONS?

17   A.   WELL, YES, BECAUSE WE'RE DEALING WITH U.S. INCOME TAXES

18   HERE AND SO YOU HAVE TO USE AN EXCHANGE RATE TO GET IT FROM

19   WHATEVER FOREIGN CURRENCY IT IS, LET'S SAY INDIAN RUPEES, INTO

20   U.S. DOLLARS.

21   Q.   IN ADDITION TO THE SCREEN SHOTS AND THE SPREADSHEETS AND

22   THE INTEREST CERTIFICATES, WERE THERE OTHER EXHIBITS INTRODUCED

23   INTO EVIDENCE THAT SHOWED DEPOSITS BEING PLACED INTO THE DESAI

24   FAMILY'S HSBC INDIA ACCOUNTS?

25   A.   YEAH.  LIKE THE TELEXES AND THINGS LIKE THAT, YEAH.

1    Q.  AND IN TERMS OF NEAL DESAI'S HSBC INDIA ACCOUNT, WERE YOU

2    ABLE TO USE THESE DEPOSIT RECORDS TO DETERMINE WHETHER NEAL

3    DESAI HAD MORE THAN $10,000 IN HIS ACCOUNT DURING 2009?

4    A.  YES.

5    Q.  AND I'LL DIRECT YOUR ATTENTION TO GOVERNMENT'S EXHIBIT 66.

6    A.  OKAY.

7    Q.  AND ACCORDING TO THE TESTIMONY AT TRIAL, WHAT IS THE FIRST

8    PAGE OF EXHIBIT 66?

9    A.  THIS IS WHAT THEY CALL A TELEX.  THIS IS WHERE THEY WOULD

10   GIVE INSTRUCTIONS TO U.S. OR HSBC INDIA ON WHAT TO DO WITH

11   MONEY.

12   Q.  DOES -- IN LOOKING IN THE MIDDLE OF THE PAGE ON THE TELEX,

13   IS THERE A REFERENCE TO A DEPOSIT IN ACCOUNT 9689?

14   A.  YES.

15   Q.  AND WHAT NAME IS LISTED NEXT TO THAT?

16   A.  NEAL D.

17   Q.  AND WHAT IS THE PRINCIPAL AMOUNT OF THAT DEPOSIT?

18   A.  $250,000.

19   Q.  AND WHAT ARE THE INSTRUCTIONS LISTED BELOW THAT?

20   A.  "PLACE NRO CTD CUM FOR U.S.D. 250,000 FOR 400 DAYS."

21   Q.  AND ACCORDING TO THE TESTIMONY AT TRIAL, WHAT DOES THAT

22   MEAN?

23   A.  THAT MEANS THAT YOU'RE GOING TO PUT IT INTO AN NRO CD FOR

24   400 DAYS.

25   Q.  AND SO 400 DAYS WOULD BE THE TERM?

1      A.   THAT'S RIGHT.

2      Q.   AND WHAT IS THE DATE OF THIS DEPOSIT, LOOKING RIGHT BELOW

3      THAT LINE?

4      A.   FEBRUARY 9, 2008.

5      Q.   AND SO FOR A CD BEING PLACED ON FEBRUARY 9TH, 2008, FOR

6      400 DAYS, IN WHAT YEAR WOULD THAT CD MATURE?

7      A.   THAT WOULD MATURE SOMEWHERE AROUND THE MIDDLE OF 2009.

8      Q.   AND DOES THAT ASSUME IT'S NOT BROKEN PREMATURELY?

9      A.   THAT'S RIGHT.

10     Q.   AND WHAT DOES IT MEAN TO BREAK THE CD PREMATURELY?

11     A.   THAT MEANS TO TAKE THE MONEY OUT.

12     Q.   AND WHAT WOULD HAPPEN WHEN THE CD MATURES IN 2009?

13     A.   YOU WOULD GET PAID THE INTEREST.

14     Q.   WAS THERE ANY EVIDENCE INTRODUCED AT TRIAL THAT THIS

15     PARTICULAR DEPOSIT WAS BROKEN PREMATURELY?

16     A.   NO.

17     Q.   SO IN 2009 WHEN IT MATURED, WHAT WOULD THE VALUE OF THE CD

18     BE?

19     A.   IT WOULD BE $250,000 PLUS WHATEVER INTEREST WAS EARNED.

20     Q.   WERE THERE ANY OTHER RECORDS RELATING TO DEPOSITS MADE IN

21     NEAL DESAI'S ACCOUNT DURING 2008?

22     A.   YOU MEAN THE CHECKS?

23     Q.   WELL, I'M ASKING WHETHER THERE WERE ANY OTHER EXHIBITS

24     THAT SHOWED DEPOSITS INTO HIS ACCOUNT?  AND I'LL DIRECT YOU TO

25     EXHIBIT 69.

DIRECT OERTEL

1    A.   OH, YES.  OKAY.

2    Q.   ACCORDING TO THE TESTIMONY IS EXHIBIT 69 OR THE FIRST PAGE

3    OF 69 ANOTHER TELEX?

4    A.   YES, IT'S THE SAME TYPE OF TELEX.

5    Q.   AND LOOKING IN THE UPPER RIGHT-HAND CORNER, WHAT IS THE

6    DATE OF THIS TELEX?

7    A.   UPPER RIGHT-HAND CORNER IT SAYS 05 MARCH 2008.

8    Q.   MARCH 5TH, 2008?

9    A.   THAT'S RIGHT.

10   Q.   AND DO YOU SEE ANY REFERENCE IN THE MIDDLE OF THIS PAGE OF

11   A DEPOSIT INTO NEAL DESAI'S HSBC INDIA ACCOUNT 9689?

12   A.   YES.

13   Q.   AND WHAT IS THE PRINCIPAL VALUE OF THAT DEPOSIT?

14   A.   200,000.

15   Q.   AND ACCORDING TO THIS TELEX, IS THAT MONEY BEING PLACED IN

16   A CD?

17   A.   YES, AN NRO CD WITH A TERM OF 400 DAYS.

18   Q.   AND SO ASSUMING IT WASN'T BROKEN PREMATURELY, ON WHAT DATE

19   WOULD A CD PLACED ON MARCH 5TH, 2008, FOR 400 DAYS MATURE?  IN

20   WHAT YEAR?

21   A.   AGAIN, SOMEWHERE AROUND THE MIDDLE OF 2009.

22   Q.   AND WAS THERE ANY EVIDENCE INTRODUCED AT TRIAL THAT THIS

23   DEPOSIT WAS BROKEN PREMATURELY?

24   A.   NO.

25   Q.   AND SO WHAT WOULD THE VALUE OF THIS DEPOSIT BE AT MATURITY

DIRECT OERTEL

1    DURING 2009?

2    A.   IT WOULD BE $200,000 PLUS THE INTEREST PAID.

3    Q.   YOU COULD GO TO EXHIBIT 75, PLEASE?

4    A.   OKAY.

5    Q.   WHAT IS THE DATE ON THIS E-MAIL?

6    A.   JUNE 16TH, 2008.

7    Q.   AND GENERALLY WHAT DOES THIS DOCUMENT RELATE TO, THIS AND

8    THE ATTACHMENT?

9    A.   IT IS --

10   Q.   WHY DON'T YOU READ THE E-MAIL?

11   A.   OKAY.  ALL RIGHT.  "DEAR TEAM, PLEASE FIND ATTACHED FCNR

12   PREMAT FOR THE ABOVE CUSTOMER."

13   Q.   AND WHO WAS THE ABOVE CUSTOMER?

14   A.   ASHVIN DESAI.

15   Q.   AND IS AN FCNR, ACCORDING TO THE EVIDENCE, A TYPE OF CD?

16   A.   YES.

17   Q.   IF YOU CAN GO TO THE NEXT PAGE, DO YOU SEE A LETTER?

18   A.   YES.

19   Q.   AND CAN YOU PLEASE READ THE LETTER STARTING AT "DEAR SIR"?

20   A.   "DEAR SIR, PLEASE BREAK WITH IMMEDIATE EFFECT.  FCNR

21   NUMBER 004 --"

22   Q.   YOU DON'T HAVE TO READ THE NUMBER.

23   A.   OH, OKAY.  AND THEN, "PROCEEDS TO BE ISSUED IN NRO

24   DEPOSIT."

25   Q.   AND WHAT IS THE AMOUNT OF THE FCNR?

DIRECT UERTEL

```
 1     A.   IT IS 185,000.

 2     Q.   AND LOOKING AT THE HANDWRITING NEXT TO THE NRO CD, INTO

 3     WHAT ACCOUNT OF THIS NEW DEPOSIT OF $185,000 BEING PLACED?

 4     A.   9689.

 5     Q.   AND THAT'S NEAL'S DESAI'S ACCOUNT?

 6     A.   YES.

 7     Q.   AND ASSUMING IT'S NOT BROKEN MATURE -- ASSUMING IT WAS NOT

 8     BROKEN PREMATURELY, IN WHAT YEAR WOULD A CD PLACED ON

 9     JUNE 16TH, 2008, FOR 399 DAYS MATURE?

10     A.   THE MIDDLE OF 2009.

11     Q.   AND WAS THERE ANY EVIDENCE INTRODUCED AT TRIAL THAT THIS

12     DEPOSIT WAS BROKEN PREMATURELY?

13     A.   NO.

14     Q.   AND SO WHAT WOULD THE VALUE OF THIS DEPOSIT BE IN NEAL

15     DESAI'S ACCOUNT IN 2009 AT MATURITY?

16     A.   185,000 PLUS INTEREST.

17     Q.   AND SO BASED ON EXHIBITS 66, 69, AND 75, CAN YOU ESTIMATE

18     WHAT THE HIGH BALANCE IN NEAL DESAI'S HSBC INDIA ACCOUNT WAS IN

19     2009?

20     A.   IT'S 250, PLUS 200, PLUS 185 AND THAT EQUALS $635,000,

21     PLUS THE INTEREST.

22     Q.   AND DID NEAL DESAI'S 2009 INCOME TAX RETURN REPORT ANY

23     INTEREST INCOME FROM HSBC INDIA?

24     A.   NO.

25     Q.   AND WHAT WAS THE -- ON NEAL DESAI'S 2009 RETURN, WHAT
```

DIRECT OERTEL

```
 1    RESPONSE WAS GIVEN TO THE QUESTION ABOUT WHETHER HE HAD ANY

 2    FOREIGN BANK ACCOUNTS?

 3    A.   THE BOX WAS CHECKED "NO."

 4    Q.   HAVE YOU ALSO LOOKED AT RECORDS FROM HSBC INDIA RELATING

 5    TO DEPOSITS THAT WOULD HAVE MATURED IN AMI DESAI'S ACCOUNT

 6    DURING 2009?

 7    A.   YES.

 8    Q.   AND DID YOU LOOK AT THOSE TO DETERMINE WHETHER SHE HAD

 9    MORE THAN $10,000 IN HER ACCOUNT DURING THAT YEAR?

10    A.   YES.

11    Q.   AND IF YOU COULD GO BACK TO EXHIBIT 66, PLEASE.

12    A.   OKAY.

13    Q.   DOES THIS TELEX ALSO SHOW A DEPOSIT BEING PLACED IN AMI

14    DESAI'S ACCOUNT 5163?

15    A.   YES, IT DOES.

16    Q.   AND WHAT IS THE PRINCIPAL AMOUNT OF THAT DEPOSIT?

17    A.   250,000.

18    Q.   AND WHAT CURRENCY?

19    A.   THAT IS IN U.S.D.

20    Q.   U.S. DOLLARS?

21    A.   YES, I'M SORRY, U.S. DOLLARS.

22    Q.   AND WHAT IS THE TERM OF THAT DEPOSIT?

23    A.   IT WAS 400 DAYS.

24    Q.   AND REMIND THE JURY WHAT THE DATE ON WHICH THIS DEPOSIT

25    WAS PLACED IS?
```

DIRECT OERTEL

1    A.    FEBRUARY 29, 2008.

2    Q.    AND SO, AGAIN, ASSUMING IT WASN'T BROKEN PREMATURELY, IN

3    WHAT YEAR WOULD THIS DEPOSIT MATURE?

4    A.    2009.

5    Q.    WAS THERE ANY EVIDENCE INTRODUCED AT TRIAL THAT THIS

6    DEPOSIT WAS BROKEN EARLY?

7    A.    NO.

8    Q.    SO WHAT WOULD THE VALUE OF THIS DEPOSIT BE UPON MATURITY

9    IN 2009?

10   A.    $250,000 PLUS INTEREST.

11   Q.    AND IF YOU GO AGAIN TO EXHIBIT 69, DOES THIS TELEX THAT WE

12   LOOKED AT A MOMENT AGO ALSO SHOW A DEPOSIT INTO AMI DESAI'S

13   ACCOUNT?

14   A.    YES.

15   Q.    AND WHAT IS THE PRINCIPAL AMOUNT?

16   A.    $208,402.49.

17   Q.    AND WHAT WAS THE DATE OF THE DEPOSIT?

18   A.    THIS IS MARCH 5TH, 2008.

19   Q.    AND WHAT WAS THE TERM OF THIS CD?

20   A.    IT'S 400 DAYS.

21   Q.    AND, AGAIN, ASSUMING IT WASN'T BROKEN PREMATURELY, IN WHAT

22   YEAR WOULD THIS DEPOSIT MATURE?

23   A.    2009.

24   Q.    AND WAS THERE ANY EVIDENCE THAT IT WAS BROKEN PREMATURELY?

25   A.    NO.

DIRECT OERTEL

```
 1    Q.   AND SO WHAT WAS THE VALUE OF THIS CD IN AMI DESAI'S

 2    ACCOUNT UPON MATURITY IN 2009?

 3    A.   208,000 PLUS INTEREST.

 4    Q.   EXACTLY 208,000?

 5    A.   NO.  $208,402.49 PLUS INTEREST.

 6    Q.   AND SO USING EXHIBIT 66 AND 69 TOGETHER, CAN YOU ESTIMATE

 7    WHAT THE HIGH BALANCE IN AMI DESAI'S HSBC INDIA ACCOUNT WAS

 8    DURING 2009?

 9    A.   YES.  IT WOULD BE OVER $400,508,000 PLUS INTEREST.

10    Q.   AND WAS ANY INTEREST FROM HSBC INDIA REPORTED ON AMI

11    DESAI'S 2009 RETURN?

12    A.   NO, NO, MA'AM.

13    Q.   AND HOW WAS THE FOREIGN BANK ACCOUNT QUESTION ANSWERED ON

14    SCHEDULE B?

15    A.   "NO."

16    Q.   AND, NOW, HAVE YOU ASSISTED IN THE PREPARATION OF A CHART

17    THAT SUMMARIZED SOME OF THE INFORMATION THAT WE DISCUSSES TODAY

18    AND YESTERDAY REGARDING THE DESAI FAMILY'S TAX RETURNS?

19    A.   YES.

20    Q.   AND DOES THAT CHART ALSO TAKE INTO ACCOUNT THE

21    CALCULATIONS OF INTEREST INCOME THAT YOU PERFORMED?

22    A.   YES.

23    Q.   AND IF YOU COULD TURN TO WHAT HAS BEEN MARKED FOR

24    IDENTIFICATION AS EXHIBIT 140?

25    A.   OKAY.
```

DIRECT OERTEL

```
1    Q.   WHAT IS THE TITLE OF THIS CHART?

2    A.   TAX RETURN SUMMARY.

3    Q.   AND DOES THIS CHART FAIRLY AND ACCURATELY SUMMARIZE THE

4    CONTENTS OF THE DESAI FAMILY TAX RETURNS ALONG WITH YOUR

5    CALCULATIONS OF UNREPORTED INTEREST INCOME?

6    A.   YES.

7              MS. SISKIND:  YOUR HONOR, THE GOVERNMENT SEEKS TO

8    INTRODUCE EXHIBIT 140 FOR DEMONSTRATIVE PURPOSES.

9              MR. SCHAINBAUM:  YOUR HONOR, COULD WE HAVE A

10   SIDE-BAR, PLEASE.

11             THE COURT:  YES.

12        (SIDE-BAR CONFERENCE ON THE RECORD.)

13             THE COURT:  WE'RE AT SIDE-BAR.  MR. SCHAINBAUM.

14             MR. SCHAINBAUM:  YES.  AS YOU CAN SEE, YOUR HONOR,

15   IT'S ILLEGIBLE, PLUS --

16             MS. SISKIND:  IT'S NOT THE MOST UP-TO-DATE VERSION.

17             MR. SCHAINBAUM:  IT'S NOT THE MOST UP-TO-DATE

18   VERSION.

19             THE COURT:  WE'LL GET YOU.

20             MS. SISKIND:  WE HAVE THE MOST UP-TO-DATE VERSION.

21   IT WAS GIVEN TO US THIS WEEK.  REMEMBER WE PRINTED IT OUT WITH

22   LEGIBLE HEADINGS.

23             THE COURT:  CAN YOU SHOW HIM THIS ONE?

24             MS. SISKIND:  YEAH, SURE.

25             THE COURT:  IT SHOULD LOOK LIKE THIS (INDICATING).
```

1           MR. SCHAINBAUM:  THE POINT IS THAT THE TAX RETURNS

2    SPEAK FOR THEMSELVES.  THEY'RE IN THE RECORD.  THEY DON'T NEED

3    TO HAVE A SUMMARY OF TAX RETURNS THAT ARE ALREADY IN EVIDENCE

4    PLUS OUR VERSION IS ILLEGIBLE.

5        SO BASED UPON THAT, I THINK THERE'S AN OVEREMPHASIS HERE

6    ON THESE TAX RETURNS, SUMMARIES WITH THE TAX RETURN

7    INFORMATION.

8           THE COURT:  MS. SISKIND?

9           MS. SISKIND:  YOUR HONOR, THERE'S AN EMPHASIS ON TAX

10   RETURNS BECAUSE THIS IS A CASE ABOUT TAX RETURNS AND THIS IS A

11   SUMMARY WITNESS, AND HE'S SUMMARIZING EVIDENCE.  THIS HELPS

12   ELUCIDATE FOR THE JURY WHAT HIS SUMMARY IS.  IT'S A VISUAL AID.

13          THE COURT:  IT'S NOT GOING TO BE INTRODUCED INTO

14   EVIDENCE?

15          MS. SISKIND:  NO.  IT'S FOR DEMONSTRATIVE PURPOSES

16   ONLY.

17          MR. SCHAINBAUM:  MY SAME POINT IS THAT HE CAN

18   TESTIFY FROM THE TAX RETURN ITSELF AND SAY, LOOK, HERE'S WHAT

19   THE INFORMATION SHOWS WITHOUT SUMMARIZING IT ON A PIECE OF

20   PAPER WHERE HE STATES THIS IS MY VIEW OF THE INTEREST INCOME AS

21   CALCULATED.

22       THAT'S NOT WHAT IS ON THE TAX RETURN, AND THAT'S PART OF

23   THIS TAX CASE IS TO DETERMINE WHETHER OR NOT THE INTEREST

24   INCOME WAS SUPPOSED TO BE REPORTED OR IS EXCLUDED FOR SOME

25   LEGAL REASON.

DIRECT OERTEL

```
 1              THE COURT:  OKAY.  ANYTHING FURTHER, MS. SISKIND OR

 2   MR. SCHAINBAUM?

 3              MS. SISKIND:  NO, YOUR HONOR.

 4              THE COURT:  I'LL ALLOW THIS.

 5              MS. SISKIND:  YOU CAN HAVE MY COPY.

 6              THE COURT:  ASSUMING YOU GET THE CLEAN COPY.  IT'S

 7   FOR DEMONSTRATIVE PURPOSES ONLY TO ALLOW THIS WITNESS -- TO

 8   ASSIST THIS WITNESS IN TESTIFYING ABOUT HIS FINDINGS.  THIS IS

 9   NOT GOING TO BE ADMITTED TO THE JURY.

10      YOU, OF COURSE, CAN CRITIQUE THIS AS YOU WISH AND YOU CAN

11   SUPPLY YOUR OWN SUMMARY IF THAT'S YOUR DESIRE AS WELL DURING

12   YOUR CASE IN CHIEF, IF THERE IS ANY.

13              MR. SCHAINBAUM:  WELL, PICKING UP ON YOUR POINT,

14   THIS IS A TAX RETURN SUMMARY AND THE HEADING APPEARS TO BE THIS

15   IS WHAT THE TAX RETURN SHOWS.

16      IT'S REALLY WHAT HE INTERPRETS AS TO THE INTEREST INCOME

17   FROM HSBC INDIA, AND I THINK THAT HAS TO BE MADE CLEAR.

18      AND, YOU KNOW -- SO -- AND THIS SCHEDULE IS INACCURATE.

19   THE COLUMN THAT SAYS EXISTENCE OF FOREIGN ACCOUNTS LISTED ON

20   SCHEDULE B.  AS YOU KNOW, I HAVE FROM TIME TO TIME TAKEN OUR

21   BLOWUP OUT AND THERE'S A BANK OF INDIA AND THE CITIBANK OF

22   SINGAPORE IS ON SCHEDULE B.

23      SO WHEN HE SAYS EXISTENCE OF FOREIGN ACCOUNTS AND HE PUT

24   ON SCHEDULE B -- NO, NO, NO, THAT'S COMPLETELY INACCURATE AND

25   MISLEADING AND DISTORTS THE EVIDENCE.  SO THE BEST EVIDENCE IS
```

DIRECT OERTEL

```
1        THE TAX RETURN.

2            IF YOU LET THIS GO, THIS COLUMN IN THERE, THAT WOULD BE

3        REALLY PREJUDICIAL.

4                THE COURT:  WELL, I THINK FROM WHAT I HEAR YOU

5        SAYING IS THAT YOU TAKE -- YOU PART COMPANY WITH THIS AND YOU

6        HAVE EVIDENCE TO REBUT THIS.

7                MR. SCHAINBAUM:  NO.  THE EVIDENCE IS, AGAIN, TO USE

8        HER WORDS, THIS IS A TAX CASE.  THE TAX RETURN IS EVIDENCE AND

9        SCHEDULE B, UNLESS MY EYES ARE GOING, CONTAIN FOREIGN BANK

10       ACCOUNTS.  AND THIS IS NO, NO, NO.  THIS IS PRIMA FACIE

11       MISLEADING.

12               THE COURT:  THIS IS HIS OPINION AND IF HIS

13       OPINION -- THIS IS HIS SUMMARY AND IF HIS SUMMARY IS MISLEADING

14       TO THE JURY, HE'LL BE ABLE TO POINT THAT OUT.  THIS IS OFFERED

15       FOR -- THIS JURY MAY NOT ACCEPT THIS.  THEY MAY HAVE THE SAME

16       OPINION THAT YOU DO.

17               MR. SCHAINBAUM:  MAYBE I SHOULD GIVE THEM MY

18       MAGNIFYING GLASS BUT THIS IS A MISLEADING DOCUMENT, AND I

19       OBJECT AND IT'S PREJUDICIAL, EVEN THOUGH I WOULD CROSS-EXAMINE.

20       THIS SHOULD NOT EVEN BE PUT BEFORE THE JURY IN ANY FORM.

21               THE COURT:  ALL RIGHT.  THANK YOU, MR. SCHAINBAUM.

22       I'M GOING TO ALLOW IT, AND I NOTE YOUR OBJECTIONS.  AND, OF

23       COURSE, YOU WILL HAVE AN OPPORTUNITY TO CROSS-EXAMINE AS YOU

24       WISH ON THIS, BUT WE NEED A CLEAN COPY OF THIS.

25               MR. SCHAINBAUM:  THANK YOU, YOUR HONOR.
```

```
 1              (END OF DISCUSSION AT SIDE-BAR.)

 2              MS. SISKIND:  MAY WE DISPLAY EXHIBIT 140 FOR

 3      DEMONSTRATIVE PURPOSES ONLY?

 4              THE COURT:  YES.

 5      BY MS. SISKIND:

 6      Q.   IS THIS YOUR SUMMARY OF INFORMATION REPORTED AND NOT

 7      REPORTED ON THE DESAI FAMILY'S 2007 THROUGH 2009 RETURNS?

 8      A.   YES.  IN REGARDS TO THE INTEREST INCOME, YES.

 9      Q.   AND WHAT YEARS DOES IT COVER?

10      A.   2007, 2008, AND 2009.

11      Q.   AND WHAT TAXPAYERS ARE COVERED ON HERE?

12      A.   ASHVIN, NILA, NEAL, AND AMI DESAI.

13      Q.   AND THE THIRD COLUMN WHERE IT SAYS INTEREST INCOME

14      REPORTED ON SCHEDULE B.  ARE THOSE THE NUMBERS THAT YOU HAD

15      READ OFF OF THE SCHEDULES B TO THE JURY YESTERDAY?

16      A.   THAT'S RIGHT.

17      Q.   AND WHEN IT SAYS INCOME FROM HSBC INDIA, WHERE DOES THAT

18      FIGURE COME FROM?

19      A.   THAT CAME FROM MY SPREADSHEETS AND CALCULATIONS.

20      Q.   AND IS THAT WHAT THE JURY SAW YESTERDAY IN EXHIBIT 23?

21      A.   YES, MA'AM.

22      Q.   AND THE COLUMN THAT ASKED ABOUT INTEREST INCOME FROM INDIA

23      REPORTED ON SCHEDULE B, WHAT DOES THAT MEAN?

24      A.   THAT MEANS HOW MUCH FROM HSBC INDIA WAS REPORTED ON

25      SCHEDULE B AND IN EACH INSTANCE NONE WAS.
```

1    Q.   AND THE COLUMN FOR EXISTENCE OF FOREIGN ACCOUNTS REPORTED

2    ON SCHEDULE B, DOES THAT REFER TO THE FOREIGN BANK ACCOUNT

3    QUESTION, QUESTION 7(A)?

4    A.   CORRECT.

5    Q.   AND SO LET'S START WITH 2007, FOR THE TAX RETURN FILED IN

6    THE NAME OF ASHVIN AND NILA DESAI.  HOW MUCH INTEREST INCOME

7    WAS REPORTED ON THEIR SCHEDULE B AS FILED WITH THE I.R.S.?

8    A.   $20,125.90.

9    Q.   AND HOW MUCH INTEREST INCOME DID YOU CALCULATE WAS

10   GENERATED BY THEIR TWO HSBC INDIA ACCOUNTS IN TOTAL?

11   A.   $338,287.38.

12   Q.   WAS ANY AMOUNT OF THAT INTEREST INCOME REPORTED ON THEIR

13   2007 TAX RETURN?

14   A.   NO.

15   Q.   AND ON THEIR 2007 RETURN, HOW DID THE DESAIS RESPOND TO

16   THE QUESTION ABOUT WHETHER THEY HAD ANY FOREIGN BANK ACCOUNTS?

17   A.   THEY SAID THEY DID NOT.

18   Q.   FOR 2008 HOW MUCH INTEREST INCOME WAS REPORTED ON THE

19   DESAIS' SCHEDULE B?

20   A.   $23,052.40.

21   Q.   AND ACCORDING TO YOUR CALCULATION, HOW MUCH ADDITIONAL

22   INTEREST INCOME WAS THERE FROM THEIR HSBC INDIA ACCOUNTS?

23   A.   $341,389.92.

24   Q.   WAS ANY AMOUNT OF THAT INTEREST INCOME REPORTED ON THEIR

25   RETURN?

DIRECT OERTEL

1    A.   ZERO.

2    Q.   AND HOW DID THE DESAIS RESPOND TO THE QUESTION ON SCHEDULE

3    B ASKING THEM IF THEY HAD FOREIGN BANK ACCOUNTS?

4    A.   THEY SAID NO.

5    Q.   FOR 2009, HOW MUCH INTEREST INCOME WAS REPORTED ON THE

6    DESAIS' JOINT TAX RETURN?

7    A.   $28,112.65.

8    Q.   AND ACCORDING TO YOUR CALCULATIONS, HOW MUCH ADDITIONAL

9    INTEREST INCOME DID THEY EARN FROM THEIR TWO HSBC INDIA

10   ACCOUNTS?

11   A.   $430,384.45.

12   Q.   AND WAS ANY AMOUNT OF THAT INTEREST INCOME REPORTED ON

13   THEIR SCHEDULE B?

14   A.   NO.

15   Q.   AND HOW DID THE DESAIS RESPOND TO QUESTION 7(A) ABOUT

16   WHETHER OR NOT THEY HAD FOREIGN ACCOUNTS DURING THAT YEAR?

17   A.   THEY SAID THEY DID NOT.

18   Q.   FOR 2009, HOW MUCH INTEREST INCOME WAS REPORTED ON NEAL

19   DESAI'S SCHEDULE B?

20   A.   $6,371.88.

21   Q.   AND, AGAIN, ACCORDING TO YOUR CALCULATIONS, HOW MUCH

22   INTEREST INCOME WAS GENERATED BY HIS HSBC INDIA ACCOUNT?

23   A.   $103,495.07.

24   Q.   AND WAS ANY OF THAT REPORTED ON HIS TAX RETURN?

25   A.   NO.

```
1    Q.   AND ON HIS RETURN ON SCHEDULE B, WHAT ANSWER WAS GIVEN TO

2    THE QUESTION ABOUT WHETHER HE HAD A FOREIGN BANK ACCOUNT DURING

3    2009?

4    A.   NO.

5    Q.   AND FINALLY FOR AMI DESAI, HOW MUCH INTEREST INCOME WAS

6    REPORTED ON HER TAX RETURN?

7    A.   $17,202.85.

8    Q.   AND BASED ON YOUR CALCULATIONS, HOW MUCH INTEREST INCOME

9    WAS GENERATED BY HER HSBC INDIA ACCOUNT?

10   A.   $32,653.74.

11   Q.   AND DID ANY OF THAT AMOUNT APPEAR ON HER 2009 TAX RETURN?

12   A.   NO.

13   Q.   AND FOR THE FOREIGN BANK ACCOUNT QUESTION, QUESTION 7(A)

14   ON SCHEDULE B, WHAT BOX WAS CHECKED IN RESPONSE TO THE QUESTION

15   IF SHE HAD FOREIGN ACCOUNTS, YES OR NO?

16   A.   "NO."

17   Q.   DURING THE COURSE OF THIS TRIAL, DID YOU HEAR TESTIMONY

18   AND SEE DOCUMENTS RELATING TO THE DEFENDANT'S MANAGEMENT OF HIS

19   HSBC INDIA ACCOUNT?

20   A.   YES.

21   Q.   AND DID YOU SEE DOCUMENTS AND HEAR TESTIMONY THAT SHOWED

22   THE DEFENDANT MANAGING HIS WIFE'S HSBC INDIA ACCOUNT?

23   A.   YES.

24   Q.   AND HOW ABOUT HIS SON NEAL'S?

25   A.   YES.
```

1    Q.   AND HIS DAUGHTER AMI'S?

2    A.   YES.

3    Q.   AND HOW ABOUT HIS DAUGHTER AMI'S HSBC DUBAI ACCOUNT?  DID

4    YOU SEE DOCUMENTS THAT SHOWED HIM MANAGING THAT?

5    A.   YES.

6    Q.   DID YOU ASSIST IN THE PREPARATION OF CHARTS THAT SUMMARIZE

7    SOME OF THESE EXHIBITS THAT SHOW THE DEFENDANT MANAGING HIS

8    FAMILY'S ACCOUNTS?

9    A.   YES.

10   Q.   AND ARE THOSE CHARTS CONTAINED IN EXHIBITS 139-1 THROUGH

11   139-5?

12   A.   YES.

13   Q.   AND DO THOSE SUMMARY CHARTS LIST OUT VARIOUS EXHIBITS THAT

14   WERE INTRODUCED AT TRIAL?

15   A.   YES.

16   Q.   AND DO EXHIBITS 139-1 THROUGH 139-5 FAIRLY AND ACCURATELY

17   SUMMARIZE THE EXHIBITS THAT THEY REFERENCE?

18   A.   YES.

19        MS. SISKIND:  YOUR HONOR, THE GOVERNMENT SEEKS TO

20   USE GOVERNMENT'S EXHIBITS 139-1 THROUGH 139-5 FOR DEMONSTRATIVE

21   PURPOSES.

22        MR. SCHAINBAUM:  YOUR HONOR, COULD WE HAVE A

23   SIDE-BAR?

24        THE COURT:  YES.

25        (SIDE-BAR CONFERENCE ON THE RECORD.)

```
1              THE COURT:  WE ARE MEETING AT THE SIDE-BAR WITH

2    COUNSEL PRESENT.

3              MR. SCHAINBAUM:  I THINK THE BEST EVIDENCE IS THE

4    EXACT EXHIBITS, IF THEY ARE, IN FACT, IN EVIDENCE AND TO USE

5    THESE SUMMARIES JUST EMPHASIZES DOCUMENTS THAT MAY OR MAY NOT

6    ACTUALLY BE IN EVIDENCE.  SO I OBJECT ON THE CUMULATIVE EFFECT,

7    WHICH IS PREJUDICIAL.

8         IF SHE WANTS TO GO THROUGH THE EXHIBITS AND ASKS HIM ON A

9    ONE-ON-ONE BASIS, FINE, BUT TO PUT SUMMARY OF ACCOUNT ACTIVITY,

10   THAT ALSO ASSUMES A CONCLUSION.  AND WHEN SHE PUTS ASHVIN DESAI

11   HSBC ACCOUNT 0046679, THAT'S JUST THE HEADING, BUT THE MOST

12   PROBLEM IS EACH OF THESE INDIVIDUAL DATES AND EXHIBIT NUMBERS

13   AND THE FACT THAT HE'S SAYING THAT THIS IS A SUMMARY OF ACCOUNT

14   ACTIVITY.  WHAT ACTIVITY?

15        YOU KNOW, WHICH THE LEGEND HERE, IT HELPS HIM TESTIFY AS

16   TO, YOU KNOW, WHAT HE THINKS HAPPENED WITHOUT THE EVIDENCE.

17   THE BEST EVIDENCE IS EACH ONE OF THESE EXHIBITS.

18              THE COURT:  LET ME ASK YOU, THESE CHARTS APPARENTLY

19   REFERENCE EXHIBIT NUMBERS?

20              MS. SISKIND:  YES.

21              THE COURT:  AND HAVE EACH OF THOSE EXHIBITS BEEN

22   ADMITTED INTO EVIDENCE?

23              MS. SISKIND:  I BELIEVE SO.  I CAN DOUBLE-CHECK

24   RIGHT NOW.  IF FOR SOME REASON ONE IS NOT, WE WON'T USE THAT

25   CHART.  IT CERTAINLY WAS OUR INTENTION TO.  IF WE DIDN'T
```

DIRECT OERTEL

1       THEN --

2                   THE COURT:  WELL, WE SHOULD CLEAR THAT UP FIRST.

3                   MS. SISKIND:  YES.

4                   THE COURT:  THE OTHER QUESTION IS THAT THIS IS A

5       SUMMARY OF MR. DESAI'S ACTIVITY CONTROLLING THESE ACCOUNTS --

6                   MS. SISKIND:  YES.

7                   THE COURT:  -- ACCORDING TO WHAT THE EXHIBITS

8       INDICATE.

9                   MS. SISKIND:  YES.

10                  THE COURT:  AND I GUESS I WAS CURIOUS ABOUT THIS

11      WITNESS.  AND I CERTAINLY UNDERSTAND HIS BACKGROUND AND HE CAN

12      TESTIFY AND PROVIDE SUMMARY EVIDENCE ABOUT THE TAX CALCULATIONS

13      AND THE INTEREST, BUT WHY IS IT NECESSARY TO HAVE HIM TESTIFY

14      SUMMARILY ABOUT THE ACTIVITIES?

15                  MS. SISKIND:  WELL, YOUR HONOR, HE'S A SUMMARY

16      WITNESS, AND I DON'T KNOW OF ANY RULE THAT LIMITS A SUMMARY

17      WITNESS TO NUMBERS.  A SUMMARY WITNESS SUMMARIZES THE EVIDENCE

18      THAT CAME INTO TRIAL.

19          THE PURPOSE OF THIS SUMMARY IS TO HELP ORGANIZE FOR THE

20      JURY THE VARIOUS EXHIBITS THAT CAME IN BREAKING IT DOWN BY

21      WHICH ONES RELATE TO WHICH ACCOUNT NUMBER SO THAT THEY CAN SEE

22      MORE CLEARLY THE DEFENDANT MANAGING EACH FAMILY MEMBER'S

23      ACCOUNT.

24          I DON'T KNOW OF ANY RULE THAT PROHIBITS A SUMMARY WITNESS

25      FROM ORGANIZING THE EVIDENCE IN THAT WAY FOR THE JURY.

1    CERTAINLY A COMMON USE OF A SUMMARY WITNESS IS

2    CALCULATIONS, BUT HE'S HERE TO SUMMARIZE THE EVIDENCE.

3    CERTAINLY THE DEFENSE'S SUMMARY WITNESS, IF THEY CALL ONE, IS

4    FREE TO DO THE SAME THING AND INTERPRET THE RECORDS IN A

5    DIFFERENT WAY.

6        BUT AS OUR ULTIMATE WITNESS WHO IS SUMMARIZING THE

7    EVIDENCE FOR THE JURY, ALL OF THE TYPES OF EVIDENCE, BOTH

8    DOCUMENTS AND CALCULATIONS, HE SHOULD BE PERMITTED TO DO JUST

9    THAT AND SUMMARIZE THESE EXHIBITS.

10        THE COURT:  I APPRECIATE THAT.  WHAT I DON'T WANT IS

11    TO HAVE A WITNESS FROM EITHER SIDE GET UP AND JUST REHASH WHAT

12    THE JURY HAS ALREADY HEARD.

13        MS. SISKIND:  NO.  AND THAT'S THE -- THE PURPOSE.

14        MR. SCHAINBAUM:  THAT'S WHAT --

15        MS. SISKIND:  AND THE PURPOSE IS THAT THESE ARE NOT

16    REHASHING THEM IN THE WAY THEY WERE PRESENTED.  THEY'RE

17    ORGANIZING THEM BY ACCOUNT NUMBER, AND IT DEMONSTRATES FOR THE

18    JURY THE DEFENDANT MANAGING EACH SEPARATE ACCOUNT THAT IS AT

19    ISSUE IN THIS CASE.

20        THE COURT:  AND THAT'S RELEVANT BECAUSE?

21        MS. SISKIND:  BECAUSE THE DEFENDANT IS NOT CHARGED

22    WITH JUST FILING HIS OWN TAX RETURNS BUT AIDING AND ASSISTING

23    IN THE PREPARATION OF HIS CHILDREN'S TAX RETURNS.

24        IT'S GOING TO REQUIRE THAT THE GOVERNMENT PROVE THAT HE

25    KNEW HIS CHILDREN HAD BANK ACCOUNTS IN INDIA AND THAT HE WAS

```
1    INVOLVED IN THEIR ACTIVITY.  IT GOES TO BOTH.

2         BUT IF THE DEFENDANT DIDN'T KNOW, LET'S SAY, HIS DAUGHTER

3    HAD AN ACCOUNT AND THE WILLFULNESS WITH RESPECT TO THAT

4    ACCOUNT.

5              THE COURT:  AND THESE ARE SUMMARIES WITH RESPECT TO

6    HIS ACTIVITY AS TO HIS CHILDREN'S ACCOUNT AND HIS ACCOUNT?

7              MS. SISKIND:  AND HIS WIFE'S AS WELL.

8              THE COURT:  AND HIS WIFE'S AS WELL.

9         MR. SCHAINBAUM.

10             MR. SCHAINBAUM:  WELL, IF YOU REALLY WANT -- THIS IS

11   CLOSING ARGUMENT HAVING A WITNESS PARROT WHAT WAS ALREADY IN

12   EVIDENCE, BUT GIVEN WHAT THE GOVERNMENT HAS SAID, THAT'S WHAT

13   IS SUPPOSED TO HAPPEN.  I OBJECT THAT IT'S OVEREMPHASIS, IT'S

14   PREJUDICIAL, AND IT'S OUTSIDE THE BOUNDS OF THE SUMMARY WITNESS

15   BECAUSE HE'S REALLY PARROTING WHAT IS ALREADY IN EVIDENCE AND

16   IT'S FOR THE JURY TO DETERMINE BASED UPON THE EVIDENCE WHERE

17   IT'S TO GO.

18             THE COURT:  THANK YOU.  WHAT I DON'T WANT TO DO IS

19   TO HAVE A SUMMARY WITNESS JUST GET UP AND JUST RE-TESTIFY AS TO

20   HIS SUMMARY OF EVERY WITNESS'S TESTIMONY.  THAT'S NOT

21   APPROPRIATE.

22             MS. SISKIND:  AND I SHOULD POINT OUT THERE'S

23   SOMETHING HE'S GOING TO DO WHICH IS ACTUALLY DIFFERENT.  THE

24   COURT PROBABLY RECALLS THAT SEVERAL OF THE DOCUMENTS WE PUT IN

25   HAVE CURRENCY CONVERSIONS, AND HE'S DONE THAT SAYING WHEN THE
```

1    DEFENDANT IS PLACING A 25 MILLION RUPEES AND WHAT IT IS AND THE

2    CONVERSION AND IT'S GOING TO BE HELPFUL TO THEM.

3        IT'S NOT MY INTENTION TO HAVE HIM READ OFF EACH OF THESE

4    DOCUMENTS, JUST TO GO TO THE CHART AND REFER TO CERTAIN ONES

5    AND WITH RESPECT TO CURRENCY WHERE HE HAS DONE SOME KIND OF A

6    CONVERSION FOR.

7        THE COURT:  SO IN THAT CONTEXT HE'S TESTIFYING NOT

8    AS A SUMMARY WITNESS BUT AS A WITNESS WHO DID HIS OWN

9    EXAMINATION AND HIS OWN CALCULATION OF THE EXCHANGE RATE?

10       MS. SISKIND:  CORRECT.

11       THE COURT:  AND SO THAT'S NOT SUMMARY EVIDENCE;

12   THAT'S DIRECT EVIDENCE --

13       MS. SISKIND:  THAT IS DIRECT EVIDENCE, YES.

14       THE COURT:  -- FROM HIM.  SO I THINK WE NEED TO

15   DISTINGUISH THAT.  I DON'T THINK THERE'S BEEN ANY TESTIMONY

16   FROM ANYBODY ABOUT THE CALCULATION OTHER THAN THE RATE, BUT

17   THERE'S BEEN NOBODY WHO SAYS WHAT THE ACTUAL RESULT OF WHAT

18   THAT IS.

19       MS. SISKIND:  AND THAT'S HELPFUL FOR THE JURY TO

20   UNDERSTAND THESE DOCUMENTS, SINCE THEY CAN'T DO THEIR OWN

21   CALCULATIONS.

22       THE COURT:  SO I THINK YOU NEED TO, WHEN YOU EXAMINE

23   HIM, I THINK WE NEED TO DISTINGUISH THAT HE'S A SUMMARY

24   BASICALLY DOING HIS SUMMARY REPORTING OF HIS ANALYSIS HOWEVER

25   HE'S DONE INDEPENDENT CALCULATION OF THE EXCHANGE RATE.

1          AND I'LL BET MR. SCHAINBAUM WILL WANT TO VOIR DIRE HIM ON

2    HIS KNOWLEDGE AND UNDERSTANDING OF THE EXCHANGE RATE.  I THINK

3    HE DID TESTIFY HE WENT TO SOME WEBSITE.

4          MS. SISKIND:  PUBLICLY AVAILABLE WEBSITE.

5          THE COURT:  I THINK HE DID DO THAT, RIGHT.  AND SO

6    WHATEVER INFORMATION HE GETS FROM THAT IS SUBJECT TO CRITICISM

7    OR ACCEPTANCE, I SUPPOSE.

8          MS. SISKIND:  AND, YOUR HONOR, IF I COULD JUST POINT

9    OUT, THE OTHER DAY IN RESPONSE TO A REQUEST FROM MR. ALLEN WE

10   PROVIDED THE DEFENSE WITH A MORE LEGIBLE COPY OF THESE

11   EXHIBITS.

12         MR. SCHAINBAUM:  IS THERE A MORE LEGIBLE COPY?

13         MS. SISKIND:  NO, IT IS.  WE PROVIDED THEM.  I DON'T

14   KNOW WHY THEY DON'T HAVE THEM, BUT WE PROVIDED THEM.

15         THE COURT:  DO YOU HAVE THEM, MR. ALLEN?

16         MR. ALLEN:  I DO AGREE WITH THE GOVERNMENT THAT THEY

17   DID PRODUCE SOME MORE LEGIBLE COPIES OF CERTAIN DOCUMENTS.  TO

18   THE BEST OF MY KNOWLEDGE RIGHT NOW, I DON'T KNOW IF ALL OF

19   THESE WERE THE ONES.

20         MS. SISKIND:  BUT THIS IS MY COPY OF THE EXHIBITS.

21         MR. SCHAINBAUM:  WELL, I DON'T KNOW.

22         MS. SISKIND:  I HAVE WRITTEN ALL OVER IT, BUT THERE

23   WAS A CHANGE MADE TO 139-1, A DIGIT WAS WRONG.

24         THE COURT:  DO YOU NEED A FEW MINUTES TO SECURE YOUR

25   COPIES?  WE SHOULD GET STARTED.

DIRECT OERTEL

1              MR. SCHAINBAUM:  ONE OTHER THING, IF YOU ALLOW THIS,

2      I WANT TO HAVE WIDE LATITUDE ON CROSS-EXAMINATION.

3              THE COURT:  I'M NOT SURE I KNOW WHAT THAT MEANS.

4              MR. SCHAINBAUM:  I DON'T KNOW EITHER BY "LATITUDE."

5              THE COURT:  WELL, SEARCH FOR THE DEFINITION WHEN THE

6      TIME COMES THEN.

7              MR. SCHAINBAUM:  WELL, I'LL BE LOOKING FOR THE

8      TRUTH.

9              MS. SISKIND:  AND, YOUR HONOR, THIS IS NOT GOING

10     INTO EVIDENCE.

11             THE COURT:  I UNDERSTAND.

12             MR. SCHAINBAUM:  I STILL OBJECT BECAUSE IT'S

13     EMPHASIZING AND REHASHING AND REEMPHASIZING AND ACTUALLY

14     PRODDING THE JURY IN AN UNFAIR PREJUDICIAL MANNER.

15             THE COURT:  I THINK YOU, AS YOU SAID, CLOSING

16     ARGUMENT.  THAT MIGHT BE PART OF YOUR ARGUMENT TO EMPHASIZE --

17             MR. SCHAINBAUM:  I NEED ANOTHER TWO MINUTES TO WRITE

18     THAT NOTE DOWN FOR MY CLOSING ARGUMENT.

19             THE COURT:  SO WE'LL GIVE MR. ALLEN A CHANCE.  DO

20     YOU HAVE AN EXTRA CLEAN COPY OF THIS?

21             MS. SISKIND:  NO.  WE PROVIDED TWO COPIES TO THE

22     COURT AND ONE COPY TO THE DEFENSE.

23             THE COURT:  I'LL SEE IF I HAVE A COPY AND YOU CAN

24     BORROW MINE IF HE DOES NOT HAVE ONE.

25             MS. SISKIND:  I THINK YOU HAVE THE WRONG VERSION OF

1    139-1.

2              MR. SCHAINBAUM:  WE HAVE THE WRONG ONE.

3              THE COURT:  I'LL GIVE YOU MY COPIES.

4              MS. SISKIND:  AND THAT'S GOING TO BE OF 2 AND NOT 5.

5              MR. SCHAINBAUM:  AND THAT'S THE DANGER, TOO, OF

6    INACCURACY.

7              MR. KENNEDY:  WE PROVIDED ALL OF THE UPDATED COPIES.

8              THE COURT:  I'M GOING TO LOOK IN MY COPIES AND SEE

9    IF I HAVE THE CLEAN COPIES.  I'LL HAND THEM DOWN TO COUNSEL,

10   AND YOU CAN REFER TO THE CLEAN COPIES.

11             MS. SISKIND:  ALL RIGHT.

12             THE COURT:  THANK YOU VERY MUCH.

13        (END OF DISCUSSION AT SIDE-BAR.)

14             THE COURT:  THANK YOU, COUNSEL.

15             MS. SISKIND:  THIS IS THE CORRECT VERSION.

16             THE COURT:  MR. SCHAINBAUM, I THINK YOU HAVE THE

17   CORRECT VERSION OF THESE DOCUMENTS.

18             MR. SCHAINBAUM:  WE HAVE JUST BEEN HANDED THEM BY

19   GOVERNMENT COUNSEL.

20             THE COURT:  AND SHE RECEIVED THEM FROM ME.

21             MR. SCHAINBAUM:  THANK YOU, YOUR HONOR.

22             THE COURT:  AND THEY'RE FROM MY BINDER, AND I

23   BELIEVE THEY'RE THE MOST CURRENT VERSION.

24             MR. SCHAINBAUM:  ALL RIGHT.

25             THE COURT:  SO, COUNSEL, YOU CAN CONTINUE AND YOU

1    MAY USE THESE EXHIBITS FOR DEMONSTRATIVE PURPOSES ONLY.

2              MR. SCHAINBAUM:  AND YOU NOTED MY OBJECTION.

3              THE COURT:  I DID NOTE YOUR OBJECTION.

4              MR. SCHAINBAUM:  OKAY.

5              THE COURT:  AND THEY'RE BEING USED NOTING YOUR

6    OBJECTION AND OVER YOUR OBJECTION.  THANK YOU.

7              MR. SCHAINBAUM:  AS WELL AS FOR THE OTHER SUMMARY

8    THAT WAS JUST UTILIZED 140.

9              THE COURT:  YES, THAT OBJECTION WAS ALSO MADE.

10             MR. SCHAINBAUM:  THANK YOU, YOUR HONOR.

11             THE COURT:  YOU'RE WELCOME.

12   BY MS. SISKIND:

13   Q.   MR. OERTEL, WHEN YOU WERE PREPARING THE SUMMARIES -- LET

14   ME ASK YOU THIS, WHEN YOU WERE GOING THROUGH THE EXHIBITS THAT

15   WERE INTRODUCED AT TRIAL, DID SOME OF THOSE EXHIBITS HAVE

16   AMOUNTS EXPRESSED IN FOREIGN CURRENCIES?

17   A.   YEAH.

18   Q.   AND IN ORDER TO PREPARE FOR YOUR TESTIMONY TODAY, DID YOU

19   TAKE THOSE FOREIGN CURRENCIES AND CONVERT THEM INTO U.S.

20   DOLLARS?

21   A.   YES.

22   Q.   HOW DID YOU DO THAT?

23   A.   I WENT TO AN ONLINE SITE.  IT'S CALLED OANDA.COM.  IT'S

24   GOT A REALLY EASY VERSION OF CONVERTING DIFFERENT FORMS OF

25   CURRENCIES INTO U.S. DOLLARS.

1    Q.   AND HOW DO YOU USE IT?

2    A.   YOU PLUG IN WHATEVER FOREIGN CURRENCY YOU HAVE, YOU PUT IN

3    THE DATE THAT YOU WANT, AND THEN IT GIVES YOU THE EXCHANGE

4    RATE.

5    Q.   AND COULD YOU DO IT AS OF TODAY'S DATE, FOR EXAMPLE?

6    A.   SURE.

7    Q.   COULD YOU PICK ANY DATE IN HISTORY TO DO IT FOR?

8    A.   SURE.  I COULD DO IT FOR MY BIRTHDAY.

9    Q.   SO -- AND THIS WAS THE SAME WEBSITE THAT YOU USED IN YOUR

10   INTEREST INCOME CALCULATIONS; CORRECT?

11   A.   YEAH, THAT'S RIGHT.  I USED THE SAME -- THAT SAME SITE FOR

12   ALL OF THE CONVERSIONS.  I WANTED TO BE CONSISTENT.

13   Q.   CAN YOU TURN FOR A MOMENT TO WHAT HAS BEEN MARKED AS

14   GOVERNMENT'S EXHIBIT 138.

15   A.   OKAY.

16   Q.   WHAT IS THE TITLE OF 138?

17   A.   CURRENCY CONVERSIONS.

18   Q.   AND IS THIS THE RESULT OF YOU PLUGGING IN THOSE NUMBERS ON

19   THAT WEBSITE FOR VARIOUS EXHIBITS?

20   A.   YES.

21   Q.   DOES EXHIBIT 138 FAIRLY AND ACCURATELY SUMMARIZE YOUR

22   CURRENCY CONVERSIONS?

23   A.   YES.

24        MS. SISKIND:  YOUR HONOR, THE GOVERNMENT SEEKS TO

25   USE EXHIBIT 138 FOR DEMONSTRATIVE PURPOSES.

DIRECT OERTEL

1           MR. SCHAINBAUM:  SAME OBJECTION, YOUR HONOR.

2           THE COURT:  NOTED AND IT WILL BE PERMITTED TO BE

3    USED FOR DEMONSTRATIVE PURPOSES ONLY.

4           MS. SISKIND:  MS. LANE, IF WE COULD DISPLAY 138.

5    Q.  IS THIS YOUR CHART OF CURRENCY CONVERSIONS?

6    A.  YES.

7    Q.  AND THE EXHIBITS LISTED IN THE LEFT-HAND COLUMN, ARE THOSE

8    ONES THAT CONTAIN AMOUNTS EXPRESSED IN FOREIGN CURRENCIES?

9    A.  RIGHT.

10   Q.  AND WILL YOU -- WHEN WE GO THROUGH THE VARIOUS EXHIBITS IN

11   YOUR CHARTS 139-1 THROUGH 139-5 WILL YOU BE REFERRING BACK TO

12   THIS IN ORDER TO TELL THE JURY WHAT VARIOUS AMOUNTS ARE IN U.S.

13   DOLLARS?

14   A.  SURE.

15   Q.  SO I WANT TO START WITH EXHIBIT 139-1.  IF YOU COULD WAIT

16   TO DISPLAY THAT FOR A MOMENT.

17         YOUR HONOR, I WANT TO VERIFY THAT ALL OF MY EXHIBITS HAVE

18   BEEN ADMITTED.

19           THE COURT:  SURE.  THANK YOU.

20         (PAUSE IN PROCEEDINGS.)

21           MS. SISKIND:  IF YOU COULD DISPLAY EXHIBIT 139-1,

22   PLEASE.  I HAVE VERIFIED THAT ALL OF THE EXHIBITS ARE ADMITTED

23   INTO EVIDENCE.

24           THE COURT:  THANK YOU.

25   BY MS. SISKIND:

1    Q.    WHAT IS THE TITLE OF THIS CHART?

2    A.    SUMMARY OF ACCOUNT ACTIVITY ASHVIN DESAI HSBC INDIA

3    ACCOUNT 0043679.

4    Q.    AND DO ALL OF THE EXHIBITS IN THE LEFT-HAND COLUMN --

5    WELL, FIRST OF ALL, WERE ALL OF THE EXHIBITS ADMITTED AT TRIAL?

6    A.    I BELIEVE SO.

7    Q.    AND DO THEY ALL RELATE TO ACCOUNT 3679?

8    A.    YEAH.

9              MS. SISKIND:  YOUR HONOR, MAY I USE A BLOWUP OF THIS

10   TO DISPLAY TO THE JURY?

11             THE COURT:  HAVE YOU SEEN THE BLOWUP?

12             MR. SCHAINBAUM:  NO.

13             THE COURT:  IF YOU COULD SHOW MR. SCHAINBAUM THE

14   BLOWUP, PLEASE.

15             MR. SCHAINBAUM:  SAME OBJECTION, YOUR HONOR.  THE

16   EXHIBITS REFERENCED IN THE BLOWUP IS THE DIRECT EVIDENCE FOR

17   THE JURY TO DETERMINE FROM LOOKING AT THE EVIDENCE.

18             THE COURT:  I UNDERSTAND.

19             MR. SCHAINBAUM:  AND THIS IS JUST THE GOVERNMENT'S

20   INTERPRETATION OF WHAT EACH EXHIBIT STATES UNDER THE, QUOTE,

21   HEADING SUMMARY.

22             THE COURT:  MR. SCHAINBAUM, YOU'LL HAVE AN

23   OPPORTUNITY AT CROSS-EXAMINATION TO PRESENT THAT POINT TO THIS

24   WITNESS AND TO OUR JURY, BUT I NOTE YOUR OBJECTION.  AND I'LL

25   ALLOW THE GOVERNMENT TO USE THIS OVER YOUR OBJECTION.

1           CAN THE WITNESS SEE THE CHART FROM THERE?

2                 MS. SISKIND:  HE HAS IT.

3                 THE WITNESS:  I HAVE IT IN MY BINDER.

4                 THE COURT:  OH, IT'S THE SAME CHART.

5                 THE WITNESS:  THANK YOU, YOUR HONOR.

6                 THE COURT:  MR. SCHAINBAUM, CAN YOU SEE THE CHART?

7                 MR. SCHAINBAUM:  I CAN SEE IT, AND I KNOW WHAT I

8     SAID THE OTHER DAY, IT'S A DISTORTION.

9                 THE COURT:  I UNDERSTAND YOUR OPINION OF THE CHART.

10    I'M JUST CURIOUS WHETHER YOU CAN SEE THE CHART.

11                MR. SCHAINBAUM:  I SEE THE CHART.

12                THE COURT:  THANK YOU.

13    BY MS. SISKIND:

14    Q.  MR. OERTEL, WHAT IS THE FIRST EXHIBIT REFERENCED ON 139-1?

15    A.  28.

16                MS. SISKIND:  AND, MS. LANE, IF WE CAN HAVE 28 ON

17    THE SCREEN?

18    Q.  AND IF YOU CAN FLIP TO 28 IN YOUR BINDER.  IT SHOULD BE IN

19    THE FIRST VOLUME PROBABLY.

20    A.  SURE.

21                MS. SISKIND:  MS. LANE, IF YOU WOULD GO TO THE

22    SECOND PAGE.  I'M SORRY, THE LETTER IS IN THERE.  YOU MIGHT GET

23    THE THIRD PAGE.

24                THE WITNESS:  I HAVE 28.

25    BY MS. SISKIND:

DIRECT OERTEL

```
 1     Q.   WELL, FIRST LOOKING AT THE REFERENCE TO 139-1, WHAT IS THE

 2     DATE OF THE TRANSACTION IN EXHIBIT 28?

 3     A.   7-17-06.

 4     Q.   JULY 17TH, 2006?

 5     A.   YES.

 6     Q.   AND WHAT TYPE OF TRANSACTION WAS OCCURRING IN EXHIBIT 28?

 7     A.   WELL, THE SUBJECT IS REACTIVATION --

 8     Q.   I'M ASKING YOU TO LOOKING AT EXHIBIT 139-1 AND LOOK AT THE

 9     COLUMN FOR TYPE OF TRANSACTION.

10     A.   OH, I'M SORRY.  REACTIVATION OF DORMANT ACCOUNT.

11     PLACEMENT OF NEW DEPOSITS.

12     Q.   AND LOOKING AT THE THIRD PAGE OF EXHIBIT 28, DO YOU SEE A

13     LETTER?

14     A.   YES.

15     Q.   AND ARE THERE REFERENCES TO THREE DIFFERENT DEPOSITS?

16     A.   YES.

17     Q.   IN WHAT CURRENCY ARE THOSE DEPOSITS EXPRESSED?

18     A.   IT SAYS INR, WHICH, AGAIN, MEANS INDIA RUPEES.

19     Q.   AND DID YOU CONVERT THOSE AMOUNTS TO U.S. DOLLARS?

20     A.   I THINK SO, YEAH.

21     Q.   AND WOULD ANYTHING REFRESH YOUR RECOLLECTION IF YOU DID

22     THAT?

23     A.   YES.  YES, THE CURRENCY CONVERSION.

24     Q.   ALL RIGHT.  SO IF YOU TURN TO 138.

25     A.   OKAY.
```

1    Q.   DID YOU CONVERT THESE AMOUNTS TO U.S. DOLLARS?

2    A.   YES, I DID.

3    Q.   WHAT WAS THE VALUE OF 2.5 RUPEES ON JULY 17TH, 2006?

4    A.   $54,025.

5    Q.   WHAT WAS THE VALUE OF 1 MILLION RUPEES FOR THE SECOND

6    DEPOSIT ON JULY 17TH, 2006?

7    A.   $21,610.

8    Q.   AND WHAT WAS THE VALUE OF 636,674.28 RUPEES ON JULY 17TH,

9    2006?

10   A.   $13,758.53.

11   Q.   NOW, IF YOU GO TO LOOK BACK AT 139-1, WHAT TYPE OF

12   TRANSACTION WAS INCLUDED IN GOVERNMENT'S EXHIBIT 29?

13   A.   IT IS TRANSFER OF FUNDS FROM HSBC PRIVATE BANK LIMITED

14   U.K.

15          MS. SISKIND:  MS. LANE, IF YOU COULD DISPLAY THE

16   SECOND PAGE OF EXHIBIT 29.

17   Q.   DO YOU SEE AMOUNTS ON THIS PAGE -- ON THIS LETTER

18   EXPRESSED IN FOREIGN CURRENCIES?

19   A.   YES, I SEE THEM IN EUROS, GBP.  GBP STANDS FOR GREAT

20   BRITAIN POUNDS.

21   Q.   SO IN THAT FIRST PARAGRAPH OF THE LETTER WHERE IT SAYS

22   WIRE TRANSFER, EUROS 523,261.97, DID YOU CALCULATE WHAT THE

23   VALUE OF THAT WAS ON THE DATE OF THIS LETTER, JULY 20TH, 2006?

24   A.   YES.

25   Q.   AND WHAT WAS THE VALUE OF THAT AMOUNT OF EUROS ON THAT

1    DATE?

2    A.   LET'S SEE.  THAT'S 654 -- EXCUSE ME.  $867.59.

3    Q.   AND DO YOU SEE IN THE SECOND PARAGRAPH OF THE LETTER IN

4    EXHIBIT 29 WHERE IT INSTRUCTS WIRE TRANSFER GBP 832,913?

5    A.   YES.

6    Q.   AND WHAT WAS THE VALUE OF THAT AMOUNT BEING WIRE

7    TRANSFERRED ON JULY 20TH, 2006?

8    A.   IN UNITED STATES DOLLARS IT'S $1,523,855.98.

9    Q.   AND IF WE GO BACK TO THE 139-1, WHAT IS THE NEXT EXHIBIT

10   THAT IS LISTED IN THIS CHART?

11   A.   IT IS EXHIBIT 30.  THAT'S A REQUEST FOR INTERNET BANKING

12   ACCESS.

13   Q.   AND HOW ABOUT EXHIBIT 139, WHAT WAS THE DATE OF THAT

14   EXHIBIT?

15   A.   THAT'S FEBRUARY 1ST, 2007.

16   Q.   AND WHAT TYPE OF TRANSACTION DOES IT RELATE TO?

17   A.   DEPOSITING CHECKS FROM BANK OF AMERICA AND CITIBANK.  THEY

18   TOTAL $325,000.

19   Q.   AND LET'S SKIP DOWN TO EXHIBIT 63, WAS THIS ANOTHER

20   EXHIBIT THAT CONTAINED AN AMOUNT EXPRESSED IN A FOREIGN

21   CURRENCY?

22   A.   YES.  THAT ONE WAS IN RUPEES AGAIN.

23          MS. SISKIND:  MS. LANE, IF YOU COULD GO TO THE

24   SECOND PAGE OF EXHIBIT 63.

25   Q.   DO YOU SEE AN AMOUNT EXPRESSED ON HERE OF 20,000 RUPEES?

DIRECT OERTEL

1    A.   YES.

2    Q.   AND DO YOU HAVE THAT IN YOUR BINDER IN FRONT OF YOU AS

3    WELL, IF YOU WANT TO LOOK AT IT?

4    A.   SURE.  OKAY.

5    Q.   AND CAN YOU JUST READ AFTER "DEAR SIR" WHAT IT SAYS IN THE

6    LETTER?

7    A.   "PLEASE ISSUE PAY ORDER AS FOLLOWS:  DEBIT ACCOUNT FROM

8    NRE SAVINGS THE AMOUNT IS 20,000 RUPEES; THE BENEFICIARY NAME

9    IS -- LET ME SPELL IT.  IT'S H, I BELIEVE IT'S E-E-N-A,

10   P-U-R-O-H-I-T PAYABLE AT BOMBAY.

11   Q.   AND WHAT IS THE DATE OF THIS LETTER?

12   A.   FEBRUARY 5TH, 2008.

13   Q.   AND DID YOU CALCULATE WHAT THE VALUE IN U.S. DOLLARS OF

14   20,000 RUPEES WAS ON FEBRUARY 5TH, 2008?

15   A.   YES.

16   Q.   AND WHAT WAS IT?

17   A.   $507.04.

18   Q.   GOING A LITTLE FARTHER DOWN, EXHIBIT 139-1.  DO YOU SEE A

19   REFERENCE TO EXHIBIT 97?

20   A.   YES.

21   Q.   AND IS THIS ANOTHER EXHIBIT THAT CONTAINS SOME AMOUNTS

22   EXPRESSED IN A FOREIGN CURRENCY?

23   A.   YES.  IT'S THE CONVERSION OF 4,800,000 RUPEES INTO A

24   DEPOSIT INTO --

25   Q.   IS IT 4,800,000 --

```
 1    A.   I'M SORRY.  4,800,000.

 2    Q.   OR IS IT 48 MILLION?

 3    A.   IT'S -- I'M SORRY, THE COMMAS.

 4    Q.   IS THAT BECAUSE COMMAS ARE PLACED DIFFERENTLY WITH INDIA

 5    CURRENCY THAN U.S. CURRENCY?

 6    A.   YEAH, THAT'S WHAT GETS ME.  IT'S SIX ZEROS WITH 48.  SO

 7    IT'S 48 MILLION.

 8    Q.   48 MILLION RUPEES?

 9    A.   YES.

10    Q.   AND DID YOU CALCULATE WHAT THE VALUE OF 48 MILLION RUPEES

11    WAS ON MAY 22ND, 2009?

12    A.   YES, I DID.

13    Q.   AND WHAT IS IT?

14    A.   IT'S $1,700,870.

15    Q.   AND WHAT IS THE LAST TRANSACTION LISTED ON THIS CHART?

16    A.   IT'S EXHIBIT 101, SEPTEMBER 29, 2009, AND IT'S A REQUEST

17    TO ISSUE A DEBIT CARD.

18    Q.   AND IF YOU COULD TURN TO 139-2, PLEASE.

19    A.   OKAY.

20         MS. SISKIND:  ANY OBJECTION TO IT BEING DISPLAYED TO

21    THE JURY?

22         THE COURT:  MR. SCHAINBAUM?

23         MR. SCHAINBAUM:  SAME OBJECTION.  IT'S A GREAT

24    DISTORTION.  IT'S FOR THE JURY TO DETERMINE FROM THE EVIDENCE

25    ITSELF.
```

DIRECT OERTEL

```
1                    THE COURT:  ALL RIGHT.  YES.  AND THAT OBJECTION

2       APPLIES, I BELIEVE, WITH ALL OF THE 139 CHARTS; IS THAT

3       CORRECT?

4                    MR. SCHAINBAUM:  CORRECT, AND ALSO WITH 140.

5                    THE COURT:  YES.

6                    MS. SISKIND:  MAY I DISPLAY IT, YOUR HONOR?

7                    THE COURT:  YES, IT MAY BE DISPLAYED OVERRULING THE

8       OBJECTION -- NOTING THE OBJECTION.

9       BY MS. SISKIND:

10      Q.   WHAT IS THE TITLE OF 139-2?

11      A.   IT IS SUMMARY OF ACCOUNT ACTIVITY NILA DESAI HSBC INDIA

12      ACCOUNT 0046895.

13      Q.   AND WHAT IS THE FIRST EXHIBIT REFERENCED ON HERE?

14      A.   31.

15      Q.   AND WHAT WAS THE DATE OF THE TRANSACTION AT ISSUE IN

16      EXHIBIT 31?

17      A.   OCTOBER 17TH, 2006.

18      Q.   AND WHAT WAS THE NATURE OF THAT TRANSACTION?

19      A.   IT IS THE TRANSFER OF $1 MILLION FROM HSBC PRIVATE BANK

20      LIMITED U.K.

21      Q.   AND EXHIBIT 41, WHAT WAS THE DATE OF THAT EXHIBIT?

22      A.   APRIL 18TH, 2007.

23      Q.   AND WHAT WAS THE NATURE OF THE TRANSACTION IN THERE?

24      A.   THAT IS THE TRANSFER OF $786,822.62 FROM HSBC INDIA

25      ACCOUNT 0043679.
```

DIRECT OERTEL

1    Q.   AND WHOSE HSBC ACCOUNT ACCORDING TO THE EVIDENCE WAS

2    0043679?

3    A.   THAT'S MR. DESAI'S.

4    Q.   AND DOES EXHIBIT 86 SHOW ANOTHER TRANSFER FROM HIS ACCOUNT

5    TO HIS WIFE'S ACCOUNT?

6    A.   YES.

7    Q.   AND IS THAT -- WHAT IS THE AMOUNT OF THAT TRANSFER?

8    A.   THAT IS 250,000 RUPEES.

9    Q.   AND DID YOU CALCULATE WHAT THE VALUE OF 250,000 RUPEES WAS

10   ON FEBRUARY 3RD, 2009?

11   A.   YES.

12   Q.   AND WHAT WAS IT?

13   A.   IT'S $5,041.86.

14   Q.   IF YOU COULD GO TO EXHIBIT 139-3.

15        YOUR HONOR, MAY I DISPLAY THE BLOWUP OF 139-3?

16            THE COURT:  YES, NOTING MR. SCHAINBAUM'S OBJECTION.

17            MR. SCHAINBAUM:  WELL, I HAVE NOT EVEN SEEN THE

18   CHART, YOUR HONOR.

19            MS. SISKIND:  THEY'RE ALL BLOWUPS OF THE -- I'LL

20   SHOW THEM TO HIM.

21            THE COURT:  THESE ARE REPRESENTATIVE CHARTS THAT ARE

22   BLOWUPS OF THE EXHIBITS.

23            MR. SCHAINBAUM:  WELL, THE SAME OBJECTION.

24            THE COURT:  OF COURSE.

25            MR. SCHAINBAUM:  THE EVIDENCE SPEAKS FOR ITSELF, AND

1    IT'S FOR THE JURY TO DETERMINE FROM THE EVIDENCE.

2            MS. SISKIND:  YOUR HONOR, CAN WE HAVE A SIDE-BAR,

3    PLEASE.

4            THE COURT:  AND THOSE OBJECTIONS, MR. SCHAINBAUM,

5    WILL BE NOTED AS TO EACH OF THESE, AND I BELIEVE THEY'RE A

6    COLLECTIVE OBJECTION SO I DON'T NEED THE SPEAKING OBJECTION

7    EACH TIME.  THEY'RE NOTED.

8            MR. SCHAINBAUM:  ALL RIGHT.  THANK YOU, YOUR HONOR.

9            MS. SISKIND:  THANK YOU, YOUR HONOR.

10            THE COURT:  YOU'RE WELCOME.

11    BY MS. SISKIND:

12    Q.   WHAT IS THE TITLE OF 139-3?

13    A.   SUMMARY OF ACCOUNT ACTIVITY AMI DESAI HSBC INDIA ACCOUNT

14    0045163.

15    Q.   AND WHAT TWO EXHIBITS ARE LISTED IN THIS CHART?

16    A.   66 AND 69.

17    Q.   ARE THOSE THE TWO SETS OF DEPOSIT RECORDS THAT YOU LOOKED

18    AT THIS MORNING?

19    A.   THAT'S RIGHT, THE ONE FOR 250,000 AND THE ONE FOR A LITTLE

20    OVER 208,000.

21    Q.   IF WE CAN TURN TO EXHIBIT 66 AND LOOK AT THE SECOND PAGE?

22    A.   OKAY.

23    Q.   DO THE SECOND, THIRD, AND FOURTH PAGES OF EXHIBIT 66 SHOW

24    THE CHECKS THAT MAKE UP THE DEPOSITS ON THAT DATE?

25    A.   YES, THERE ARE THREE CHECKS.

1    Q.   AND ON PAGE 2 OF THE EXHIBIT WHO IS THIS CHECK PAID TO THE

2    ORDER OF?

3    A.   ASHVIN DESAI.

4    Q.   ON THE NEXT PAGE WHO IS THAT CHECK PAID TO THE ORDER OF?

5    A.   PAID TO THE ORDER OF ASHVIN DESAI.

6    Q.   AND THE THIRD CHECK?

7    A.   PAID TO THE ORDER OF ASHVIN DESAI.

8    Q.   AND IF YOU GO TO EXHIBIT 69, ARE BOTH CHECKS -- DO BOTH

9    CHECKS IN THAT EXHIBIT CONTAIN THE NAME ASHVIN DESAI ON THEM?

10   A.   ASHVIN, YEAH.

11   Q.   AND IF YOU COULD GO TO 139-4.

12            MR. SCHAINBAUM:  CAN WE HAVE A SIDE-BAR?

13            THE COURT:  YES.

14        (SIDE-BAR CONFERENCE ON THE RECORD.)

15            THE COURT:  WE'RE AT SIDE-BAR.

16            MR. SCHAINBAUM:  THIS PARTICULAR CHART IS MISLEADING

17   BECAUSE IT SHOWS -- AARTI KUMAR'S TESTIMONY WAS THAT THERE WERE

18   ONLY TWO ACCOUNTS, ONE WITH ASHVIN DESAI AND NILA DESAI, AND

19   NEAL DESAI, AND HIS DAUGHTER, AND THIS SUGGESTS AN INDEPENDENT

20   ACCOUNT WHICH IS NOT REALLY AN INDEPENDENT ACCOUNT, IT'S A

21   SUBACCOUNT.

22            MS. SISKIND:  IF YOUR HONOR LOOKS AT ONE OF THE

23   SPREADSHEETS THERE ARE FOUR LISTED ON THERE:  ONE THAT IS

24   IDENTIFIED AS ASHVIN AND NEAL; AND ONE THAT IS IDENTIFIED AS

25   NILA AND AMI; AND ONE THAT IS IDENTIFIED AS JUST NEAL; AND ONE

1    THAT IS IDENTIFIED JUST AS AMI.  AND THERE ARE FOUR SEPARATE

2    ACCOUNT NUMBERS.  SO THERE'S EVIDENCE OF FOUR SEPARATE

3    ACCOUNTS, TWO THAT WERE JOINT AND TWO THAT WERE HELD WITH EACH

4    OF THE CHILDREN.

5            MR. SCHAINBAUM:  BUT THE TESTIMONY OF AARTI KUMAR

6    WAS THAT THERE WERE ONLY TWO ACCOUNTS AND THESE OTHER ACCOUNTS

7    ARE SUBACCOUNTS OF ASHVIN DESAI.  JUST PUT UP EVIDENCE WHERE

8    ALL OF THE CHECKS SAY ASHVIN DESAI, ASHVIN DESAI.

9            MS. SISKIND:  AND ALSO I WOULD NOTE ON EXHIBIT 66

10   AND 69 THE MONIES BEING DEPOSITED, THERE'S ACCOUNT NUMBER

11   REFERENCES FOR AMI AND NEAL THAT ARE DIFFERENT FROM

12   MR. DESAI'S, WHICH IS 3679.  THERE ARE FOUR DIFFERENT ACCOUNT

13   NUMBERS THAT ARE IN EVIDENCE, AND THERE IS SUFFICIENT EVIDENCE

14   THAT THERE ARE DIFFERENT NAMES ASSOCIATED WITH EACH ACCOUNT.

15           MR. SCHAINBAUM:  THEY'RE SUBACCOUNTS.

16           THE COURT:  MY RECOLLECTION IS THAT THERE WERE

17   FOUR -- EVIDENCE OF FOUR SEPARATE ACCOUNTS.  NOW, THEY MAY BE

18   SUBACCOUNTS OR SUBJECT TO OTHER SCRUTINY, BUT I'M GOING TO

19   ALLOW THE CHART TO COME IN.

20           MR. SCHAINBAUM:  NOT TO COME IN.

21           THE COURT:  NO, NO, TO BE USED BY THIS WITNESS AS A

22   SUMMARY.

23           MR. SCHAINBAUM:  OVER MY OBJECTION.

24           THE COURT:  OF COURSE.  AND I BELIEVE THAT YOU WILL

25   HAVE THE SAME OBJECTION AS TO EACH OF THESE CHARTS.  YOU HAVE

1    ALREADY EXPRESSED THAT I BELIEVE.

2              MR. SCHAINBAUM:  CORRECT.

3              THE COURT:  SO I'LL NOTE THOSE OBJECTIONS.  WE DON'T

4    NEED A SPEAKING OBJECTION EACH TIME.

5              MR. SCHAINBAUM:  IF YOU WOULD DO THAT KINDLY, I

6    WON'T HAVE TO DO IT, BUT OTHERWISE I WANT TO PROTECT THE RECORD

7    HERE BY MAKING SURE BECAUSE THE GOVERNMENT PROSECUTOR WILL SAY

8    MAYBE AT SOME TIME, WELL, MR. SCHAINBAUM FAILED TO OBJECT

9    TIMELY.

10             MS. SISKIND:  I DON'T THINK I WOULD BE ABLE TO SAY

11   THAT.

12             THE COURT:  I DON'T THINK SHE COULD CREDIBLY MAKE

13   THAT REMARK.

14             MR. SCHAINBAUM:  I'M NOT GOING TO ANSWER THAT.

15             THE COURT:  YOU'VE BEEN DOING -- YOU'VE BEEN

16   OBJECTING AND MAKING YOUR OBJECTIONS NOTED, AND I HAVE BEEN

17   DOING MY BEST TO NOTE YOUR OBJECTIONS FOR THE RECORD TO MAKE A

18   RECORD.

19             MR. SCHAINBAUM:  YES, I HAVE.  THAT'S THE ONLY

20   REASON I HAVE BEEN UP HERE IS BECAUSE I GET WORRIED AND I DON'T

21   HEAR ANYTHING, SO I JUST JUMP UP AND MAKE THE OBJECTION.  AND

22   YOU CAN TELL ME ON THE RECORD THAT IT'S A CONTINUING --

23             THE COURT:  I THINK I TRIED TO DO THAT LAST TIME,

24   AND I'LL DO THAT AGAIN.

25             MR. SCHAINBAUM:  YES.

```
 1              THE COURT:  I'LL NOTE EVERY TIME ONE OF THESE CHARTS

 2     IS INTRODUCED.

 3              MR. SCHAINBAUM:  NOT INTRODUCED, DISPLAYED.

 4              THE COURT:  THANK YOU.  DISPLAYED.  IT'S NOT COMING

 5     INTO EVIDENCE.  THANK YOU.  I'M CORRECTED.

 6              MR. SCHAINBAUM:  YEAH.  BECAUSE IT'S PREJUDICIAL

 7     ENOUGH, BUT IF IT COMES INTO EVIDENCE --

 8              THE COURT:  THEY'RE NOT BEING SOUGHT TO BE ADMITTED.

 9     THEY'RE NOT GOING TO BE MOVED INTO EVIDENCE.

10              MR. SCHAINBAUM:  OKAY.

11              THE COURT:  THEY'RE ONLY BEING DISPLAYED FOR THIS

12     WITNESS AS USED AS A SUMMARY WITNESS.

13              MR. SCHAINBAUM:  OVER MY OBJECTION, DULY NOTED

14     CONTINUING.

15              THE COURT:  YES.

16              MS. SISKIND:  YOUR HONOR, WE OBJECT.  WHENEVER THE

17     DEFENSE MAKES AN OBJECTION, PARTICULARLY BECAUSE THE GROUNDS

18     ARE CLEAR AT THIS POINT, IT'S NOT AN APPROPRIATE TIME FOR THEM

19     TO MAKE THEIR CLOSING ARGUMENT OVER AND OVER AGAIN TO THE JURY.

20              THE COURT:  I'VE GIVEN SOME LATITUDE ABOUT THAT.  I

21     DON'T APPRECIATE, AND I DON'T THINK THE JURY APPRECIATES,

22     SPEAKING OBJECTIONS.  THEY'RE NOT HELPFUL.

23         THE SPEAKING OBJECTIONS ARE SUPPOSED TO HELP THE JUDGE

24     WITH THE EVIDENCE, BUT I THINK WE'RE ALL EXPERIENCED IN TRIAL

25     COURTS AND SOME OF THAT INFORMATION AND SPEAKING OBJECTIONS CAN
```

```
 1        LEAVE THE JURY WITH A DIFFERENT MIND.  THAT'S NOT THE PURPOSE

 2        OF OBJECTIONS.  THEY'RE LEGAL OBJECTIONS ONLY.

 3             AND I'M NOT SUGGESTING ANYTHING UNTOWARD, MR. SCHAINBAUM,

 4        IT'S JUST I HAVE NOT EXPRESSED MY POLICY, PERHAPS, ABOUT

 5        SPEAKING OBJECTIONS.

 6             I'VE ALLOWED YOU GREAT LATITUDE, I BELIEVE, IN MAKING YOUR

 7        OBJECTIONS AND MAKING THE RECORD.

 8                  MR. SCHAINBAUM:  THAT'S THE PRIMARY PURPOSE.

 9                  THE COURT:  UNDERSTOOD, AND WE CAN MAKE THAT RECORD

10        BY ME NOTING YOUR OBJECTIONS.

11                  MR. SCHAINBAUM:  THAT'S CORRECT.

12                  THE COURT:  AND THE SIDE-BAR CONVERSATION IS PART OF

13        THE RECORD, AND I THINK THAT THIS SUFFICIENTLY ESTABLISHED FOR

14        THE RECORD YOUR POSITION ON THAT.

15                  MR. SCHAINBAUM:  OKAY.  THANK YOU.

16                  THE COURT:  THANK YOU.

17             (END OF DISCUSSION AT SIDE-BAR.)

18        BY MS. SISKIND:

19        Q.   WHAT IS THE TITLE, MR. OERTEL, OF 139-4?

20        A.   IT IS SUMMARY OF ACCOUNT ACTIVITY NEAL DESAI HSBC INDIA

21        ACCOUNT 0049689.

22        Q.   AND THE FIRST TWO EXHIBITS REFERENCED ON HERE, ARE THOSE

23        THE ONES WE TALKED ABOUT 66 AND 69?

24        A.   RIGHT, WITH THE DEPOSITS.

25        Q.   AND WHAT IS THE TYPE OF TRANSACTION SET FORTH IN
```

```
 1        EXHIBIT 75?

 2        A.   THAT'S A TRANSFER.

 3        Q.   AND OF HOW MUCH MONEY?

 4        A.   A TRANSFER OF $185,000 FROM HSBC INDIA ACCOUNT 0043679.

 5        Q.   AND THAT'S A TRANSFER FROM MR. DESAI -- FROM ASHVIN

 6   DESAI'S HSBC ACCOUNT TO HIS SON'S ACCOUNT?

 7        A.   THAT'S RIGHT, BECAUSE IT'S 3679 AND THAT'S MR. DESAI'S.

 8        Q.   AND WHAT WAS THE DATE OF THAT TRANSFER?

 9        A.   THAT IS JUNE 16TH, 2008.

10        Q.   AND WHAT KIND OF TRANSACTION WAS SET FORTH IN EXHIBIT 132?

11        A.   THAT IS A TRANSFER OF FUNDS TO HSBC INDIA ACCOUNT 0043679.

12             MS. SISKIND:  IF WE CAN HAVE 139-5.

13             MR. SCHAINBAUM:  SAME OBJECTION.

14             THE COURT:  NOTED, AND IT WILL BE PERMITTED TO BE

15   DISPLAYED TO THE JURY FOR SUMMARY PURPOSES OVER YOUR OBJECTION

16   AS NOTED.

17             MR. SCHAINBAUM:  THANK YOU, YOUR HONOR.

18             THE COURT:  YOU'RE WELCOME.

19   BY MS. SISKIND:

20        Q.   WHAT IS 139-5?

21        A.   THAT IS THE SUMMARY OF ACCOUNT ACTIVITY AMI DESAI HSBC

22   DUBAI ACCOUNT 0215624.

23        Q.   AND WHAT TYPE OF TRANSACTION WAS SET FORTH IN EXHIBIT 90?

24        A.   THAT'S AN E-MAIL REGARDING OPENING BANK ACCOUNT FOR AMI

25   DESAI IN DUBAI.
```

1    Q.   AND IF YOU LOOK BACK AT EXHIBIT 90, IF WE CAN HAVE

2    EXHIBIT 90?

3    A.   OKAY.

4    Q.   WHAT NAME AND E-MAIL ADDRESS IS THAT E-MAIL FROM?

5    A.   IT SAYS FROM ASHVIN DESAI, ASHVIN@PROSURG.COM.

6    Q.   AND WHAT WAS THE DATE OF THAT E-MAIL?

7    A.   FEBRUARY 9, 2009.

8    Q.   AND IF YOU LOOK BACK AT 139-5, WHAT TYPE OF TRANSACTION

9    WAS CONTAINED IN EXHIBITS 93 AND 94?

10   A.   THAT'S THE TRANSFER OF 105,408.24 BRITISH POUNDS FROM THE

11   HSBC INDIA ACCOUNT 0043679.

12   Q.   AND SO THAT'S A TRANSFER FROM MR. DESAI'S ACCOUNT TO HIS

13   DAUGHTER'S ACCOUNT IN DUBAI?

14   A.   YES.  IT'S FROM 3679 TO HSBC DUBAI.

15   Q.   AND DID YOU CALCULATE WHAT THE VALUE OF 105,408.24 POUNDS

16   WAS ON FEBRUARY 11TH, 2009?

17       I'M SORRY.  DID YOU CALCULATE IT AS A DIFFERENT DATE?  YOU

18   KNOW, I'LL STRIKE THAT QUESTION.

19   A.   OKAY.

20   Q.   WHAT WAS THE LAST TRANSACTION SET FORTH IN EXHIBIT 139-5?

21   A.   105.

22   Q.   AND WHAT WAS THE NATURE OF THE TRANSACTION IN THAT

23   EXHIBIT?

24   A.   THAT'S AN E-MAIL REQUESTING HSBC DUBAI MAIL STATEMENTS TO

25   THE REPRESENTATIVE OFFICE.

1    Q.   I WANT TO TAKE YOU TO, IF YOU TAKE A LOOK AT EXHIBIT 94?

2    A.   OKAY.

3    Q.   AND DO YOU SEE THE REFERENCE TO THAT AMOUNT OF GREAT

4    BRITISH POUNDS IN THERE?

5    A.   YES, I DO.

6    Q.   AND WHAT IS THE DATE OF THE E-MAIL THAT CONTAINS THE

7    REFERENCE TO THAT AMOUNT?

8    A.   YEAH.  IT'S SENT ON THURSDAY, MARCH 19TH, 2009.

9    Q.   AND DID YOU CALCULATE WHAT THE VALUE OF THAT AMOUNT OF

10   BRITISH POUNDS WAS ON MARCH 19TH, 2009?

11   A.   YES.

12   Q.   AND WHAT WAS IT?

13   A.   IN U.S. DOLLARS IT'S 4 -- EXCUSE ME -- $147,723.

14   Q.   I WANT TO CHANGE TOPICS WITH YOU IF WE COULD.

15   A.   SURE.

16   Q.   IN ADDITION TO THE INFORMATION THAT A PERSON REPORTS ON

17   HIS OR HER TAX RETURNS, THERE ARE OTHER WAYS THAT THE I.R.S.

18   HAS OF KNOWING HOW MUCH INCOME THEY EARNED IN A GIVEN YEAR?

19   A.   YES.

20   Q.   AND WHAT ARE THOSE WAYS?

21   A.   THE MOST COMMON ONES ARE 1099'S FROM PLACES LIKE BANKS OR

22   BROKERAGE HOUSES OR THE FORMS W-2 FROM YOUR EMPLOYER.

23   Q.   AND DO COPIES OF THOSE GO TO THE I.R.S.?

24   A.   YES.

25   Q.   AND BASED ON WHAT YOU HAVE LEARNED DURING YOUR WORK AS AN

1    I.R.S. EMPLOYEE, ARE FOREIGN BANKS REQUIRED TO ISSUE FORMS 1099

2    TO TAXPAYERS SETTING FORTH INTEREST THEY EARNED FROM THEIR

3    ACCOUNTS?

4         MR. SCHAINBAUM:  YOUR HONOR, I OBJECT.  THIS IS A

5    CONCLUSION, AND IT'S A VAGUE QUESTION.  IF IT'S A SPECIFIC

6    BANK, IT STILL WOULD BE A CONCLUSION.  HE'S NOT QUALIFIED TO

7    ANSWER THAT QUESTION.

8         THE COURT:  WELL, IF YOU WANT TO JUST LAY A LITTLE

9    MORE FOUNDATION.

10        MS. SISKIND:  YOUR HONOR, I ASKED BASED ON HIS

11   KNOWLEDGE DURING HIS 27 YEARS OF EXPERIENCE AT THE I.R.S.

12   WHETHER THE FOREIGN BANKS ARE REQUIRED TO ISSUE 1099'S.

13        THE COURT:  IF YOU CAN ASK A COUPLE OF QUESTIONS AS

14   TO WHETHER OR NOT HE HAS EXPERIENCE WITH FBARS.

15        MS. SISKIND:  IT WASN'T FBARS, YOUR HONOR, IT WAS

16   FORM 1099.

17        THE COURT:  THANK YOU.

18   BY MS. SISKIND:

19   Q.   DO YOU USE FORMS 1099 IN YOUR JOB AS A REVENUE AGENT?

20   A.   YES, I DO ALL OF THE TIME.

21   Q.   AND ARE YOU FAMILIAR WITH CIRCUMSTANCES UNDER WHICH THOSE

22   FORMS ARE OR ARE NOT ISSUED BY A BANK?

23   A.   YES.

24   Q.   AND YOU'VE WORKED FOR THE I.R.S. FOR 27 YEARS?

25   A.   YES.

1    Q.   AND BASED ON YOUR 27 YEARS OF EXPERIENCE WORKING WITH

2    FORMS 1099 AND WORKING FOR THE I.R.S., DO YOU KNOW WHETHER

3    FOREIGN BANKS ARE REQUIRED TO ISSUE FORMS 1099?

4    A.   THEY ARE NOT REQUIRED TO.

5    Q.   AND IF THE I.R.S. DOES NOT GET A 1099 FROM A BANK SHOWING

6    INTEREST INCOME, HOW CAN THE I.R.S. KNOW HOW MUCH A PERSON

7    EARNED IN INTEREST INCOME THAT YEAR?

8    A.   OH, BECAUSE A PERSON REPORTS IT ON THEIR TAX RETURN.

9    Q.   IF THE INTEREST INCOME IS NOT REPORTED TO THE I.R.S. ON A

10   1099, AND NOT REPORTED ON A PERSON'S TAX RETURN, DOES THE

11   I.R.S. HAVE ANY WAY OF KNOWING ABOUT THAT INTEREST INCOME?

12   A.   NO.

13   Q.   NOW, IF THE INFORMATION THAT THE I.R.S. RECEIVES FROM,

14   LET'S SAY, A BANK ON A FORM 1099 DOES NOT MATCH WHAT A PERSON

15   PUTS ON A TAX RETURN, WHAT HAPPENS?

16   A.   WELL, WHENEVER YOU FILE YOUR INCOME TAX RETURN, IT'S PUT

17   INTO THE SERVICE CENTER COMPUTER AND THE SERVICE CENTER

18   COMPUTER ALSO HAS THE 1099 INFORMATION, SO THEY MATCH IT UP.

19        AND IF SOMETHING DOESN'T MATCH, THEN YOU GET A LETTER FROM

20   THE I.R.S. SAYING SOMETHING DIDN'T MATCH OR SOMETHING WASN'T

21   REPORTED AND PLEASE TELL US WHY.

22   Q.   AND THOSE TYPES OF LETTERS FROM THE I.R.S., ARE THEY

23   COMMON REFERRED TO AS CORRESPONDENCE AUDITS?

24   A.   YES.

25   Q.   AND IS THAT DIFFERENT FROM THE TYPE OF AUDIT THAT YOU

1    WOULD DO AS A REVENUE AGENT?

2    A.   YES.  I DO WHAT IS CALLED A FIELD AUDIT.

3    Q.   AND WHAT IS THE DIFFERENCE?

4    A.   A CORRESPONDENCE AUDIT IS BASICALLY JUST EXACTLY WHAT IT

5    SAYS.  IT'S DONE BY MAIL AND YOU GET A LETTER, YOU RESPOND WITH

6    A LETTER.  AND THERE'S A PHONE NUMBER ON THERE, AND YOU CAN

7    TALK TO SOMEBODY, BUT BASICALLY IT'S JUST BY MAIL.

8        IN A FIELD EXAMINATION, WHICH IS WHAT I DO, I CAN GO OUT

9    TO THE PERSON'S PLACE OF BUSINESS OR TO THEIR ATTORNEY, OR

10   THEIR ACCOUNTANT, AND TO INTERVIEW THEM OR LOOK AT RECORDS

11   THERE.

12   Q.   HAVE YOU REVIEWED I.R.S. RECORDS RELATING TO

13   CORRESPONDENCE AUDITS IN THIS CASE?

14   A.   YES.

15   Q.   AND BASED ON YOUR REVIEW OF THOSE RECORDS, HAS ASHVIN

16   DESAI EVER BEEN THE SUBJECT OF AN I.R.S. CORRESPONDENCE AUDIT?

17   A.   MANY TIMES.

18   Q.   FOR WHICH YEARS?

19   A.   I BELIEVE IT'S AT LEAST 2003 THROUGH 2008.

20   Q.   AND HAVE YOU REVIEWED RECORDS RELATING TO CORRESPONDENCE

21   AUDITS THAT THE I.R.S. CONDUCTED OF THE DEFENDANT FOR THE YEARS

22   2003 THROUGH 2008?

23   A.   YES.

24   Q.   AND ARE THOSE RECORDS CONTAINED IN GOVERNMENT'S

25   EXHIBIT 143 THROUGH 153?

```
1    A.   YES.

2              MS. SISKIND:  YOUR HONOR, THE GOVERNMENT MOVES FOR

3    THE ADMISSION OF EXHIBITS 143 THROUGH 153.

4              MR. SCHAINBAUM:  YOUR HONOR, COULD WE HAVE A

5    SIDE-BAR?

6              THE COURT:  YES, WE'LL TAKE OUR MORNING RECESS AT

7    THIS TIME.  LADIES AND GENTLEMEN, WE'LL TAKE 15 MINUTES.

8         YOU MAY STAND DOWN, SIR.

9              THE WITNESS:  OKAY, SURE.  DO YOU WANT ME TO LEAVE?

10             THE COURT:  YES.

11             THE WITNESS:  OKAY.

12        (JURY OUT AT 10:32 A.M.)

13             THE COURT:  ALL RIGHT.  THE RECORD SHOULD REFLECT

14   THAT THE JURY HAS LEFT THE COURTROOM.  THE WITNESS HAS LEFT THE

15   COURTROOM.  ALL COUNSEL AND THE DEFENDANT ARE PRESENT.

16        MS. SISKIND, YOU'RE GOING TO -- IT LOOKS LIKE 143 THROUGH

17   153.  ARE THEY SIMILAR EXHIBITS?

18             MS. SISKIND:  THEY'RE SIMILAR EXHIBITS.  THEY'RE

19   I.R.S. NOTICES, PART OF THE CORRESPONDENCE AUDITS FOR THE YEARS

20   2003 THROUGH 2008 ALL PERTAINING TO THIS DEFENDANT.

21             THE COURT:  AND IS IT YOUR INTENTION TO -- WHAT DO

22   YOU INTEND TO DO WITH THESE?

23             MS. SISKIND:  WELL, FIRST YESTERDAY DURING

24   MR. SCHAINBAUM'S CROSS-EXAMINATION OF TIM MATHERS, THE I.R.S.

25   RECORDS CUSTODIAN, HE INTRODUCED DEFENSE EXHIBITS K, L, AND M,
```

1    AND ASKED MR. MATHERS QUESTIONS ABOUT THOSE EXHIBITS.

2         IN PARTICULAR HE REFERRED MR. MATHERS TO A LINE ON EACH OF

3    THOSE TRANSCRIPTS THAT INDICATED THAT THERE WAS AN AUDIT THAT

4    OCCURRED, THAT ADDITIONAL TAX WAS ASSESSED, AND THAT WAS FOR

5    2007 AND 2008.

6         THIS -- THE RECORDS IN HERE ARE, PARTICULARLY THE ONES FOR

7    2007 AND 2008, CORRESPOND TO THOSE ENTRIES ON THE TRANSCRIPTS.

8    AND MR. OERTEL WILL TESTIFY THAT THERE'S A CONNECTION BETWEEN

9    THE TRANSCRIPTS INTRODUCED IN DEFENDANT'S K AND L AND SOME OF

10   THESE NOTICES.  BUT THESE NOTICES ALSO GO A LITTLE FARTHER BACK

11   IN TIME AND SHOW OTHER AUDITS THAT THE DEFENDANT WAS THE

12   SUBJECT OF.

13        THE GOVERNMENT IS INTRODUCING THESE FOR A VERY SPECIFIC

14   PURPOSE AND THAT HAS TO DO WITH THE TIMING OF THE AUDITS.

15        IF THE GOVERNMENT -- EXCUSE ME.  IF THE COURT -- PROBABLY

16   THE BEST WAY FOR ME TO EXPLAIN WHAT I'M TALKING ABOUT IS FOR

17   THE COURT TO LOOK AT EXHIBIT 157, WHICH WE'RE GOING TO GET TO

18   AT THE END OF GOING THROUGH THIS CORRESPONDENCE.

19        AND WHAT THE COURT CAN SEE IS ON THE RIGHT-HAND SIDE OF

20   THIS TIMELINE ARE THE DATES OF VARIOUS LETTERS THAT THE

21   DEFENDANT RECEIVED FROM THE I.R.S. RELATING TO THESE

22   CORRESPONDENCE AUDITS STARTING WITH EXHIBIT 143, WHICH IS DATED

23   MARCH 28TH, 2005, AND CONTINUING ALL OF THE WAY DOWN TO

24   EXHIBIT 153, WHICH IS DATED SEPTEMBER 7TH, 2010.

25        AND WHAT THE COURT WILL SEE, IF YOUR HONOR LOOKS AT ALL OF

1       THESE -- ALL OF THIS AUDIT PAPERWORK, EVERY SINGLE

2       CORRESPONDENCE AUDIT RELATED TO, AMONG OTHER THINGS, INTEREST

3       INCOME.

4            SO FOR THE ENTIRE TIME PERIOD OF 2005 THROUGH 2010 THE

5       DEFENDANT WAS REPEATEDLY RECEIVING LETTERS FROM THE I.R.S. ON

6       THE SUBJECT OF UNREPORTED INTEREST INCOME.

7            AT THE SAME TIME HE WAS MANAGING HIS AND HIS FAMILY'S

8       OFFSHORE ACCOUNTS AND FILING THE FALSE TAX RETURNS THAT ARE THE

9       SUBJECT OF THIS CASE.  SO THESE AUDITS GO DIRECTLY TO

10      WILLFULNESS.

11           THEY -- THE COURT CAN SEE FROM LOOKING AT THE AUDIT

12      NOTICES THAT THEY ARE TELLING THE DEFENDANT HE LEFT CERTAIN

13      ITEMS OF INCOME OFF OF HIS RETURNS, IN FACT, LARGE AMOUNTS OF

14      INCOME FOR EACH YEAR AND FOR SOME OF THE YEARS.

15           AND THE GOVERNMENT WOULD LIKE TO BE ABLE TO ARGUE TO THE

16      JURY NOT THAT HE SHOULD BE CONVICTED BASED ON THIS UNREPORTED

17      INCOME IN THE AUDIT, THAT WOULD NOT BE APPROPRIATE, BUT THE

18      FACT THAT HE'S RECEIVING ONGOING NOTICE FROM THE GOVERNMENT

19      ABOUT HIS DUTY TO REPORT INTEREST INCOME ESTABLISHES

20      WILLFULNESS WITH RESPECT TO HIS FAILURE TO REPORT THE INTEREST

21      INCOME AS ALLEGED IN THE INDICTMENT.

22           AND THERE'S A COMPLETE OVERLAP OF THE TIME PERIOD HERE.

23      THE CORRESPONDENT AUDITS BEGAN AROUND THE TIME HE REACTIVATED

24      HIS HSBC INDIA ACCOUNT, AND THEY CONTINUE UNTIL AFTER HE FILED

25      THE LAST TAX RETURN THAT'S THE SUBJECT OF THE INDICTMENT.

1          AND IT'S THAT TIMELINE THAT ESTABLISHES A LINK BETWEEN

2     THESE AUDITS AND THE DEFENDANT'S MENTAL STATE.

3               THE COURT:  THE INTEREST THAT YOU MENTION, FOR

4     EXAMPLE, ON 143, WHERE IS THAT SPECIFICALLY NOTED?

5               MS. SISKIND:  IF YOUR HONOR STARTS ON PAGE -- WELL,

6     FIRST I WOULD NOTE THAT THE BEGINNING IT SAYS WHY ARE YOU

7     GETTING THIS NOTICE?  BECAUSE THE INCOME AND PAYMENT

8     INFORMATION THAT WE HAVE ON FILE DOES NOT MATCH YOUR TAX

9     RETURNS.

10         AND THEN STARTING ON PAGE 5 AND CONTINUING IN THIS

11    PARTICULAR EXHIBIT ALL OF THE WAY THROUGH PAGE 13 THERE'S A

12    CHART IN WHICH THE I.R.S. SETS FORTH VARIOUS ITEMS OF INCOME,

13    MOSTLY AS REPORTED ON FORMS 1099, THAT THEY GOT FROM

14    INFORMATION ABOUT FROM THIRD PARTIES AND THAT WERE NOT

15    REFLECTED ON THE DEFENDANT'S RETURN.

16         AND THEN THE NOTICE GIVES HIM AN OPPORTUNITY TO COME BACK

17    AND SAY, THAT'S RIGHT, OR THAT'S WRONG, AND THERE'S GOING TO BE

18    SOME EVIDENCE THAT THERE WAS A BACK AND FORTH BETWEEN THE

19    DEFENDANT AND THE I.R.S. FOR AT LEAST ONE YEAR ON THE SUBJECT

20    OF INTEREST INCOME.

21         BUT THIS IS A CONSISTENT ONGOING REMINDER TO THE DEFENDANT

22    OF HIS DUTY TO REPORT INTEREST INCOME ON HIS TAX RETURNS, AND

23    IT GOES TO THE HEART OF THIS CASE, WHICH IS WILLFULNESS.

24               THE COURT:  SO I SEE THERE'S SOME BANKS LISTED HERE

25    AND OTHER LENDING INSTITUTIONS, I PRESUME, THAT ARE NOT BANKS

```
1      THAT ARE PART OF THE TRIAL?

2                  MS. SISKIND:  YES.

3                  THE COURT:  AND I'M JUST CURIOUS ABOUT WHY THIS JURY

4      SHOULD HAVE THAT INFORMATION.

5                  MS. SISKIND:  THE ISSUE IS NOT WHAT BANKS ARE

6      INVOLVED, IT'S THE FACT THAT THERE IS INTEREST INCOME THAT THE

7      I.R.S. IS SAYING, SIR, YOU LEFT OFF OF YOUR TAX RETURNS AND YOU

8      NEEDED TO REPORT.

9          AND IT'S THAT REMINDER, NOT THE SPECIFIC IDENTITY OF ANY

10     GIVEN BANK THAT IS THE ISSUE, THAT HE'S BEING TOLD OVER AND

11     OVER AGAIN OVER A FIVE-YEAR PERIOD, REMINDED ABOUT HIS LEGAL

12     DUTY TO REPORT INTEREST INCOME ON A TAX RETURN, WHICH GOES TO

13     THE HEART OF WILLFULNESS BECAUSE HE IS CHARGED WITH FAILING TO

14     REPORT INTEREST INCOME.

15                 THE COURT:  I UNDERSTAND THAT PART.  I HAVE SOME

16     CONCERNS, I HAVE TO EXPRESS THIS TO YOU, ABOUT THESE OTHER

17     BANKS THAT SEEM TO REPORT INTEREST, AND THE I.R.S., IT LOOKS

18     LIKE, IT RECEIVED INFORMATION FROM MANY OTHER INSTITUTIONS THAT

19     THERE WERE INTEREST PAYMENTS.  AND I THINK WE GET INTO A 404(B)

20     SITUATION HERE.

21         AND IT SEEMS TO BE CUMULATIVE OF OTHER WRONGDOING,

22     PERHAPS.  I DON'T WANT THIS JURY TO LOOK AT THIS AND TO SAY,

23     GEE, HE HASN'T BEEN DECLARING INTEREST FROM ALL OF THESE OTHER

24     BANKS, THEREFORE, JUST BASED ON THAT ALONE WE SHOULD FIND HIM

25     GUILTY OF NOT DOING IT HERE.
```

1        I JUST HAVE SOME PROBLEMS WITH THAT.  AND I'M CURIOUS

2    WHETHER EVEN AN INSTRUCTION TO THE JURY AS TO HOW, A LIMITING

3    INSTRUCTION, AS TO HOW THEY SHOULD TREAT THIS EVIDENCE, IF

4    THAT'S SUFFICIENT, GIVEN THE BREVITY OR I SHOULD SAY THE

5    BROADNESS OF THIS.

6             MS. SISKIND:  WELL, FIRST, YOUR HONOR, THAT WAS

7    NEVER AN ARGUMENT THAT WE INTENDED TO MAKE TO THE JURY.

8        OUR FOCUS ON THESE IS TIMING, THE FACT THAT EACH NOTICE IS

9    ON A CERTAIN DATE WHICH BEARS RELEVANCE TO THE TIMELINE IN THIS

10   AND THAT EACH NOTICE RELATES TO UNREPORTED INTEREST INCOME.

11       THE DOLLAR AMOUNTS OF THE UNREPORTED INTEREST INCOME AND

12   THE IDENTIFY OF THE BANK IS LESS IMPORTANT THAN THE FACT THAT

13   THE DEFENDANT IS BEING AUDITED BY THE I.R.S. FOR FAILURE TO

14   REPORT INTEREST INCOME AND THAT EACH NOTICE IS ANOTHER REMINDER

15   TO HIM OF HIS LEGAL DUTY TO DO SO.

16            THE COURT:  AND IS IT NECESSARY TO HAVE ALL OF THE

17   SPECIFICS THEN?  CAN'T YOU JUST GET INTO THE FIRST PAGE, FOR

18   EXAMPLE, WHICH INDICATES AS MUCH?

19            MS. SISKIND:  WELL, THE FIRST PAGE DOES NOT SAY THAT

20   THE TYPE OF INCOME THAT THEY'RE BASING IT ON IS INTEREST

21   INCOME.

22            THE COURT:  I THOUGHT IT DID.  IT SAYS, "THE INCOME

23   AND TAX AND PAYMENT INFORMATION, E.G., INCOME TAX WITHHELD,

24   WAGES, MISCELLANEOUS INCOME, INTEREST, ET CETERA."

25            MS. SISKIND:  SO THAT'S JUST LISTING THE VARIOUS

1    TYPES OF INCOME THAT COULD BE THE SUBJECT OF THIS NOTICE.  I

2    THINK THAT'S BOILERPLATE AND NOT SPECIFIC.

3        IT'S ONLY WHEN YOU GET INTO THE CHART AND IT'S CLEAR --

4    FOR EXAMPLE, IF THE COURT LOOKS AT PAGE 5.

5            THE COURT:  RIGHT.

6            MS. SISKIND:  IN THE CHART IT'S INTEREST, INTEREST,

7    INTEREST, INTEREST.  AND IT GOES ON TO THE NEXT PAGE AND IT

8    KEEPS GOING.

9            THE COURT:  RIGHT.  AND DOES IT LIST THE

10   INSTITUTIONS THAT ARE PART OF THIS LAWSUIT?

11            MS. SISKIND:  HSBC IS NOT REFERENCED HERE BECAUSE

12   THE I.R.S. CORRESPONDENCE AUDITS CAN ONLY BE BASED ON 1099'S

13   AND THERE WERE NONE.

14        WHAT IS IMPORTANT, WHY WE WANTED TO USE THESE IS THE FACT

15   THAT THEY'RE TALKING ABOUT INTEREST AS THE TYPE OF INCOME AT

16   ISSUE.  WE'RE NOT REALLY INTERESTED IN THE DOLLAR AMOUNTS OR

17   THE FINANCIAL INSTITUTIONS.

18            THE COURT:  SURE.

19            MS. SISKIND:  AND I THINK THE POINT CAN BE MADE WITH

20   THESE DOCUMENTS JUST BASED ON THE DATE, WHAT THE NATURE OF THE

21   NOTICE IS, AND THE FACT THAT THERE'S A CHART WHERE EACH ITEM

22   SAYS INTEREST, INTEREST, INTEREST, INTEREST OVER AND OVER

23   AGAIN.

24            THE COURT:  I SEE THAT, BUT I HOPE YOU SEE MY POINT

25   ABOUT IT JUST SEEMS TO BE CUMULATIVE OF SO MANY INTERESTS.

1355

1       NOW, I JUST DON'T WANT, AS I SAID, I DON'T WANT -- I DON'T

2   THINK THAT A LIMITING INSTRUCTION, GIVEN WHAT YOU WANT TO DO

3   WITH THESE, MIGHT EVEN BE SUFFICIENT.

4       MS. SISKIND:  YOUR HONOR, WE WANT TO BE ABLE TO

5   BRING OUT FROM THIS WITNESS THAT THERE WAS A NOTICE ON A

6   CERTAIN DATE THAT RELATES TO UNREPORTED INTEREST INCOME.  IF

7   THERE'S A WAY THAT WE CAN DO THAT WITHOUT INDICATING 59

8   DIFFERENT ITEMS OF INTEREST INCOME, I THINK THE POINT STILL CAN

9   BE MADE.

10      THE COURT:  ARE ALL OF THE OTHER EXHIBITS OF THE

11  SAME MANNER AND CHARACTER?

12      MS. SISKIND:  YES.

13      THE COURT:  YEAH, I THINK THAT -- WELL, I HAVEN'T

14  HEARD FROM MR. SCHAINBAUM, BUT I THINK WE MIGHT WANT TO DO A

15  LITTLE WORK ON THIS.

16      MR. SCHAINBAUM?

17      MR. SCHAINBAUM:  YOUR HONOR, I AGREE WITH YOUR

18  ANALYSIS, AND I THINK THE PROBLEM IS SOLVED IF YOU CONSIDER

19  THAT THE TAX YEARS HERE ARE 2007, 2008, AND 2009.

20      IF YOU RECALL, I -- WHEN THE CUSTODIAN OF RECORDS FROM THE

21  I.R.S. WAS HERE, MR. MATHERS, I INTRODUCED K, L, AND M.  THOSE

22  ARE FOR THE YEARS 2007, '08, AND '09.

23      AND I ASKED HIM, DOES THIS COVER ALL OF THE TRANSACTIONS

24  OF THE YEAR?  AND IT DOES.  AND IT DOES IN A WAY THAT IS

25  INNOCUOUS, THAT SHOWS THE ORIGINAL TAX RETURN, THE SUBSEQUENT

1    NOTICES ON THAT, AND THE SUBSEQUENT PAYMENTS, AND THE FACT THAT

2    AT THE END OF THE DAY, SO TO SPEAK, THE ACCOUNT IS AT A ZERO

3    BALANCE.  IT'S NEUTRAL.

4        NOW, SINCE MR. OERTEL IS SUPPOSEDLY A 27-YEAR REVENUE

5    AGENT, HE CAN READ THAT TRANSCRIPT, AND MS. SISKIND CAN ASK HIM

6    QUESTIONS.  WHAT DOES CODE 290 MEAN?

7        IF YOU RECALL, MR. MATHERS SAID I DON'T RECALL WHAT IT

8    ACTUALLY SHOWS IN RESPONSE TO A QUESTION BY MR. KENNEDY ABOUT

9    WHETHER THERE WERE AMENDED RETURNS.

10       SO THERE'S COMPLETE -- IF YOU WANT TO GO INTO THOSE THREE

11   TRANSCRIPTS, THEY COVER ONLY THE THREE TAX YEARS BEFORE THIS

12   COURT.

13       THIS OTHER CP AUDITS NOTICES, IN ALL FAIRNESS, COVER MORE

14   THAN JUST INTEREST.  THEY COVER A WHOLE LOT MORE, AND THEY

15   COVER DIVIDENDS, AND THEY COVER BASIS PROBLEMS WHERE THE I.R.S.

16   WOULDN'T GIVE THEM CREDIT BASIS AND HAD TO GO BACK AND GET THE

17   BASIS AND THE ORIGINAL LIABILITY WENT DOWN TO VERY LITTLE.

18       BUT YOU'RE RIGHT, YOU PUT THIS BEFORE THE JURY AND THEY,

19   AND EVEN WITH A LIMITING INSTRUCTION, I DON'T THINK IT CAN BE

20   OVERCOME.

21       BUT I THINK IF MS. SISKIND IS GENUINE ABOUT WHAT SHE WANTS

22   TO DO WITH THIS, SHE CAN GET IT FROM THE EXHIBITS K, L, AND M.

23            THE COURT:  WELL, I DON'T KNOW ABOUT THAT, BUT I

24   DO --

25            MS. SISKIND:  I HAD A POSSIBLE SOLUTION IF THE COURT

1     WANTS TO HEAR IT.

2               THE COURT:  OKAY.

3               MS. SISKIND:  SO I UNDERSTAND THE COURT'S POSITION

4     AND HOW THIS DOES TOUCH ON 404(B) ISSUES, BUT AT THE SAME TIME

5     THE TIMELINE IS IMPORTANT BECAUSE IT'S NOT JUST 2007, 2008, AND

6     2009 BECAUSE HE STARTED RECEIVING THESE I.R.S. NOTICES ALL

7     THROUGHOUT THE TIME PERIOD AT ISSUE IN THIS CASE.

8          WHAT I WOULD PROPOSE DOING, IN THE INTEREST OF EXPEDIENCY

9     AND NOT HAVING TO GET INTO ANY 404(B) ISSUES, IS TO TAKE

10    EXHIBIT 157, MAKE SOME CHANGES TO IT, AND ADMIT IT AS A 1006

11    SUMMARY.  SO THE JURY WON'T BE EXPOSED TO THE UNDERLYING

12    NOTICES THAT LIST OUT AD NAUSEAM THE ITEMS OF INCOME THAT THE

13    DEFENDANT FAILED TO REPORT.

14         WE WOULD PROPOSE AMENDING IN THE RIGHT-HAND COLUMN OF 157,

15    WE WOULD SAY LETTER FROM I.R.S. REGARDING UNREPORTED INTEREST

16    INCOME FOR 2003.  SO THAT DOESN'T GET INTO THE BANKS OR IT

17    DOESN'T GET INTO AMOUNTS, AND IT MAKES THE POINT THAT THERE IS

18    INTEREST INVOLVED.  AND THEN WE TAKE OUT THE EXHIBIT REFERENCES

19    BECAUSE THOSE WOULD NOT BE EXHIBITS ANYMORE.

20         SO WHAT MR. OERTEL WOULD TESTIFY TO IS THAT HE REVIEWED

21    CORRESPONDENCE AUDIT RECORDS, AND HE PREPARED A SUMMARY OF

22    THOSE RECORDS, AND HE WOULD BE ABLE TO READ OFF THE DATE OF THE

23    NOTICE, GENERALLY WHAT IT RELATES TO, AND WHAT TAX YEAR AND HOW

24    THAT FITS INTO THE TIMELINE OF THE CASE.

25         SO ALL THE JURY WOULD SEE IS 157, WITHOUT SEEING THOSE

1    VOLUMINOUS NOTICES AND EVERY ITEM OF INCOME THAT WAS

2    UNREPORTED.

3           MR. SCHAINBAUM:  YOUR HONOR, I VIGOROUSLY OBJECT TO

4    THAT.  THAT'S EVEN WORSE, AS THEY SAY, THAT'S WORSE THAN THE

5    DISEASE.  THAT'S NOT A CURE.  THAT WOULD BE HIGHLY PREJUDICE.

6        PLUS MS. SISKIND KEEPS CALLING IT "UNREPORTED INTEREST

7    INCOME."  IT'S REALLY "UNDERREPORTED" BECAUSE THERE WERE ITEMS

8    OF INCOME REPORTED.

9        BUT TO GO ON THIS SO-CALLED TIMELINE, WE'RE CONFINED HERE

10   TO 2007, 2008, AND 2009.

11          THE COURT:  BUT THE GOVERNMENT, ONE OF THE ELEMENTS

12   THAT THE GOVERNMENT MUST PROVE IS WILLFULNESS AND THEY CAN

13   INTRODUCE EVIDENCE TO PROVE WILLFULNESS.

14       WHAT MS. SISKIND SUGGESTS IS THAT THIS 143 THROUGH 153, I

15   THINK, ESTABLISH NOTICE FROM THE I.R.S. ABOUT INTEREST ISSUES.

16   SO YOUR CLIENT IS ON NOTICE THAT THE I.R.S. BELIEVES THAT

17   HAVING A CONVERSATION WITH HIM, THEY'RE CONCERNED ABOUT

18   INTEREST.

19       AND HER 157 SEEKS TO BASICALLY MERGE THOSE CONVERSATIONS

20   WITH MR. DESAI'S ACTIVITIES WITH HIS ACCOUNTS, I BELIEVE, AND

21   THAT SHOWS WILLFULNESS.

22       AND, YOU KNOW, THE GOVERNMENT IS PERMITTED TO PROVE

23   WILLFULNESS.  THE QUESTION IS WHETHER OR NOT THEY CAN PROVE ALL

24   OF THESE OTHER ACCOUNTS AND THINGS, AND I THINK THAT'S REALLY A

25   404(B) PROBLEM.

```
 1          MS. SISKIND:  AND WE'RE WILLING TO RESOLVE THAT BY

 2     JUST FOCUSSING ON A SUMMARY CHART.  THIS WOULD CONSTITUTE -- IF

 3     WE DON'T PUT 143 THROUGH 153 IN EVIDENCE, 157 DOES BECOME A

 4     PROPER 1006 SUMMARY BECAUSE IT'S SUMMARIZING VOLUMINOUS RECORDS

 5     THAT WERE AVAILABLE TO THE DEFENSE THAT ARE NOT BEING PLACED

 6     BEFORE THE JURY.

 7          LIKE I SAID, WE WOULD HAVE TO MAKE THE CHANGE, AND THAT

 8     CAN BE DONE IN THE COURTROOM, TAKING OFF THE REFERENCES TO THE

 9     EXHIBIT, WHICH WOULD NOT BE EXHIBITS ANYMORE, AND WE WOULD ASK

10     PERMISSION TO CHANGE IT TO LETTER FROM I.R.S. REGARDING

11     UNREPORTED INTEREST INCOME WHICH THEN MAKES THE POINT THAT

12     REALLY THE ESSENTIAL POINT THAT WE WERE GOING TO TRY TO MAKE

13     OFF OF THE NOTICES ANYWAY.

14          THE COURT:  BUT DOES THAT THEN DENY THE DEFENSE THE

15     OPPORTUNITY TO AT LEAST TOUCH UPON THE LETTERS?

16          MS. SISKIND:  THEY CAN INTRODUCE THE LETTERS THEN IF

17     THEY WOULD LIKE.

18          THE COURT:  WELL, THAT'S THE PROBLEM IS THAT IT'S

19     STILL 404(B) TYPE EVIDENCE, AND THEY'RE PUT IN A POSITION OF

20     HAVING TO INTRODUCE THAT TYPE OF EVIDENCE TO EXPLAIN AWAY THE

21     SAME TYPE OF EVIDENCE.

22          MS. SISKIND:  AND WE'RE STILL IN A POSITION, YOUR

23     HONOR, WHERE THE DEFENSE IS THE ONES THAT OPENED THE DOOR TO

24     AUDITS IN THE FIRST PLACE.  THEY'RE LEAVING THE JURY WITH AN

25     INAPPROPRIATE IMPRESSION THAT THE DEFENDANT HAD A ZERO BALANCE.
```

```
 1              THE COURT:  WELL, I DID NOTE THAT, THAT K, L, M

 2      SPEAKS TO THESE TRANSCRIPTS THAT WE TALKED ABOUT, AND I THINK

 3      THE GOVERNMENT IS ALLOWED TO AT LEAST ELABORATE ON WHAT DOES

 4      THE TRANSCRIPT MEAN AND WHAT IS THE CONVERSATION ABOUT THAT

 5      TRANSCRIPT.  INTRODUCING THESE DOCUMENTS AS THEY ARE, 142

 6      THROUGH 153, ARE CERTAINLY THE BEST EVIDENCE OF THAT

 7      CONVERSATION, OUTSIDE OF THE TIMING.  I DON'T WANT TO TALK

 8      ABOUT THAT YET.

 9          BUT THE ISSUE IS CAN THEY BE REDACTED SOMEHOW?

10          IT SOUNDS LIKE MR. SCHAINBAUM IS NOT AGREEABLE TO 157

11      BEING TREATED AS A 1006 EXHIBIT.

12              MR. SCHAINBAUM:  CORRECT.

13              MS. SISKIND:  WE'RE WILLING TO MAKE ANY REDACTIONS

14      TO 143 THROUGH 153 THAT THE COURT SUGGESTS, AS LONG AS WHAT IS

15      LEFT AFTER THE REDACTIONS IS THAT THIS WAS A NOTICE FROM THE

16      I.R.S. ON A PARTICULAR DATE REGARDING INTEREST INCOME THAT THE

17      DEFENDANT FAILED TO REPORT ON THE TAX RETURN AT ISSUE.

18          AS I INDICATED, IT'S NOT THE IDENTITY OF THE BANKS OR EVEN

19      THE DOLLAR AMOUNTS THAT ARE NECESSARY TO MAKE THAT POINT ON

20      WILLFULNESS, IT'S THE SUBJECT MATTER GENERALLY OF EACH AUDIT

21      AND THE DATE ON WHICH IT OCCURRED.

22              THE COURT:  SO WHEN I LOOKED AT THE EXHIBIT 143, FOR

23      EXAMPLE, AND THERE'S --

24              MR. SCHAINBAUM:  YOUR HONOR?

25              THE COURT:  YES.
```

1          MR. SCHAINBAUM:  MAYBE AS A SUGGESTION, MAYBE LIMIT

2     THESE LETTER NOTICES TO 2007 AND '08.  THAT PUTS IT IN TANDEM

3     WITH THE K, L, AND M AND GIVES THEM WHAT THEY WANT TO ARGUE.

4          I MEAN, HER ATTEMPTING TO USE IT FOR WILLFULNESS IN A

5     CIRCUMSTANTIAL EVIDENCE MANNER AND --

6               THE COURT:  I THINK THEY CAN DO THAT.

7          MR. SCHAINBAUM:  I AGREE WITH YOU THAT YOU CAN, YOU

8     KNOW, PUT WILLFULNESS IN ISSUE BY CIRCUMSTANTIAL EVIDENCE AND

9     YOU CAN PUT LACK OF WILLFULNESS IN BY CIRCUMSTANTIAL EVIDENCE.

10              THE COURT:  SURE.

11         MR. SCHAINBAUM:  BUT I'M JUST SAYING THAT TO BE

12    FAIR, THIS IS A TAX CASE INVOLVING 2007, '08, AND '09.

13         YOU MAY WANT TO CONSIDER BY LOOKING AT THE EXHIBITS FOR

14    2007 AND 2008.  I BELIEVE THERE ARE THREE LETTERS FOR 2007 AND

15    ONE FOR 2008.

16         AND THEY TELL THE STORY AND THEN THEY CAN DO WHAT THEY

17    WANT WITH THAT STORY.  AND THEN IT GIVES US A FAIR CHANCE BY

18    USING THOSE LETTERS TO ASSOCIATE IT WITH THE TRANSCRIPTS AND

19    SAY, LOOK, HERE ARE THE LETTERS AND HERE'S WHAT HAPPENED ON THE

20    TRANSCRIPT, AND YOU GET A ZERO BALANCE.

21              THE COURT:  I UNDERSTAND.  BUT, MR. SCHAINBAUM,

22    ISN'T THE GOVERNMENT PERMITTED TO INTRODUCE OTHER EVIDENCE IN

23    REGARDS TO THE ISSUE OF WILLFULNESS, PARTICULARLY IN TAX CASES,

24    TO SHOW A TAXPAYER'S INTENT OR WILLFULNESS?

25         MS. SISKIND?

1           MS. SISKIND:  YES, YOUR HONOR.  PARTICULARLY, I

2     THINK 157 VISUALLY ILLUSTRATES EXACTLY WHAT WE'RE TRYING TO DO.

3     EVEN BEFORE REACTIVATING THE ACCOUNT THAT IS THE SUBJECT OF

4     THIS CASE, HE WAS GETTING NOTICES ABOUT INTEREST INCOME.

5     THROUGHOUT THE TIME PERIOD AT ISSUE IN THIS CASE, HE WAS

6     GETTING NOTICES ABOUT INTEREST INCOME.

7           THE COURT:  AND THIS SPEAKS, MR. SCHAINBAUM, TO YOUR

8     SUGGESTION OF LIMITING IT TO '07 AND '08.  I THINK THE

9     GOVERNMENT IS PERMITTED TO PRODUCE TAXPAYER HISTORY AND CONDUCT

10    IN REGARDS TO ESTABLISHING WILLFULNESS IN TAX CASES.

11          MR. SCHAINBAUM:  BUT THAT'S TOO FAR REMOTE.  YES,

12    YOU CAN PUT IN A HISTORY.  THAT'S WHAT I'M SAYING, HERE'S THE

13    HISTORY IN THE RELEVANT YEARS.

14       MS. SISKIND IS ALWAYS USING "IT'S NOT RELEVANT," AND EVEN

15    AS FOR WILLFULNESS, GOING BACK TO THE YEAR 2003 --

16          THE COURT:  LET ME ASK -YOU, PARDON ME FOR

17    INTERRUPTING.  WHY 2003?

18          MS. SISKIND:  BECAUSE 2003 -- AS THE COURT MAY BE

19    AWARE, THE I.R.S., WHEN THEY'RE AUDITING, THE NOTICE MAY COME

20    OUT FOR SOME YEARS LATER.  THE FIRST NOTICE FOR 2003 YEAR IS

21    DATED MARCH 28TH, 2005, AND IT PREDATES THE DEFENDANT

22    REACTIVATING HIS ACCOUNT.

23       WE WOULD ARGUE TO THE JURY THAT FROM DAY ONE FROM THE

24    MOMENT THAT THE DEFENDANT REACTIVATED ACCOUNT 3679 IN JULY OF

25    2006 INTEREST INCOME AND REQUIRED TO REPORT HAD ALWAYS BEEN IN

```
 1    HIS MIND BECAUSE HE STARTED RECEIVING NOTICES THE PREVIOUS YEAR

 2    ABOUT INTEREST INCOME.

 3              THE COURT:  SO THE ONLY REASON IT'S 2003 IS BECAUSE

 4    THE LETTER HE RECEIVED IN RE 2003 WAS RECEIVED IN '05?

 5              MS. SISKIND:  THAT'S CORRECT.

 6              THE COURT:  THAT MAKES IT CLOSER TO THE TIME IN

 7    QUESTION, MR. SCHAINBAUM.  AND I CERTAINLY -- IT SEEMS TO ME

 8    THAT THAT'S PERSUASIVE.  I DID HAVE SOME CONCERNS ALSO WHEN I

 9    SAW 2003, AND I THOUGHT THAT'S WELL OUTSIDE OF THE CHARGING

10    PERIOD.  BUT IF THAT'S THE DATE OF THE LETTER, THE LETTER IS

11    REALLY WHAT THE KEY DATE IS, WHEN THE LETTER WAS RECEIVED.

12              MS. SISKIND:  YES, YOUR HONOR.

13              THE COURT:  THE TAX YEAR IS, PERHAPS, NOT AS --

14    WELL, IT'S RELEVANT BUT IT'S NOT AS GREAT AS THE ACTUAL RECEIPT

15    OF THE LETTER WHICH PUTS SCIENTER INTO ISSUE AND THAT HAPPENS

16    IN '05.

17              MS. SISKIND:  YES, YOUR HONOR.

18              THE COURT:  SO I CAN CERTAINLY UNDERSTAND NOW THAT

19    NEXUS AND THAT ESTABLISHES THE NEXUS.

20         I THINK YOU STILL HAVE THE PROBLEM OF I'LL CALL IT

21    CUMULATIVE AND PREJUDICIAL ASPECT OF HAVING I THINK IT WAS 38

22    OR 18 OR SOMETHING LIKE THAT.

23         NOW, I DON'T KNOW HOW YOU FEEL ABOUT, PERHAPS, YOU JUST

24    REDACT ALL OF THOSE ACCOUNTS LEAVING THE INTEREST ISSUE.

25              MS. SISKIND:  I THINK THAT'S FINE.
```

```
 1            THE COURT:  AND, AGAIN, IS 18 -- IS THAT TOO MANY?

 2     HOW MANY DO YOU NEED TO MAKE THE POINT WHERE IT BECOMES

 3     CUMULATIVE?  THAT IS DECISION I NEED TO MAKE.  AND I'M HAPPY TO

 4     HEAR FROM YOU.

 5            MS. SISKIND:  BUT CERTAINLY ON THE REDACTION ISSUE,

 6     FOR EXAMPLE, LOOKING BACK AT PAGE 5 OF EXHIBIT 143, WE CAN

 7     REDACT THE CONTENTS OF RECEIVED FROM, ACCOUNT INFORMATION,

 8     AMOUNT REPORTED TO I.R.S. BY OTHERS COLUMN, LEAVING THE ISSUE,

 9     WHICH IS REALLY WHAT WE'RE GETTING AT HERE, THE ISSUE OF THIS

10     AUDIT WAS INTEREST INCOME.

11            THE COURT:  THAT'S MY POINT AS WELL.

12            MS. SISKIND:  IN TERMS OF HOW MANY PAGES, AND WHAT

13     PAGES TO TAKE OUT, I DON'T REALLY HAVE --

14            THE COURT:  I MEAN, THERE'S 13 -- THERE'S 40 ITEMS.

15            MS. SISKIND:  WE WOULD ARGUE THAT THAT JUST SHOWS

16     EVEN MORE NOTICE.  I MEAN, THERE WERE 40 ITEMS OF INTEREST

17     INCOME THAT THE I.R.S. IS TELLING HIM HE LEFT OFF OF HIS TAX

18     RETURN, AND IT EVEN HEIGHTENS THE PROBATIVE VALUE OF THIS

19     DOCUMENT IN TERMS OF BEING NOTICE TO HIM ABOUT HE NEEDED TO

20     REPORT INTEREST INCOME.

21            THE COURT:  AND THAT'S DOCUMENT 26 ITEMS.

22            MR. SCHAINBAUM:  BY REDACTING IT, IT MAKES IT EVEN

23     WORSE BECAUSE WHAT YOU ARE DOING IS, YOU'RE TAKING OUT WHAT WAS

24     REPORTED ON THE RETURNS.

25         THIS IS NOT REALLY UNREPORTED, IT'S UNDERREPORTED.  AND BY
```

1    TAKING OUT THE OTHER INFORMATION, IT'S SHOWING THAT MR. DESAI

2    GETS THESE NOTICES.  AND HE'S OBEDIENT.  ALL OF THE WAY THROUGH

3    HE SOLVES THE PROBLEM WITH THE I.R.S.

4             THE COURT:  IS THAT WHAT THE TRANSCRIPT REVEALS

5    THEN?

6             MR. SCHAINBAUM:  THE TRANSCRIPT REVEALS THAT.

7             THE COURT:  SO THAT KIND OF, IT SEEMS TO ME, THAT

8    AUGURS TO MOLLIFY SOMEWHAT THE 404(B) NATURE OF THIS, IF YOU

9    WILL, BECAUSE YOU CAN INDICATE THAT, WELL, YES, THE I.R.S.

10   THOUGHT THERE WAS A PROBLEM BUT ACCORDING TO THE TRANSCRIPTS HE

11   CLEARED IT UP.

12            MR. SCHAINBAUM:  BUT WE DON'T HAVE TRANSCRIPTS FOR

13   2003, 2004, AND 2005.  THAT'S WHY I SAID IF YOU WANT TO LIMIT

14   IT TO 2007 AND '08, WE HAVE TRANSCRIPTS FOR 2007, 2008, AND

15   2009.  THAT GIVES US A FAIR SHOT AT THE REVERSE OF WILLFULNESS.

16            MS. SISKIND:  YOUR HONOR, IS THERE ANYTHING THAT

17   PREVENTS THE DEFENSE -- I THINK THEY WENT ONLINE TO GET THE

18   TRANSCRIPTS.  THEY INDICATE THAT THEY WERE PRINTED OUT FROM A

19   COMPUTER SYSTEM.

20       I DON'T KNOW THE ANSWER, BUT THEY SEEM TO HAVE BEEN ABLE

21   TO GET UPDATED VERSIONS IN ORDER TO GIVE TO US THIS WEEK OF

22   '07, '08, AND '09.

23            THE COURT:  MR. SCHAINBAUM IS SHAKING HIS HEAD.

24            MR. SCHAINBAUM:  YOU CAN'T GET TRANSCRIPTS FOR 2003,

25   2004, AND 2005.  I THINK THEY'RE TOO REMOTE.  SO IT WOULD BE AN

```
 1      UNFAIR -- BECAUSE I.R.S. SENDS ON A CONTINUOUS BASIS NOTICES,

 2      MANY OF WHICH ARE ERRONEOUS.

 3              THE COURT:  WELL, LET ME INTERRUPT YOU HERE.  CAN

 4      YOU OBTAIN THESE TRANSCRIPTS THROUGH THE I.R.S., MS. SISKIND?

 5              MS. SISKIND:  WE CAN CHECK.

 6              THE COURT:  OKAY.

 7              MS. SISKIND:  IN THE MEANTIME IT MIGHT HELP US TO

 8      HAVE A DECISION ON THE REDACTION BECAUSE WE CAN GET STARTED ON

 9      THAT.

10              THE COURT:  AND I NOTICE THAT IT'S 11:00 O'CLOCK,

11      AND WE WERE KEEPING OUR JURY UNTIL NOON TODAY.  I DON'T THINK

12      WE'RE GOING TO SOLVE THIS PROBLEM IN TIME TO HAVE ANY

13      MEANINGFUL CONTINUATION OF THE EXAMINATION.

14              MS. SISKIND:  AND AS LONG AS WE HAVE A RESOLUTION

15      BEFORE WE LEAVE TODAY ON THIS ISSUE, WE CAN OVER THE EVENING

16      MAKE WHATEVER CHANGES.

17              THE COURT:  I THINK WHAT I MIGHT DO IS BRING THEM IN

18      AND THEN RELEASE THEM FOR THE DAY AND HAVE THEM COME TOMORROW

19      AT 10:30, WE'LL TAKE A FIVE MINUTE BREAK, AND THEN WE'LL COME

20      BACK AND TALK SOME MORE ABOUT THIS SOLUTION.

21              MS. SISKIND:  OKAY.

22              THE COURT:  IS THAT ALL RIGHT, MR. SCHAINBAUM?

23              MR. SCHAINBAUM:  YES, YOUR HONOR.

24              THE COURT:  AND, MS. SISKIND?

25              MS. SISKIND:  YES.
```

```
 1              THE COURT:  LET'S BRING THEM IN.

 2         (JURY IN AT 10:59 A.M.)

 3              THE COURT:  WE'RE BACK ON THE RECORD IN THE DESAI

 4    MATTER.  ALL COUNSEL ARE PRESENT, AND THE DEFENDANT IS PRESENT,

 5    AND THE JURY AND ALTERNATES ARE PRESENT.

 6         LADIES AND GENTLEMEN, I WANT TO THANK YOU FOR YOUR

 7    PATIENCE.  I LOOKED AT THE CLOCK JUST A MINUTE AGO, AND IT WAS

 8    11:00.  AND WE WILL RECESS AGAIN TODAY AT NOON, AND THAT WAS

 9    OUR PLAN.

10         I NEED TO CONTINUE MY CONVERSATION WITH THE LAWYERS.  AND

11    I THINK THE BEST WAY TO ACCOMPLISH THAT, SO AS NOT TO INFRINGE

12    ANYMORE ON YOU, IS TO RELEASE YOU NOW TODAY AT 11:00 O'CLOCK,

13    ABOUT AN HOUR EARLY.

14         I JUST THINK THAT'S MORE PRUDENT.  BY THE TIME WE FINISH

15    OUR CONVERSATION, THAT MIGHT LEAVE US WITH TEN MINUTES OF

16    EXAMINATION.  AND I THINK THAT'S A WASTE OF YOUR TIME, AND I AM

17    COGNIZANT OF YOUR TIME.  AND I APOLOGIZE FOR THE BREAKS IN THE

18    SCHEDULES.

19         I DO DRAW BACK TO OUR FIRST MEETING AND I TOLD YOU TIME IN

20    COURT IS VERY DIFFERENT THAN REAL TIME IN THE REAL WORLD.  AND

21    OTHER THINGS COME UP, AS YOU KNOW.  I HAVE ANOTHER CASE THIS

22    AFTERNOON THAT IS GOING TO OCCUPY SOME TIME, AND SO WE CAN'T

23    MEET THIS AFTERNOON.

24         BUT I DO NEED TO SPEAK WITH THE LAWYERS SOME MORE AND GET

25    THEIR ASSISTANCE ON SOMETHING.  SO LET'S RECESS NOW AT 11:00
```

1        O'CLOCK.  I APOLOGIZE FOR ANY INCONVENIENCE.

2             IN TALKING WITH MY LAW CLERKS, AND IT SEEMS LIKE WE'VE

3        BEEN ABLE TO GET SOME THINGS OFF OF OUR CALENDAR FOR TOMORROW

4        MORNING.  I THINK WE JUST HAVE MAYBE TWO THINGS ON AT 9:00, AND

5        I'M QUITE CONFIDENT THAT THE LAWYERS WILL HEED MY SUGGESTIONS

6        FOR BREVITY SUCH THAT WE CAN HAVE YOU BACK HERE AT 10:30, 10:30

7        TOMORROW MORNING.

8             SO IF YOU WOULD BE IN RECESS, I REMIND YOU OF THE

9        ADMONITION AND IT'S STILL IN PLACE, AND WE'LL SEE YOU TOMORROW

10       MORNING AT 10:30.

11            THANK YOU VERY MUCH.

12            (JURY OUT AT 11:01 A.M.)

13            THE COURT:  ALL RIGHT.  THE RECORD SHOULD REFLECT

14       THAT THE JURY HAS LEFT FOR THE DAY.  I'M GOING TO RECONVENE

15       WITH THE JURY TOMORROW AT 10:30.

16            LET'S TAKE A TEN MINUTE BREAK NOW AND CONTINUE WITH OUR

17       CONVERSATION.

18            IF YOU COULD CHECK, MS. SISKIND, ONE OF YOU COULD CHECK

19       ABOUT THIS TRANSCRIPT ISSUE DURING THIS BREAK, THAT WOULD BE

20       HELPFUL.

21            MS. SISKIND:  YES, WE WILL.

22            THE COURT:  GREAT.  THANKS.

23            (RECESS FROM 11:02 A.M. UNTIL 11:30 A.M.)

24            THE COURT:  SO LET'S GO ON THE RECORD.  WE'RE BACK

25       ON THE RECORD IN THE DESAI MATTER.  OUR JURY IS GONE AND THE

1      WITNESS IS GONE AND ALL COUNSEL AND THE DEFENDANT ARE PRESENT.

2          WE'RE OUTSIDE OF THE PRESENCE OF THE JURY.  AN ISSUE HAS

3      COME UP REGARDING AN EXHIBIT, SUMMARY EXHIBITS.

4              MR. SCHAINBAUM:  LET ME JUST MAKE AN OBJECTION AT

5      THE OUTSET BEFORE WE GO THROUGH EACH OF THESE DOCUMENTS.

6              THE COURT:  LET ME IDENTIFY THE DOCUMENTS WE'RE

7      SPEAKING ABOUT.  143 TO 153.

8              MR. SCHAINBAUM:  ALL RIGHT.  I OBJECT TO THESE

9      DOCUMENTS BECAUSE I BELIEVE THE I.R.S. HAS BEEN ABLE TO LOCATE

10     ALL OF THE TRANSCRIPTS FOR THE YEARS THAT ARE RELEVANT AND THE

11     YEARS THAT WE'RE GOING TO BE DISCUSSING, 2003 THROUGH 2009.

12         I BELIEVE THAT IN FAIRNESS THE TRANSCRIPTS CONTAIN A

13     COMPLETE DESCRIPTION AND HISTORY OF THE TAXPAYER'S TRANSACTIONS

14     FOR EACH YEARS SEPARATELY.

15         THE NOTICES THAT WE'RE ABOUT TO DISCUSS ARE NOTICES THAT

16     ARE ALREADY INCLUDED ON THE TRANSACTION OR ON THE TRANSCRIPTS

17     IN A CONCLUSORY MANNER.

18             THE COURT:  ALL RIGHT.

19             MR. SCHAINBAUM:  SO I OBJECT TO ALL OF THESE

20     EXHIBITS FOR THAT PURPOSE, BUT WE CAN GO THROUGH THE

21     DISCUSSION.

22             THE COURT:  THANK YOU.  YOUR OBJECTIONS ARE NOTED.

23         LET ME ASK MS. SISKIND FIRST OF ALL IF YOU COULD JUST

24     INDICATE WHAT 143 TO 153 ARE, AND WHY YOU'RE SEEKING TO USE

25     THEM, AND WHETHER YOU'RE SEEKING TO INTRODUCE THEM INTO

1     EVIDENCE AND THE PURPOSE OF IT, IF YOU CAN DO THAT.

2              MS. SISKIND:  YOUR HONOR, MAY I SIT WHILE I DO THIS?

3              THE COURT:  PLEASE, PLEASE.

4              MS. SISKIND:  EXHIBITS 143 THROUGH 153 ARE NOTICES

5     THAT THE DEFENDANT RECEIVED FROM THE I.R.S. AS PART OF WHAT

6     MR. OERTEL TESTIFIED WERE CORRESPONDENCE AUDITS FOR THE YEARS

7     2003 THROUGH 2008.

8          THE NOTICES START THE FIRST ONE BEING MARCH 28TH, 2005,

9     AND THEY GO ALL OF THE WAY UP UNTIL THE LAST ONE SEPTEMBER 7TH,

10    2010.

11         THE GOVERNMENT IS SEEKING TO ADMIT THESE DOCUMENTS INTO

12    EVIDENCE AT TRIAL SO THAT THE JURY CAN SEE THE DATES OF THE

13    NOTICES AND THE SUBJECT MATTER OF THE CORRESPONDENCE AUDITS,

14    WHICH IS INTEREST INCOME THAT ACCORDING TO THE I.R.S. THE

15    DEFENDANT DID NOT INCLUDE ON THE APPROPRIATE TAX RETURNS.

16         GIVEN THE TIMING OF THESE NOTICES AND THAT THE TIMING

17    OVERLAPS WITH THE FACTS IN THIS CASE, INCLUDING THE DEFENDANT'S

18    MANAGEMENT OF HIS AND HIS FAMILY'S FOREIGN ACCOUNTS AND THE

19    FILING OF THE TAX RETURNS CHARGED IN THE INDICTMENT, THE

20    GOVERNMENT IS GOING TO ARGUE THAT USING THESE NOTICES THAT THE

21    DEFENDANT WAS ON NOTICE FROM THE I.R.S. THROUGHOUT THE RELEVANT

22    TIME PERIOD OF HIS LEGAL DUTY TO REPORT INTEREST INCOME ON HIS

23    TAX RETURNS.

24              THE COURT:  AND, MR. SCHAINBAUM, YOUR OBJECTION?

25              MR. SCHAINBAUM:  I OBJECT TO THESE NOTICES BECAUSE

1      THEY CONTAIN A LOT OF INFORMATION INDIVIDUALLY AND DO NOT IN

2      AND OF ITSELF, EACH EXHIBIT, COME TO A CONCLUSION.

3          THE CONCLUSION AS TO WHAT HAPPENS AFTER THESE NOTICES WERE

4      ISSUED ARE ON THE TRANSCRIPT.  THERE'S A COMPLETE HISTORY OF

5      EACH TAX YEAR AND THE RESULTS, AND I THINK IN ALL FAIRNESS

6      THAT'S ALL THAT IS NECESSARY.

7          AND THE GOVERNMENT IS FREE TO ARGUE FROM THE CODES

8      CONTAINED ON THE TRANSCRIPTS AND THE DESCRIPTIONS WHAT THEY

9      WANT ABOUT INTEREST INCOME BEING REPORTED OR NOT BEING REPORTED

10     OR BEING UNDERREPORTED.

11         SO I BELIEVE THIS IS UNNECESSARY, AND I BELIEVE IT'S MORE

12     IN TERMS OF AN AVALANCHE OF DOCUMENTS IN A 404(B) PROBLEM AREA.

13         AND BY REDACTING CERTAIN INFORMATION, THE JURY IS GOING TO

14     WONDER WHAT HAPPENED?  WHY IS THAT REDACTED?  AND THE

15     TRANSCRIPT, GETTING IT INTO EVIDENCE, WILL ALLEVIATE PART OF

16     THE PROBLEM BUT NOT ALL OF IT BECAUSE THEY'RE STILL GOING TO

17     SEE THAT THERE'S SOMETHING ELSE THERE, AND THEY'RE GOING TO

18     WONDER WHAT IT IS.

19         SO THAT'S MY OBJECTION.  MY OBJECTION IS THAT IT'S AN

20     AVALANCHE OF DOCUMENTS THAT ARE HIGHLY PREJUDICIAL AND

21     UNNECESSARY IF YOU HAVE THE TRANSCRIPTS, AND WE DO NOW HAVE THE

22     TRANSCRIPTS.

23             THE COURT:  ALL RIGHT.  THANK YOU.  I DO NOTE, AND

24     IT WAS NOTED EARLIER, I BELIEVE, THAT THE DEFENSE INTRODUCED K,

25     L, AND M, WHICH WERE AUDITS, THE TRANSCRIPTS, I THINK.

1          MR. SCHAINBAUM:  AND THEY'RE NOT -- THEY'RE

2    TRANSCRIPTS, WHICH REFLECT WHAT HAPPENED DURING 2007, 2008, AND

3    2009, INCLUDING ANY AUDIT, IF ANY, AND SO THAT IS IN THE

4    RECORD.  THAT'S WHAT MY GENESIS OR THE BASIS FOR MY OBJECTION.

5          WE ALREADY HAVE K, L, AND M IN THE RECORD, AND IF WE PUT

6    THE OTHER TRANSCRIPTS IN THE RECORD, WHICH I BELIEVE GO WAY

7    OUTSIDE THE TAX YEARS THAT ARE CHARGED, BUT NEVERTHELESS IF WE

8    PUT THEM IN, WE'LL SHOW WHAT HAPPENED IN EACH YEAR.

9          AND, YOU KNOW, AND I THINK THAT'S A FAIR UNDERSTANDING FOR

10   THE JURY AND IT GIVES THE GOVERNMENT LEEWAY TO ARGUE WHATEVER

11   THEY WANT.

12          THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.  SO THE

13   GOVERNMENT HAS THE BURDEN OF PROVING WILLFULNESS AND THEY CAN

14   PROVE, BY USE OF TAXPAYER'S HISTORY AND CONDUCT WITH HIS OR HER

15   TAX OBLIGATIONS, EVIDENCE OF THEIR CONDUCT AND THOSE

16   OBLIGATIONS TO THAT END AT PROVING WILLFULNESS.

17          NOW, WHEN I LOOK AT THESE EXHIBITS, I LOOKED AT 143 AND IT

18   DOES SEEM TO BE -- IT IS A LETTER FROM THE INTERNAL REVENUE

19   SERVICE TO MR. DESAI, HE AND HIS WIFE, AND IT'S ADDRESSED TO

20   HIM.

21          STARTING AT PAGE 5 OF 143, I DO NOTE -- I BELIEVE IT RUNS

22   TO PAGE 13, AND IT HAS 40 ITEMS THAT THE I.R.S. IDENTIFIED WITH

23   INTEREST ISSUES.  AND I BELIEVE ITEM 15 BEGINS SCHEDULE

24   D/CAPITAL GAINS DIVIDENDS, BUT INTEREST ISSUES ARE WHAT IS AT

25   ISSUE IN THIS TRIAL.

1        THERE ARE A LIST OF VARIOUS BANKING INSTITUTIONS, BANK OF

2   AMERICA, UNITED COMMERCIAL BANK, CITIGROUP, NUVEEN, CALIFORNIA,

3   AND OTHER BANKS.

4        WHEN I LOOKED AT THESE, MY INITIAL THOUGHT ON 143 WAS THAT

5   TO ALLOW A JURY TO SEE THIS ENTIRE, THE ENORMITY OF THESE

6   DOCUMENTS, THE 40 ITEMS, RAISE SOME 404(B) CONCERNS.  AND I

7   DON'T WANT THE JURY TO MAKE A DECISION HERE BASED ON CONDUCT

8   OUTSIDE OF THE CHARGING DOCUMENTS AND MAKE A DECISION BECAUSE

9   THEY HAD SOME FEELING ABOUT THE DEFENDANT AND HIS ALLEGED

10  INTEREST REPORTING ON OTHER ACCOUNTS NOT CHARGED HERE.

11        WE HAVE TALKED ABOUT, PERHAPS, REDACTING SOME OF THESE.

12        MR. SCHAINBAUM, I HAD INDICATED EARLIER ABOUT REDACTING IN

13  THE COLUMNS RECEIVED FROM, ACCOUNT INFORMATION, AMOUNT REPORTED

14  TO I.R.S. BY OTHERS, REDACTING ALL OF THAT INFORMATION IN THOSE

15  BOXES AND JUST LEAVING THE ITEM NUMBER AND THE ISSUE IDENTIFIED

16  AS INTEREST.

17        AND I'D LIKE YOUR THOUGHTS ON THAT, PLEASE.

18            MR. SCHAINBAUM:  YOUR HONOR, IF I UNDERSTAND YOU

19  CORRECTLY, YOU WANT TO REDACT NOT THE NAME OF THE BANK, WHICH

20  IS RECEIVED FROM, AND YOU DON'T WANT TO REDACT THE ISSUE COLUMN

21  WHICH IDENTIFIES INTEREST AS THE ITEM THAT IS BEING LOOKED

22  AT --

23            THE COURT:  I GUESS WHAT I'M SAYING -- PARDON ME FOR

24  INTERRUPTING.  I GUESS WHAT I'M SAYING JUST TO START WITH, THIS

25  IS MY QUESTION TO YOU, IF THE REAL INTEREST IN THIS DOCUMENT

1    IS -- A POOR CHOICE OF WORDS -- IF THE VALUE, I SUPPOSE, OF

2    THIS DOCUMENT FROM THE GOVERNMENT'S PERSPECTIVE IS TO SHOW

3    SCIENTER OF AN INTEREST ISSUE WITH THE I.R.S. AND YOUR CLIENT,

4    RECOGNIZING THAT, IT IS POSSIBLE TO REDACT EVERY BOX TO THE

5    RIGHT OF THE ISSUE BOX SO THAT IT JUST HAS ISSUE:  INTEREST.

6         MR. SCHAINBAUM:  YEAH, BUT THAT DOES NOT COMPORT

7    WITH OUR DEFENSE.  DID HE LACK WILLFULNESS?  AND WITHOUT TRYING

8    TO GO INTO TOO MUCH WHAT THE DEFENSE IS THINKING IS, I'LL JUST

9    POINT OUT TO I'M LOOKING AT PAGE 7 OF 18 OF THE 143.  JUST ON

10   THAT PAGE.

11       YOU TAKE THE ITEM NUMBER 10 IN THE BOX CALLED THE AMOUNT

12   REPORTED TO THE I.R.S. BY OTHERS: $12.  AMOUNT INCLUDED ON

13   RETURN: $12.

14       IF YOU WANT TO TALK WILLFULNESS, WE'RE TALKING LACK OF

15   WILLFULNESS.

16       WHAT IS THE NEXT ITEM CITIGROUP.  AMOUNT REPORTED TO

17   I.R.S. BY OTHERS: 9500.  AMOUNT INCLUDED ON YOUR RETURN: 9500.

18       OKAY.  THEN THE NEXT ONE IS AMOUNT REPORTED TO I.R.S.:

19   553.  ZERO ON HIS RETURN.

20       NEXT ONE.  $1,052 REPORTED TO I.R.S. BY OTHERS.  AMOUNT

21   INCLUDED ON YOUR RETURN:  1,052.  SO THIS IS A MIXED BAG.

22            THE COURT:  SO WE SHOULD LEAVE THOSE IN THERE?  SO

23   YOU'D LIKE THOSE LEFT IN?

24            MR. SCHAINBAUM:  RIGHT.  I THINK IT SHOWS --

25            THE COURT:  I GET IT.

```
 1              MR. SCHAINBAUM:  YOU'VE GOT IT.

 2              THE COURT:  AND THEN THE NEXT QUESTION IS SHOULD

 3    THESE -- SHOULD ALL 40 ITEMS BE PRESENTED TO THE JURY.  AND, IF

 4    NOT, WHERE SHOULD THIS STOP?

 5           NOW, MS. SISKIND PREVIOUSLY INDICATED THAT A PAGE --

 6              MS. SISKIND:  PAGE 8.  IT SWITCHES OVER FROM

 7    INTEREST TO A DIFFERENT TYPE OF INCOME.

 8              THE COURT:  YES.  THERE ARE 14 INTEREST ITEMS IN

 9    THIS LETTER.  IF WE INCLUDE 14, WHICH I ASSUME YOU WOULD WANT

10    TO INCLUDE BECAUSE THAT DOES SHOW THAT AMOUNT REPORTED BY BOTH

11    PARTIES, THE BANK AND YOUR CLIENT, ARE THE SAME AND SO THERE'S

12    A ZERO DIFFERENCE.

13              MS. SISKIND:  I WOULD POINT OUT JUST FOR THE RECORD,

14    YOUR HONOR, THE DEFENSE IS GOING TO PUT IN TRANSCRIPTS THAT

15    TALK ABOUT AN AUDIT AS A SINGULAR UNIT.  IT MAY BE MISLEADING

16    TO REDACT PARTS OF IT.  I'M JUST PUTTING THAT OUT THERE THAT --

17              THE COURT:  THAT'S A GOOD THOUGHT IS THAT IF WE HAVE

18    A WITNESS ON THE STAND WHO I PRESUME HAS THE CAPABILITIES AND

19    BACKGROUND AND KNOWLEDGE TO TESTIFY ABOUT THE CODES.

20              MS. SISKIND:  YES.

21              THE COURT:  AND SOME OF THOSE CODES, I'M SURE,

22    RELATE TO THE INTEREST, UNDERPAID, UNREPORTED, WHATEVER IT IS,

23    AND SOME OF THOSE CODES MAY ALSO RELATE TO SCHEDULE D/CAPITAL

24    GAINS DIVIDENDS.

25              MS. SISKIND:  WELL, I THINK THE CODE ACTUALLY
```

1    RELATES JUST THE AUDIT AS A WHOLE.  THE TWO THINGS THAT THE 290

2    TALKS ABOUT IS ADDITIONAL TAX ASSESSED BY EXAMINATION, WHICH

3    REFERS TO THE BOTTOM LINE FIGURE THAT COMES OUT OF THIS WHOLE

4    EXERCISE, DIVIDENDS, INTEREST AND ALL.

5         I'LL DEFER TO THE COURT ON WHAT TO DO WITH THE DIVIDENDS

6    AND CAPITAL GAINS BUT CERTAINLY THE TRANSCRIPT TALKS ABOUT THE

7    AUDIT AS A UNIT.  IT DOESN'T JUST TALK ABOUT THE AUDIT IN

8    PIECES.

9              MR. SCHAINBAUM:  I GO BACK TO MY ORIGINAL OBJECTION

10   TO THE ENTIRE DOCUMENT, AND I MAINTAIN THAT.

11        BUT IF YOU'RE GOING TO TRY TO PUT THIS IN WITH THE

12   TRANSCRIPT THAT IS ALREADY IN THE RECORD, AND IF THE ISSUE HERE

13   IS INTEREST, UNDERREPORTED OR UNREPORTED, THAT'S THE ISSUE.

14        SO I THINK THAT THE ARGUMENT HERE IS THAT THEY'RE TRYING

15   TO SHOW THROUGH THIS CALCULATION HERE THAT HE'S GOT UNREPORTED

16   INTEREST.  I THINK YOU NEED TO LEAVE ALL OF THE INTEREST IN,

17   AND I THINK YOU NEED TO CONFINE IT TO THAT SUBJECT.

18        THIS OTHER SUBJECT CUTS BOTH WAYS, BUT I'M NOT GOING TO GO

19   INTO IT.

20              THE COURT:  OKAY.

21              MR. SCHAINBAUM:  BUT I THINK, TO USE MS. SISKIND'S

22   TERM FROM THE FEDERAL RULES OF EVIDENCE, "IT'S NOT RELEVANT."

23              MS. SISKIND:  AND I DON'T NECESSARILY HAVE A STRONG

24   FEELING EITHER WAY ON THE DIVIDENDS AND CAPITAL GAINS ISSUE.  I

25   JUST WANT TO POINT OUT THAT WHEN THE JURY SEES THE TRANSCRIPT,

1    THEY'RE GOING TO SEE A REFERENCE TO A BOTTOM LINE NUMBER THAT

2    COMES FROM THE AUDIT AS A WHOLE.

3         MR. SCHAINBAUM:  AND THEY'RE GOING TO SEE A LINE

4    ITEM REFLECTING WHAT THE AUDIT RESULTS WERE.

5         THE COURT:  SO WHEN I LOOK AT 143, PAGE 8, BELOW

6    ITEM 14 THERE'S AN INTEREST TOTAL NUMBER WITH A DIFFERENCE,

7    $553 IS THE DIFFERENCE.

8         GOING DOWN THE FORM, THE NEXT TOTAL IS SCHEDULE D/CAPITAL

9    GAIN DIVIDENDS; THEN THERE'S A TAXABLE DIVIDENDS TOTAL; AND

10   THEN THERE'S STATE INCOME TAX REFUND, WHICH I DON'T THINK HAS

11   ANY RELEVANCE HERE.

12        I COULD AND I AM INCLINED TO ALLOW 143 TO COME IN.  NOW,

13   THIS IS ALSO CONTINGENT ON THE TRANSCRIPTS -- IS THAT WHAT

14   THEY'RE CALLED, TRANSCRIPTS?

15        MS. SISKIND:  YES.

16        THE COURT:  THOSE ALSO CAN BE ADMITTED.  I DON'T

17   KNOW WHO IS GOING TO ADMIT THOSE.

18        MS. SISKIND:  I THINK THE DEFENSE IS GOING TO DO

19   THAT ON CROSS-EXAMINATION.

20        THE COURT:  IS THAT WHAT YOU WOULD LIKE TO DO

21   MR. SISKIND.

22        MS. SISKIND:  I'M MS. SISKIND.

23        THE COURT:  I'M SORRY.

24        MR. SCHAINBAUM:  DON'T YOU HAVE A MURDER HEARING

25   THIS AFTERNOON?

```
1              THE COURT:  YES.

2              MR. SCHAINBAUM:  I'M LEAVING THE COURTHOUSE.

3         I DON'T CARE, BUT I THINK IN ALL FAIRNESS THE GOVERNMENT

4    HAS GOT THEIR I.R.S. WITNESS UP THERE, THEY SHOULD SUBMIT IT.

5    BUT IF THEY WANT TO LEAVE IT TO US, WE'LL DO IT.

6              THE COURT:  SOMEHOW THEY'RE GOING TO GET IN.

7              MR. SCHAINBAUM:  THAT'S A GOOD ANSWER, YES.

8              THE COURT:  SO ON 143 WHAT I'LL DO, MR. SCHAINBAUM,

9    IS WE'LL REDACT, MS. SISKIND, EVERYTHING BELOW ON PAGE 8 BELOW

10   THE INTEREST TOTAL BOX AND THAT WILL COME OUT.  AND THIS IS,

11   AGAIN, CONTINGENT ON SOMEONE INTRODUCING THE TRANSCRIPTS.

12        LET'S MOVE TO 144.

13             MS. SISKIND:  JUST TO BE CLEAR, YOUR HONOR, ALSO

14   REDACTING PAGES 9, 10, 11, 12, AND 13?

15             THE COURT:  THAT'S RIGHT.

16             MS. SISKIND:  SO ALL OF THAT.

17             THE COURT:  THAT'S RIGHT.

18             MS. SISKIND:  IS THERE ANYTHING THAT THE COURT NEEDS

19   US TO REDACT ON PAGE 17?

20        TO CLARIFY, THE SECTION ON THE CHART ABOUT INTEREST, WE

21   CAN LEAVE ALL OF THE COLUMNS IN ON THAT PART OF THE CHART?

22             THE COURT:  YES.

23             MS. SISKIND:  OKAY.

24             MR. SCHAINBAUM:  I DIDN'T HEAR.

25             THE COURT:  MR. SCHAINBAUM, ALL OF THE COLUMNS IN
```

1    REGARDS TO INTEREST WILL REMAIN WITH THE BANKS, THE ACCOUNT

2    NUMBERS, AND THE AMOUNT REPORTED.

3            MR. SCHAINBAUM:  YES.

4            THE COURT:  OKAY.  NOW WE'RE MOVING TO -- SO WE'RE

5    GOING TO REDACT ALL OF THE OTHER BOXES, WHICH INCLUDES 40,

6    WHICH BRINGS US TO PAGE 13, I THINK IT IS.

7            MS. SISKIND:  YES, YOUR HONOR.

8            THE COURT:  AND THEN PAGE 14.  MR. SCHAINBAUM, THAT

9    WILL REMAIN.

10       PAGE 15 WILL REMAIN.  WHEN I SAY, "REMAIN," THAT MEANS

11   UNREDACTED.

12       16.

13       PAGE 17, MR. SCHAINBAUM?  ARE THERE ANY CHANGES THAT

14   SHOULD TAKE PLACE ON THAT?

15       MS. SISKIND, MAYBE YOU WANT TO START THIS CONVERSATION?

16           MS. SISKIND:  I SUPPOSE NOW THIS IS TOTALLING UP

17   THINGS THAT HAVE BEEN REDACTED ALONG WITH THINGS THAT ARE

18   UNREDACTED?

19           THE COURT:  WELL, THAT'S WHAT THIS SHOWS, THIS SHOWS

20   THE CUMULATIVE TOTAL.

21           MS. SISKIND:  RIGHT.  WE COULD REDACT THIS PAGE,

22   EITHER PARTS OR IN ITS ENTIRETY.

23           THE COURT:  SO IF WE KEEP THIS CONSISTENT WITH JUST

24   THE INTEREST, THE SCHEDULE D/CAPITAL GAINS DIVIDENDS WOULD GO,

25   THE STATE INCOME TAX REFUND WOULD GO, THE TAXABLE DIVIDENDS

```
 1    COLUMN WOULD GO, QUALIFIED DIVIDENDS AND POST-MAY 5 CAPITAL

 2    GAINS WOULD GO.

 3         I THINK -- IS THERE GOING TO BE A PROBLEM WITH THE NEXT

 4    BOX, CHANGES TO YOUR TAX COMPUTATION, BECAUSE THAT PROBABLY

 5    CAPTURES ALL OF THE OTHER ITEMS THAT WE JUST REDACTED.

 6              MR. SCHAINBAUM:  I THINK, YOUR HONOR, YOU CAN REDACT

 7    THE WHOLE PAGE IF YOU GO THIS WAY BECAUSE THE BOTTOM LINE TOTAL

 8    AMOUNT THAT YOU OWE IS GOING TO APPEAR ON THE TRANSCRIPT.

 9              THE COURT:  I'M SORRY?

10              MR. SCHAINBAUM:  THE BOTTOM LINE, THE LAST LINE OF

11    THE GRID SUMMARY OF PROPOSED CHANGES --

12              THE COURT:  YES.

13              MR. SCHAINBAUM:  -- TOTAL AMOUNT THAT YOU OWE, THAT

14    NUMBER WOULD APPEAR ON THE TRANSCRIPT OR MODIFIED NUMBER,

15    DEPENDING ON HOW THE TAXPAYER RESPONDED.

16         I DON'T HAVE THE TRANSCRIPT IN FRONT OF ME.  SO IF I HAD

17    IT, I COULD EXPLAIN IT BETTER.

18              MS. SISKIND:  I THINK WE CAN JUST REDACT THIS WHOLE

19    PAGE.

20              THE COURT:  ALL RIGHT.  MR. SCHAINBAUM, MS. SISKIND

21    AGREES WITH YOU.

22              MS. SISKIND:  IT WILL JUST BE EASIER.

23              THE COURT:  ALL RIGHT.  WE'LL REDACT THAT PAGE.

24    PAGE 18 THEN IS NOT NEEDED.

25              MS. SISKIND:  INTENTIONALLY LEFT BLANK I THINK IT
```

1          SAYS.

2                    MR. SCHAINBAUM:  THAT'S WILLFULNESS.

3                    THE COURT:  LET'S GO TO 144 THEN.

4              LET ME JUST START, PAGE 1, PAGE 2, PAGE 3, PAGE 4 -- PAGE

5          5 BEGINS THE GRID AGAIN.  AND I DON'T SEE INTEREST IN HERE.

6                    MS. SISKIND:  AND I THINK THAT'S BECAUSE 143 IS AN

7          UPDATE TO 144.  IT'S THE SAME TAX YEAR.  IT STILL RELATES TO

8          INTEREST, WHICH YOU CAN TELL BY LOOKING AT PAGE 14.

9              BUT WHAT MR. OERTEL WILL EXPLAIN IS THAT THE TAXPAYER WILL

10         GET ONE AND HAS A CHANCE TO RESPOND, AND THEN THIS IS THE NEW

11         NOTICE THAT THEY GET AFTER THEY HAVE HAD A CHANCE TO RESPOND,

12         BUT IT STILL RELATES TO INTEREST INCOME AS YOU CAN SEE FROM

13         PAGE 14.

14                   THE COURT:  THE ITEMS IN THE BOXES ARE ALL RELATED

15         TO CAPITAL GAINS DIVIDENDS, AND IT SEEMS LIKE, TO BE

16         CONSISTENT, THOSE NEED TO BE REDACTED.  I DON'T KNOW WHAT THE

17         VALUE OF THIS EXHIBIT IS.

18                   MS. SISKIND:  THE VALUE IS THAT IT RELATES TO THE

19         SAME AUDIT AND STILL RELATES TO INTEREST INCOME BECAUSE IF YOUR

20         HONOR LOOKS ON PAGE 14 ON THAT CHART, INTEREST INCOME IS STILL

21         THE SUBJECT OF THIS AUDIT EVEN IF THERE ARE NOT INTEREST ITEMS

22         ENUMERATED IN THE VARIOUS CHARTS.

23                   MR. SCHAINBAUM:  AND IN ALL FAIRNESS, THIS SAYS

24         REPORTED TO I.R.S. OR CORRECTED AND THE DIFFERENCE IS $553.

25                   THE COURT:  SO ARE YOU SUGGESTING THAT THAT COLUMN

```
 1     SHOULD REMAIN, MR. SCHAINBAUM?

 2               MR. SCHAINBAUM:  I STILL THINK IT WILL REFLECT ON

 3     THE TRANSCRIPT.  I DON'T KNOW, MAYBE MR. HELGESEN HAS THE

 4     TRANSCRIPT FOR 2003.  THANK YOU.

 5               THE COURT:  MS. SISKIND, DO YOU HAVE A THOUGHT ON

 6     WHAT SHOULD REMAIN ON PAGE 14?

 7               MS. SISKIND:  THE LINE -- THE HEADING CHANGES TO

 8     YOUR INCOME AND DEDUCTION SHOWN ON RETURN AND SO ON, REDACT THE

 9     FIRST TWO LINES, LEAVE INTEREST, AND REDACT THE REST.

10               THE COURT:  I THINK THAT WAS MY OBSERVATION,

11     MR. SCHAINBAUM.

12               MR. SCHAINBAUM:  WELL, TO BE CONSISTENT WITH THE

13     OTHER EXHIBIT, YOU REDACTED THE WHOLE PAGE.

14               THE COURT:  I DID, BUT THIS -- WE'RE REDACTING ALL

15     OF THE DIVIDENDS ON THIS.  SO THERE'S NO BOXES, IF YOU WILL,

16     BUT WHAT THIS WOULD SHOW IS A CONTINUATION OF THE INTEREST

17     CALCULATION.

18               MR. SCHAINBAUM:  AND LEAVE THAT?

19               THE COURT:  YES, JUST LEAVE THAT, WHICH I THINK

20     WOULD ALLOW YOU TO EXPLAIN INTEREST CARRY-OVER, ALLOW

21     MS. SISKIND TO EXPLAIN THIS IS A CARRY-OVER FROM THE PREVIOUS

22     YEAR, AND IT CONTINUES THE CONVERSATION ABOUT INTEREST ONLY.

23               MS. SISKIND:  THIS IS THE SAME YEAR, YOUR HONOR.

24     IT'S THE SAME YEAR.

25               THE COURT:  BUT IT'S AFTER HIS RECALCULATION, IS
```

1    THAT WHAT IT IS?

2              MS. SISKIND:  YES.

3              MR. SCHAINBAUM:  WELL, YOU GET THE NOTICE AND THEN

4    YOU RESPOND TO THE NOTICE, AND THEN AS A RESULT OF THAT

5    RESPONSE, THIS IS THE CONCLUSION.

6              THE COURT:  SO IT JUST CARRIES OVER THAT RESULT.

7    WE'RE ONLY INTERESTED IN THE INTEREST PART, CONCERNED WITH THE

8    INTEREST PART.  SO WE'LL LEAVE INTEREST IN THIS THEN, AS YOU

9    SUGGEST, MS. SISKIND.

10             MS. SISKIND:  RIGHT.

11             THE COURT:  EVERYTHING ELSE WILL GO AWAY.

12        145.

13             MR. SCHAINBAUM:  WELL, LET'S GO BACK TO THIS BEFORE

14   WE GO OFF.

15             THE COURT:  YES.

16             MR. SCHAINBAUM:  I HAVE THE TRANSCRIPT IN FRONT OF

17   ME AND IN ORDER TO REALLY DO A PROPER LACK OF WILLFULNESS

18   ARGUMENT, IF YOU'RE GOING TO USE THIS FOR WILLFULNESS, ON THE

19   LAST PAGE, PAGE 2 OF THE TRANSCRIPT UNDER CODE 640, YOU HAVE

20   GOT ADVANCED PAYMENT OF TAX OWED 06 --

21             THE COURT:  WOULD YOU REPEAT YOURSELF.

22             MR. SCHAINBAUM:  06-29-2005.  NEXT IS A MINUS SIGN

23   $5,269.  THAT'S THE EXACT NUMBER TO WHAT IS ON THIS LAST PAGE.

24        SO IF YOU WANT TO REDACT EVERYTHING EXCEPT INTEREST AND

25   THAT LAST LINE, WE CAN CORRELATE IT TO THIS TRANSCRIPT FOR

1       2003.

2              THE COURT:  THE LAST LINE MEANING THE SUMMARY OF

3       PROPOSED CHANGES ON PAGE 14?

4              MR. SCHAINBAUM:  CORRECT.  TOTAL AMOUNT YOU OWE

5       SHOWS UP AS A PAYMENT AND IT'S CHARACTERIZED BY CODE 640 ON THE

6       TRANSCRIPT.  ADVANCED PAYMENT OF TAX OWED.

7              THE COURT:  OKAY.

8              MR. SCHAINBAUM:  AND IT GIVES ME AN ARGUMENT FOR

9       LACK OF WILLFULNESS.

10             THE COURT:  SO, MR. SCHAINBAUM, ARE YOU SUGGESTING

11      THAT THAT ENTIRE BOX THAT IS ENTITLED SUMMARY OF PROPOSED

12      CHANGES REMAIN?

13             MR. SCHAINBAUM:  YES, I AM.

14             THE COURT:  MS. SISKIND?

15             MS. SISKIND:  THAT'S FINE.

16             MR. SCHAINBAUM:  THANK YOU, YOUR HONOR.

17             THE COURT:  YOU'RE WELCOME.  TURNING TO 145

18      MS. SISKIND, SHOULD PAGE 1 REMAIN AS PRINTED?

19             MS. SISKIND:  YES.

20             THE COURT:  PAGE 2.  PAGE 3 OF 15 IS A BLANK PAGE.

21         PAGE 4 OF 15.  PAGE 5.

22         HERE ON PAGE 6 THERE'S ONE ITEM OF INTEREST.  IT'S THE

23      FIRST ITEM.  EVERYTHING ELSE LOOKS LIKE IT'S SCHEDULE D/CAPITAL

24      GAIN DIVIDENDS AND TAXABLE DIVIDENDS.

25             CONSISTENT WITH WHAT WE HAVE DONE, SHOULD EVERYTHING BE

```
 1        REDACTED EXCEPT ITEM 1, INTEREST?

 2                  MS. SISKIND:  YES, YOUR HONOR.

 3                  THE COURT:  MR. SCHAINBAUM?

 4                  MR. SCHAINBAUM:  OVER MY OBJECTION, YES.  I MEAN, I

 5        HAVE OBJECTED TO ALL OF THESE ITEMS THAT WE'RE GOING THROUGH

 6        EXCEPT FOR THE TRANSCRIPTS.

 7                  THE COURT:  OKAY.

 8                  MR. SCHAINBAUM:  I JUST WANT TO MAKE IT FOR THE

 9        RECORD.

10                  THE COURT:  THAT'S FINE.  THAT'S FINE.

11           SO ITEM 2 WILL BE REDACTED FROM PAGE 6.

12           THEN ALL OF THE OTHER ITEMS ON PAGE 7 ARE REDACTED.

13           PAGE 8, THAT ITEM IS REDACTED.

14           PAGE 9 IS BLANK.  IT'S 9 OF 15, BUT IT'S TITLED PAGE 7.

15           PAGE 10 OF 15 WILL REMAIN.

16           PAGE 11 OF 15 WILL REMAIN.

17           ANY OBJECTION OF THAT?  I'M LOOKING AT 11 OF 15, OTHER

18        REDUCTIONS HAS SOME NUMBERS IN IT.

19                  MS. SISKIND:  I DON'T THINK THOSE ARE NUMBERS

20        RELATED TO SPECIFICALLY --

21                  THE COURT:  TO THE INTEREST ISSUE.

22                  MS. SISKIND:  WELL, TO THE DEFENDANT -- I THINK

23        THEY'RE NUMBERS PROVIDED BY THE I.R.S. FOR THE CUTOFF FROM WHEN

24        YOUR ADJUSTED GROSS INCOME GETS ABOVE A CERTAIN AMOUNT.  IT'S

25        NOT SPECIFIC TO THIS DEFENDANT.
```

1386

```
 1              THE COURT:  OKAY.  PAGE 12 WILL REMAIN.

 2          PAGE 13 WILL REMAIN.

 3          PAGE 14 HAS THE BOX REGARDING CHANGES.

 4              MR. SCHAINBAUM:  THE SAME ANALYSIS, YOUR HONOR.

 5      OVER MY OBJECTION THE INTEREST IS WHAT THE GOVERNMENT IS AFTER.

 6              THE COURT:  SO WE SHOULD REDACT EVERYTHING BUT THE

 7      INTEREST?

 8              MR. SCHAINBAUM:  AND THE LAST GRID, WHICH INDICATES

 9      AMOUNT OF TAX INCREASE, THE ACCURACY RELATED PENALTY, INTEREST,

10      AND THE TOTAL AMOUNT YOU OWE.

11              MS. SISKIND:  WE'LL LEAVE THE WHOLE CHART THAT IS

12      CALLED SUMMARY OF PROPOSED CHANGES, AND WE'LL ALSO LEAVE THE

13      INTEREST LINE IN THE CHANGES CHART.

14              THE COURT:  RIGHT.  ARE YOU WITH US THERE?

15              MR. SCHAINBAUM:  YES.

16              THE COURT:  OKAY.  ALL RIGHT.  PAGE 15 OF 15 --

17              MR. SCHAINBAUM:  WHEN I SAY "YES, ALL RIGHT," IT'S

18      IN RELATION TO MY CONTINUING OBJECTION.

19              THE COURT:  OKAY.  SO NOTED.

20              MR. SCHAINBAUM:  BUT I'M WITH IT.

21              THE COURT:  PAGE 15 OF 15 IS BLANK.  I DON'T KNOW IF

22      THAT'S NEEDED.

23          THEN WHAT I HAVE NEXT IS PAGE 1 OF 12 OF THE SAME EXHIBIT.

24              MS. SISKIND:  146 SHOULD BE THE NEXT EXHIBIT.

25              THE COURT:  YOU KNOW WHAT, A TAB IS MISSING.  THAT'S
```

1    RIGHT.  146 IS MAY 29, 2007.

2              MS. SISKIND:  CORRECT, YOUR HONOR.

3              THE COURT:  IT'S 12 PAGES.

4              MS. SISKIND:  YES.

5              THE COURT:  PAGE 1, PAGE 2, PAGE 3, PAGE 4.

6         PAGE 5 OF 12 HAS THE START OF THE BOXES.  THE FIRST TWO

7    ITEMS ON PAGE 12 ARE INTEREST.  WE'LL LEAVE THOSE.

8         PAGE 6 OF 12 IS NOT INTEREST ITEMS.  THOSE SHOULD BE

9    REDACTED.

10        PAGE 7 OF 12, ITEMS 7 AND 8 ARE NOT INTEREST.  THOSE

11   SHOULD BE REDACTED.

12        PAGE 9 AND 10 ARE INTEREST, AND THOSE SHOULD REMAIN.

13             MS. SISKIND:  I'M SORRY.

14             THE COURT:  ITEMS 9 AND 10.

15             MS. SISKIND:  YES, YOUR HONOR.

16             THE COURT:  PAGE 8 OF 12, THOSE SHOULD BE REDACTED

17   AS NOT INTEREST ITEMS.

18        THERE'S NO TOTAL PAGE IN THIS EXHIBIT.

19             MS. SISKIND:  THAT'S CORRECT.

20             THE COURT:  SO PAGE 9 WOULD REMAIN.

21        PAGE 10 WOULD REMAIN.

22        PAGE 11 WOULD REMAIN.

23        PAGE 12 WOULD REMAIN.

24        SHOULD WE MOVE TO 147?

25             MS. SISKIND:  YES.

1388

1          THE COURT:  MR. SCHAINBAUM, WE'RE ON 147.  PAGE 1.

2     PAGE 2.

3          PAGE 3 OF 18 IS BLANK.  I DON'T KNOW IF THAT NEEDS TO

4     REMAIN.

5          PAGE 4 OF 18 WILL REMAIN.

6          PAGE 5 OF 18 WILL REMAIN.

7          PAGE 6 OF 18 HAS THE BOXES AGAIN.  ITEMS 1 AND 2 ARE

8     INTEREST, THOSE WILL REMAIN.  ITEM 3 ON THIS PAGE IS

9     NONEMPLOYEE COMPENSATION, THAT WILL BE REDACTED.

10          PAGE 7 OF 18 WILL BE REDACTED.

11          PAGE 8 OF 18, ITEM 12 WILL BE REDACTED.  13 AND 14 WILL

12     REMAIN.  15, 16, AND 17 WILL BE REDACTED.

13          PAGE 9 WILL BE REDACTED.  ITEM 18 IS REDACTED.

14          PAGE 10 OF 18 IS BLANK.  PAGE 11, 12.

15          PAGE 13 IS BLANK.  14, 15, 16.

16          PAGE 17 IS THE CHANGES TO RETURN.  AGAIN, BEING CONSISTENT

17     WE WILL LEAVE IN THE FIRST BOX, THE INTEREST BOX, AND THE

18     SUMMARY OF PROPOSED CHANGES WILL REMAIN.

19          MR. SCHAINBAUM:  RIGHT.  YOUR HONOR, I WOULD ASK THE

20     GOVERNMENT IF THEY COULD GET THE LAST PAGE BECAUSE IT SEEMS

21     THAT EXHIBIT 146 --

22          THE COURT:  THE LAST PAGE?

23          MR. SCHAINBAUM:  YEAH, THE LAST PAGE OF 146 IS NOT

24     THERE, THE SUMMARY PAGE.

25          MS. SISKIND:  YOUR HONOR, WHERE WE GOT THESE

1    EXHIBITS FROM IS THE DEFENSE EXHIBIT BINDERS.  WE DIDN'T OBTAIN

2    THESE INDEPENDENTLY.  WHEN WE GOT THEIR EXHIBITS BACK IN

3    FEBRUARY, THAT'S WHERE WE PULLED THESE FROM.  SO IF THEIRS WERE

4    INCOMPLETE, OURS WERE AS WELL.

5              THE COURT:  YOU HAVE IT, AND WE CAN ADD IT,

6    MR. SCHAINBAUM.

7              MR. SCHAINBAUM:  YEAH, IF WE HAVE IT, WE'LL ADD IT.

8              THE COURT:  148.  PAGE 1, 2, 3, 4.

9         PAGE 5 OF 14 HAS THE TWO INTEREST ITEMS.  THOSE WILL

10   REMAIN.

11        PAGE 6, ITEM 3 INTEREST WILL REMAIN.

12        4, 5, 6, AND 7 WILL BE REDACTED.

13        PAGE 7, 8, 9, 10, 11, 12 ARE REDACTED.

14        PAGE 8, ALL OF THOSE ITEMS 13 THROUGH 17 ARE REDACTED.

15        PAGE 9, 18 AND 19 WILL REMAIN AS INTEREST ITEMS.

16        20, 21, AND 22 ARE REDACTED.  10, 11, 12, 13.  14 IS

17   BLANK.  THERE IS NO SUMMARY PAGE IN THIS EXHIBIT.

18        I'M ON 149 NOW.  1, 2, 3.  PAGE 4 OF 15 IS BLANK.

19        5.  PAGE 6 OF 15, ITEMS 1, 2, 3 WILL REMAIN.  ITEM 4 IS

20   REDACTED.

21        PAGE 7, ITEMS 5 THROUGH 12 ARE REDACTED.

22        PAGE 8, ITEM 13 THROUGH 17 ARE REDACTED.  18 AND 19 WILL

23   REMAIN.

24        PAGE 9, ITEMS 20 THROUGH 22 ARE REDACTED.

25        PAGE 10, 11, 12, 13, 14 WILL REMAIN.

1        PAGE 15 IS THE SUMMARY PAGE.  ONLY THE INTEREST COLUMNS

2   AND CHANGES TO INCOME AND DEDUCTIONS WILL REMAIN.  CHANGES TO

3   TAX COMPUTATION WILL BE REDACTED, AND THE SUMMARY OF PROPOSED

4   CHANGES WILL REMAIN.

5        150.  1, 2, 3, 4, PAGE 5, THOSE WILL REMAIN.  PAGE 5 HAS

6   THE INTEREST, ITEMS 1 AND 2, THOSE WILL REMAIN.

7        PAGE 6, THOSE ITEMS WILL BE REDACTED.

8        PAGE 7 OF 14, ITEM 7 WILL BE REDACTED.  8 AND 9 WILL

9   REMAIN.  ITEM 10 IS REDACTED.

10       PAGE 8, ITEMS 11 THROUGH 16 ARE REDACTED.

11       PAGE 9, ITEMS 17 THROUGH 22 ARE REDACTED.

12       PAGE 10, 23 THROUGH 26 ARE REDACTED.

13       PAGE 11 REMAINS.

14       12, 13, 14 REMAINS.

15       THERE IS NO SUMMARY ON THIS.

16       ITEM -- LET'S SEE.  150.

17            MS. SISKIND:  EXHIBIT 151, YOUR HONOR?

18            MR. SCHAINBAUM:  EXHIBIT 151?

19            THE COURT:  YES.  151.  IS THAT APRIL 13TH?

20            MS. SISKIND:  YES, YOUR HONOR.

21            THE COURT:  PAGE 1, PAGE 2, PAGE 3.  PAGE 4 OF 18 IS

22   BLANK.  PAGE 5.

23       PAGE 6 HAS THE SCHEDULES.  ITEMS 1 AND 2 WILL REMAIN.

24   ITEM 3 WILL BE REDACTED.

25       PAGE 7, ITEMS 4, 5, 6 AND 7 ARE REDACTED.  8 AND 9 REMAIN.

1          PAGE 8, 10 THROUGH 18 ARE REDACTED.

2          PAGE 9 IS BLANK.

3          PAGE 10, 19 THROUGH 26 ARE REDACTED.

4          PAGE 11 REMAINS.  12, 13.

5          PAGE 14 IS BLANK.

6          15 AND 16 REMAINS.

7          PAGE 17 HAS THE FINAL COMPUTATIONS.  THE INTEREST WILL

8     REMAIN IN THE FIRST BOX.  AND CHANGES TO INCOME AND DEDUCTIONS

9     AND THE SUMMARY OF PROPOSED CHANGES BOX WILL REMAIN.  THE OTHER

10    BOX WILL BE REDACTED.

11         PAGE 18 IS BLANK.

12         152.  PAGE 1 WILL REMAIN.

13         PAGE 2 IS BLANK.

14         PAGE 3 WILL REMAIN.  PAGE 4.

15         PAGE 5 IS BLANK.

16         PAGE 6 WILL REMAIN.

17         PAGE 7 HAS THE BOXES.  ITEMS 1 AND 2 WILL REMAIN.  3 IS

18    REDACTED.

19         ON PAGE 8, ITEMS 4, 5, 6, AND 7 ARE REDACTED.  8 AND 9

20    REMAIN.

21         PAGE 9, 10 THROUGH 18 ARE REDACTED.

22         PAGE 10 IS BLANK.

23         PAGE 11, 19 THROUGH 26 ARE REDACTED.

24         PAGE 12 WILL REMAIN.  13, 14.

25         PAGE 15 IS BLANK.

1      PAGE 16 WILL REMAIN.

2      PAGE 17 IN THE FIRST BOX, CHANGES TO INCOME AND

3  DEDUCTIONS, INTEREST WILL REMAIN.

4      THE CHANGES TO COMPUTATION IS REDACTED, AND THE SUMMARY OF

5  PROPOSED CHANGES REMAINS.

6      ITEM 153.  PAGE 1, PAGE 2, PAGE 3.

7      PAGE 4 OF 15 IS BLANK.

8      PAGE 5, ALL OF THOSE WILL REMAIN.

9      PAGE 6, ITEM 1 IS REDACTED AND 3 IS REDACTED.

10     PAGE 7, ITEMS 4 THROUGH 11 ARE REDACTED.

11     PAGE 8, ITEMS 12 THROUGH 16 ARE REDACTED.

12     PAGE 9 REMAINS.  10, 11, 12.

13     PAGE 13, THE FIRST BOX IS REDACTED, CHANGES TO INCOME

14  DEDUCTIONS.  CHANGES TO TAX COMPUTATION IS REDACTED.  THE

15  SUMMARY OF PROPOSED SUMMARY REMAINS.

16     PAGES 14 AND 15 ARE BLANK.

17     154 --

18         MS. SISKIND:  I THINK THAT'S -- YEP, THAT WAS ALL.

19         THE COURT:  YES.  AND I THINK THAT CONCLUDES THE

20  REDACTIONS FOR THESE ITEMS.

21     AGAIN, THIS IS CONTINGENT ON THE TRANSCRIPTS BEING

22  INTRODUCED IN EVIDENCE, AND I DON'T KNOW WHICH OF YOU IS GOING

23  TO DO THAT.

24         MS. SISKIND:  WE MAY JUST DO IT.

25         THE COURT:  ALL RIGHT.

1        MS. SISKIND:  WE'LL DECIDE THAT TONIGHT.

2        THE COURT:  AND THEN YOU'LL DO THESE REDACTIONS,

3   MS. SISKIND, AND HAVE THOSE, AND HAVE THOSE TO MR. SCHAINBAUM

4   TOMORROW MORNING BEFORE WE BEGIN.

5        MS. SISKIND:  YES, YOUR HONOR.

6        THE COURT:  AND IF YOU WANT TO ARRIVE EARLY, THAT

7   WOULD BE GREAT SO THAT YOU CAN EXCHANGE THESE ITEMS.

8        AS I SAID, THE JURY WILL BE HERE AT 10:30.  I'LL INVITE

9   YOU TO BE HERE AT 10:00 IF YOU CAN, AND MAYBE WE CAN RESOLVE IF

10  THERE ARE ANY OTHER ISSUES THAT WE NEED TO RESOLVE.

11       ANYTHING FURTHER?

12       MS. SISKIND:  I DON'T BELIEVE SO.

13       MR. SCHAINBAUM:  NO, UNLESS -- I JUST WANT TO MAKE

14  THE RECORD CLEAR THAT WE HAVE THE CONTINUING OBJECTION TO THE

15  EXHIBITS THAT YOU JUST WENT THROUGH AND WITH THE REDACTIONS.

16  IS IT 143 THROUGH -- SO WE HAVE A CONTINUING OBJECTION FROM

17  143, GOVERNMENT'S EXHIBITS 143 TO 153.

18       THE COURT:  ALL RIGHT.  SO NOTED.  IT MAY BE ALSO

19  THAT I WILL ADVISE THE JURY TOMORROW, AND I'M HAPPY TO HEAR

20  FROM YOU TOMORROW MORNING, I MAY ADVISE THE JURY WITH A

21  LIMITING INSTRUCTION AS TO HOW THEY SHOULD TREAT THIS EVIDENCE

22  FOR THE ISSUE OF WILLFULNESS.

23       MS. SISKIND:  AND IT MAY BE APPROPRIATE TO USE

24  SOMETHING SIMILAR TO THE LANGUAGE IN THE 404(B) INSTRUCTION

25  EVEN THOUGH THIS IS NOT BEING USED AS 404(B).

1          THE COURT:  AND THAT'S WHAT I THINK I'LL PATTERN A

2     LIMITING INSTRUCTION ON, BUT IF YOU WANT TO PREPARE SOMETHING

3     TOMORROW MORNING FOR ME TO LOOK AT IT, I'M HAPPY TO LOOK AT IT.

4          ALL RIGHT.  THANK YOU VERY MUCH FOR YOUR PATIENCE.

5          (COURT CONCLUDED AT 12:12 P.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         _____
           IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17

18             DATED:  SEPTEMBER 19, 2013
19

20

21

22

23

24

25