UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

UNITED STATES OF AMERICA,

       PLAINTIFF,           CASE NO.  CR-11-846-EJD

  VS.                 SAN JOSE, CALIFORNIA

ASHVIN DESAI,           SEPTEMBER 23, 2013

     DEFENDANT.       VOLUME 10

                    PAGES 1585 - 1664

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

A-P-P-E-A-R-A-N-C-E-S

FOR THE PLAINTIFF:   U.S. DEPARTMENT OF JUSTICE
                  BY:  MELISSA S. SISKIND
                     ROBERT KENNEDY
                  601 D STREET, NW, ROOM 7806
                  WASHINGTON, D.C. 20579

FOR THE DEFENDANT:   MARTIN A. SCHAINBAUM APLC
                  BY:  MARTIN A. SCHAINBAUM
                     ANDREW ALLEN
                  351 CALIFORNIA STREET, NO. 800
                  SAN FRANCISCO, CALIFORNIA 94104

   (APPEARANCES CONTINUED ON THE NEXT PAGE.)

OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, CRR
                            CERTIFICATE NUMBER 8074

   PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
TRANSCRIPT PRODUCED WITH COMPUTER.

```
 1        A P P E A R A N C E S:  (CONT'D)

 2

 3        FOR WITNESS X:                COLE, SCHOTZ, MEISEL, FORMAN &
                                        LEONARD
 4                                      BY:  MICHAEL W. WEINSTEIN
                                        25 MAIN STREET
 5                                      HACKENSACK, NEW JERSEY 07601

 6        FOR WITNESS GONDIPALLI:       LAW OFFICES OF MICHAEL STEPANIAN
                                        BY:  MICHAEL STEPANIAN
 7                                      819 EDDY STREET
                                        SAN FRANCISCO, CALIFORNIA 94109

 8
          ALSO PRESENT:                 U.S. TAX DIVISION
 9                                      BY:  SCHYLON L. LANE, PARALEGAL
                                        601 D STREET, NW
10                                      ROOM 7115
                                        WASHINGTON, D.C. 20004
11

12                                      LAFFER & GOTTLIEB
                                        BY:  MARTIN G. LAFFER, CPA
13                                      9454 WILSHIRE BOULEVARD
                                        SUITE 920
14                                      BEVERLY HILLS, CALIFORNIA 90212

15
                                        DEPARTMENT OF THE TREASURY
16                                      INTERNAL REVENUE SERVICE
                                        BY:  MICHAEL HELGESEN, AGENT
17                                      1200 FIRST STREET NORTHEAST
                                        SUITE 4200
18                                      WASHINGTON, D.C. 20002

19
                                        MARTIN A. SCHAINBAUM APLC
20                                      BY: TRAVIS THOMPSON, EXTERN
                                        351 CALIFORNIA STREET, NO. 800
21                                      SAN FRANCISCO, CALIFORNIA 94104

22

23

24

25
```

```
1       SAN JOSE, CALIFORNIA                    SEPTEMBER 23, 2013

2                        P R O C E E D I N G S

3          (JURY OUT AT 9:08 A.M.)

4              THE COURT:  LET'S GO ON THE RECORD IN THE DESAI

5       MATTER.  COUNSEL AND THE DEFENDANT ARE PRESENT.  THE JURY IS

6       NOT PRESENT.  WE'RE OUTSIDE OF THE PRESENCE OF THE JURY BEFORE

7       WE CALL THEM IN.

8          MR. SCHAINBAUM.

9              MR. SCHAINBAUM:  YEAH, JUST A HOUSEKEEPING MATTER.

10      AS YOU MAY RECALL MR. LAFFER NEEDS TO FLY TO SOUTHERN

11      CALIFORNIA FOR TESTIFYING TODAY.

12              THE COURT:  YES.

13              MR. SCHAINBAUM:  AND SO I THINK HE NEEDS TO GO

14      AROUND 11:30 IF THAT'S HELPFUL TO THE COURT.

15              THE COURT:  OKAY.  THAT'S FINE.  I THINK WE

16      DISCUSSED THIS FRIDAY LAST, YES.

17              MR. SCHAINBAUM:  OKAY.  THANK YOU, YOUR HONOR.

18              MR. LAFFER:  THANK YOU.

19              THE COURT:  ANYTHING ELSE BEFORE WE BRING IN OUR

20      JURY?

21              MS. SISKIND:  YES, YOUR HONOR.  I BELIEVE THE FIRST

22      WITNESS UP IS GOING TO BE RAVI GONDIPALLI, AND ON FRIDAY WE

23      LODGED AN OBJECTION TO HIS TESTIMONY AND PROVIDED THE COURT

24      WITH CASE LAW ON WHY HIS TESTIMONY SHOULD BE EXCLUDED.

25              WE SHOULD PROBABLY TAKE THIS UP BEFORE THE DEFENSE CALLS
```

1     HIM AS A WITNESS.

2              MR. SCHAINBAUM:  YOUR HONOR, JUST FOR EXPEDIENCY,

3     WE'RE NOT GOING TO CALL MR. RAVI FIRST.  WE'RE GOING TO CALL

4     MR. BANERJEE.

5              MS. SISKIND:  WE HAVE AN OBJECTION TO HIS TESTIMONY

6     AS WELL.

7              THE COURT:  ALL RIGHT.  WHO IS THE WITNESS YOU'RE

8     GOING TO CALL?

9              MR. SCHAINBAUM:  SOUGATA BANERJEE, B-A-N-E-R-J-E-E.

10    I MAY HAVE MISPRONOUNCED IT.  AND IF I DID, I ASK FOR

11    FORGIVENESS.

12             THE COURT:  AND, LET'S SEE, DOES IT SHOW UP ON THE

13    LIST I HAVE HERE?

14        I NEED TO GO RETRIEVE SOMETHING FROM MY DESK.

15        (PAUSE IN PROCEEDINGS.)

16             THE COURT:  ALL RIGHT.  THANK YOU.  WE'RE BACK ON

17    THE RECORD.  LET'S SEE, THE NEXT DEFENSE WITNESS IS SOUGATA

18    BANERJEE, B-A-N-E-R-J-E-E.

19             MS. SISKIND:  THE GOVERNMENT OBJECTS TO THIS

20    WITNESS'S TESTIMONY ON RELEVANCE GROUNDS.  MR. BANERJEE WAS A

21    CUSTOMER OF HSBC INDIA.  HE HAD AN NRI ACCOUNT, AND HE

22    INTERACTED WITH A BANKER NAMED SUKRANT GUPTA IN THE FREMONT

23    OFFICE IN CALIFORNIA.

24        IF ASKED, HE WILL TESTIFY HE'S NEVER HEARD THE NAME

25    VANDANA KATJU AND NEVER HEARD THE NAME AARTI KUMAR.  BASED ON

```
 1      THAT, THERE'S NO IMPEACHMENT VALUE OF HIS TESTIMONY BECAUSE

 2      UNLIKE THE WITNESS ON FRIDAY THAT THE COURT HEARD FROM WHO HAD

 3      BEEN IN THE ROOM WHERE VANDANA KATJU MAY HAVE MADE SOME

 4      STATEMENTS, THIS PARTICULAR WITNESS HAS NOTHING TO OFFER

 5      AGAINST EITHER OF THE GOVERNMENT'S TWO HSBC BANKER WITNESSES.

 6           AND ON THAT BASIS THE COURT HAS INDICATED THAT CERTAIN

 7      WITNESSES MAY BE ABLE TO TESTIFY FOR IMPEACHMENT WITNESSES, AND

 8      THIS WOULD NOT BE SUCH A CASE BECAUSE HE HAS NEVER HEARD OF THE

 9      GOVERNMENT TWO BANKER WITNESSES.

10           AND TO THE EXTENT THAT HE'S BEING OFFERED FOR SOME BROADER

11      SCHEME TYPE EVIDENCE, WE'RE STILL BACK TO THE PROBLEM THAT

12      THERE HAS NOT BEEN A NEXUS ESTABLISHED TO THE DEFENDANT.

13               THE COURT:  ALL RIGHT.  THANK YOU.  I'M LOOKING AT

14      IT MIGHT BE PAGE 2 OF THE DEFENDANT'S AMENDED WITNESS LIST ON

15      THE BOTTOM AT LINE 26.  I THINK ON THE BOTTOM YOU IDENTIFY THIS

16      WITNESS, MR. SCHAINBAUM, AND YOU DO INDICATE THAT THIS WITNESS

17      WAS MANAGED BY HSBC BANKER VANDANA KATJU.

18               MR. SCHAINBAUM:  NO.  WE INDICATED THAT HE HAD A

19      PERSONAL EXPERIENCE WITH HSBC REPRESENTATIVE OFFICE LOCATED AT

20      FREMONT, CALIFORNIA MANAGED BY HSBC BANKER VANDANA KATJU.

21      SHE --

22               THE COURT:  SO IT WAS NOT THAT HE WAS PERSONALLY

23      MANAGED, IT WAS THAT SHE MANAGED THE BANK?

24               MR. SCHAINBAUM:  RIGHT.

25               THE COURT:  I SEE.
```

1          MR. SCHAINBAUM:  BUT THE RELATIONSHIP MANAGER WHO

2    MANAGED HIM WAS UNDER HER SUPERVISION, AS SHE TESTIFIED SEVERAL

3    TIMES, AND HE WILL TESTIFY ABOUT BEING TOLD THAT THERE WAS NO

4    TAXPAYER CONSEQUENCES IN THE U.S.

5          AND I BELIEVE THAT BOTH AARTI KUMAR AND VANDANA KATJU SAID

6    ABSOLUTELY -- OR VANDANA KATJU SAID ABSOLUTELY NO STRATEGY, NO

7    SCHEME, AND AARTI KUMAR ALLUDED TO I DON'T KNOW REALLY WHAT

8    YOU'RE TALKING ABOUT.

9          SO THIS IS EVIDENCE TO CONTRADICT ALL OF THAT AND TO PUT

10   IT IN PERSPECTIVE, BECAUSE YOU NEED TO HAVE A CHAIN OF EVIDENCE

11   TO CONNECT UP TO SHOW WHAT IS GOING ON.

12         AND THE JURY IS ENTITLED TO KNOW THIS KIND OF EVIDENCE,

13   BECAUSE, AGAIN, IN CHEEK THE COURT, THE SUPREME COURT, SAID

14   THAT ANYTHING THAT TENDS TO NEGATE WILLFULNESS THE JURY SHOULD

15   HAVE BEFORE IT.

16             THE COURT:  AND ADMISSIBLE EVIDENCE THE JURY SHOULD

17   HAVE --

18             MR. SCHAINBAUM:  OF COURSE ADMISSIBLE EVIDENCE.  HE

19   HAS PERSONAL KNOWLEDGE, AND IT'S RELEVANT ON WHETHER OR NOT

20   THERE'S A SCHEME OR STRATEGY.

21             THE COURT:  SO, MR. SCHAINBAUM, WILL THIS WITNESS

22   TESTIFY THAT EITHER VANDANA KATJU OR AARTI KUMAR MADE THE

23   REPRESENTATION TO HIM REGARDING THE TAXPAYER CONSEQUENCES?

24             MR. SCHAINBAUM:  NO.  HE WILL TESTIFY THAT

25   SUKRANT GUPTA, WHO VANDANA KATJU TESTIFIED NUMEROUS TIMES WAS

1    ONE OF HER UNDERLINGS, OR PEOPLE THAT SHE SUPERVISED.  SO IF

2    YOU WANT TO LOOK AT IT IN A STRICT LEGAL SENSE, HE WAS AN AGENT

3    OF VANDANA KATJU WHO MANAGED THE OFFICE WHO SAID WHAT HE SAID,

4    WHICH THE WITNESS IS GOING TO TESTIFY TO.

5              THE COURT:  THIS WITNESS WILL TESTIFY THAT ANOTHER

6    HSBC BANK EMPLOYEE FROM FREMONT --

7              MR. SCHAINBAUM:  CORRECT.

8              THE COURT:  -- TOLD HIM SOMETHING ABOUT THE TAXPAYER

9    CONSEQUENCE AND THE TREATY?

10             MR. SCHAINBAUM:  CORRECT.

11             THE COURT:  AND THERE'S GOING TO BE A HEARSAY

12   OBJECTION TO THAT?

13             MR. SCHAINBAUM:  IT'S NOT OFFERED FOR THE TRUTH OF

14   THE MATTER ASSERTED, EXCEPT THAT THE STATEMENT WAS MADE AND

15   THAT IT CONTRADICTS THE STATEMENTS MADE BY VANDANA KATJU AND

16   AARTI KUMAR.

17             THE COURT:  WELL, IF IT'S FOR THE LATTER, YOU ARE

18   ASKING THAT IT BE ADMITTED FOR THE TRUTH OF THE MATTER

19   ASSERTED?

20             MR. SCHAINBAUM:  NO.  JUST THAT THE TRUTH OF THE

21   STATEMENT WAS MADE BECAUSE IT'S UP TO THE JURY TO DETERMINE

22   FROM DIRECT AND CIRCUMSTANTIAL EVIDENCE.

23             THE COURT:  AND HOW IS THIS -- I'M MISSING SOMETHING

24   HERE SO HELP ME OUT MONDAY MORNING.  I'M NOT SURE I SEE HOW

25   THIS IS GOING TO BE ADMISSIBLE.

1         WHAT IS THE RELEVANCE OF THIS?

2              MR. SCHAINBAUM:  THE RELEVANCE IS THAT IT SHOWS THAT

3    THERE WAS A STRATEGY AND THAT THIS PARTICULAR PERSON WAS LED

4    INTO MAKING THE DEPOSIT.  AND BASED UPON THE STATEMENTS MADE

5    SUBSEQUENTLY, HE WAS ABLE TO GO INTO THE OVDI PROGRAM AND PAY

6    HIS BACK TAXES AND WE WILL POINT OUT THAT -- AND OVDI IS NOW AN

7    ISSUE BECAUSE OF WHAT THE GOVERNMENT DID WITH THE CONDUCT OF

8    TWO OF THEIR PRINCIPAL WITNESSES.  THEY GAVE HIM A SWEETHEART

9    DEAL.

10        SO I THINK THE JURY IS ENTITLED TO KNOW AS MUCH ABOUT OVDI

11   PROGRAM AS WELL AS WHETHER OR NOT A STRATEGY EXISTED BECAUSE IF

12   YOU DON'T ALLOW EVIDENCE ON THE STRATEGY, IT APPEARS THAT IT'S

13   ONLY UNILATERAL, THE STATEMENTS OF THE WITNESS OF VANDANA KATJU

14   AND AARTI KUMAR THAT THERE'S NO SUCH THING EXISTED OR OCCURRED.

15   AND THAT WOULD BE UNFAIR BASED UPON, YOU KNOW, ABOUT THE

16   PROFFER AGREEMENT THAT MR. DESAI MADE THOSE STATEMENTS.

17              THE COURT:  BUT THAT'S NOT IN EVIDENCE.

18              MR. SCHAINBAUM:  I'M JUST TRYING TO DRAW SEVERAL --

19              THE COURT:  I'M JUST CURIOUS IF THIS IS PREMATURE

20   WITHOUT A FOUNDATION.

21              MR. SCHAINBAUM:  WELL, HOW DO YOU GET A FOUNDATION

22   WITHOUT LAYING IT IN?  WE DO HAVE A FOUNDATION BECAUSE OF

23   AARTI KUMAR AND VANDANA KATJU TESTIFYING TO THE NEGATIVE, THIS

24   GUY IS GOING TO TESTIFY TO THE POSITIVE.

25              THE COURT:  WELL, THEY SAID THERE WAS NO PROGRAM.

```
1     THIS WITNESS IS OFFERED TO IMPEACH VANDANA KATJU AND GIVEN THAT

2     SOMEBODY TOLD HIM ABOUT A SCHEME OR IS IT HIS DEFINITION OF A

3     SCHEME?

4               MR. SCHAINBAUM:  NO.  IT'S OFFERED TO IMPEACH HOW

5     THE REPRESENTATIVE OFFICE OPERATED UNDER THE MANAGEMENT OF

6     VANDANA KATJU.  SHE ABSOLUTELY -- SHE USED THE WORD

7     "ABSOLUTELY."  SHE SAID NO SUCH THING.  AND SO WE'RE ENTITLED

8     TO COUNTER WHAT SHE SAID AND PUT BEFORE THE JURY THE BIG

9     PICTURE.

10              THE COURT:  AND IT COMES IN TO IMPEACH HER SAYING

11    ABSOLUTELY NOT.  IS THAT WHAT YOU'RE SAYING?

12              MR. SCHAINBAUM:  YEAH.

13              THE COURT:  AND IS THERE AN ISSUE OF KNOWLEDGE?

14    DOES SHE HAVE TO -- BECAUSE SHE WASN'T AWARE OF ANYTHING, AND

15    THIS WITNESS COMES IN AND SAYS THAT THERE WAS SOMETHING, IS

16    THAT REALLY IMPEACHMENT?

17              MR. SCHAINBAUM:  YES, BECAUSE SHE'S THE MANAGER OF

18    THE OPERATIONS AND SHE SAID TIME AND AGAIN THAT SUKRANT GUPTA

19    WAS UNDER HER LEADERSHIP OR MANAGEMENT.

20       AND SHE SAID -- SHE ALSO SAID THAT SHE DIDN'T GO ANYWHERE

21    AND DIDN'T KNOW OF ANYBODY GOING TO ANY OFFICE, WHATEVER.

22       AND THE JURY NOW KNOWS THAT AT LEAST IN ONE INSTANCE THAT

23    THEY DID MAKE THIS STRATEGY OR SCHEME PITCH.  AND HERE'S

24    ANOTHER INSTANCE.  BECAUSE THERE'S A WHOLE -- I MEAN, THAT WAS

25    THE WHOLE STRATEGY TO ENTICE WHAT I CALL "VICTIMS" INTO PUTTING
```

1     U.S. DOLLARS INTO INDIA AS DEPOSITS.

2          AND IT HAS A BEARING ON WILLFULNESS, BECAUSE IF YOU

3     BELIEVE THAT'S A GOOD THING AND IT'S OKAY AND THERE'S NO

4     TAXPAYER CONSEQUENCES, AND THE JURY BELIEVES THAT KIND OF

5     EVIDENCE THAT THERE WAS GOOD FAITH BELIEF, ALTHOUGH MAYBE

6     ERRONEOUS, IT DIRECTLY BEARS ON WILLFULNESS.  I'M NOT TRYING TO

7     HIT A HOME RUN WITH THIS WITNESS.  I'M JUST TRYING TO GET A

8     SIMPLE FACT INTO THE RECORD HERE.

9          MS. SISKIND:  WELL, I THINK, YOUR HONOR, THERE'S A

10    BIG DISTINCTION BETWEEN THIS WITNESS AND THE WITNESS THE COURT

11    HEARD AT THE END OF THE DAY ON FRIDAY.  AND THE GOVERNMENT DID

12    NOT OBJECT TO THAT WITNESS BECAUSE HE WAS PRESENT WHEN

13    VANDANA KATJU WAS PRESENT AND TALKED ABOUT AND GAVE SOME ADVICE

14    TO HIS FATHER ABOUT TAXES.  THAT DIRECTLY RELATES TO

15    VANDANA KATJU.

16         THIS IS MUCH MORE ATTENUATED.  SHE TESTIFIED, I THINK, ON

17    CROSS-EXAMINATION, THAT, YES, SHE MANAGED SUKRANT GUPTA, AND,

18    YES, SHE WORKED WITH OTHER BANKERS, BUT I THINK AT ONE POINT

19    SHE SAID SHE WASN'T AWARE OF EVERY CONVERSATION OR EVERY ACTION

20    TAKEN BY EVERY ONE OF THESE INDIVIDUALS.

21         AND TO ATTRIBUTE IT TO HER, THERE'S NOT THE CONNECTION

22    THERE.  IN TERMS OF THIS OTHER SCHEME EVIDENCE, THE COURT HAS

23    ALREADY NOTED THERE NEEDS TO BE A FOUNDATION.

24         WHAT IS THE RELEVANCE OF THIS CUSTOMER LEARNING CERTAIN

25    ADVICE IF THERE'S NO EVIDENCE THAT THE DEFENDANT RECEIVED THAT

```
 1    SAME ADVICE OR KNEW THIS CUSTOMER RECEIVED THAT ADVICE?

 2    THERE'S JUST A LINK MISSING TO CONNECT HIS TESTIMONY TO ANY

 3    FACT THAT IS AT ISSUE IN THIS CASE.

 4         THE EXISTENCE OF A SCHEME MAY GO TO WILLFULNESS IF THE

 5    DEFENDANT WAS SOMEHOW AFFECTED BY IT, BUT THAT'S THE CRUCIAL

 6    PIECE OF FOUNDATIONAL EVIDENCE THAT WE'RE MISSING THAT NEEDS TO

 7    BE PRESENT BEFORE THE COURT SHOULD PERMIT ANY KIND OF BROADER

 8    EVIDENCE ABOUT A SCHEME TO BE PRESENTED TO THE JURY.

 9              THE COURT:  THIS WAS MY SUGGESTION ABOUT WHETHER OR

10    NOT THIS IS PREMATURE.

11              MR. SCHAINBAUM:  HOW CAN IT BE PREMATURE BECAUSE

12    EVERYTHING CAN BE PREMATURE?

13              THE COURT:  WELL, I'LL ANSWER YOUR QUESTION, IT'S

14    PREMATURE BECAUSE EVERYBODY ELSE CAN TALK ABOUT A SCHEME AND

15    THEIR OPINION OF A SCHEME THAT EXISTED.

16         AND MAYBE THE EVIDENCE WILL REST ON FIVE OR SIX WITNESSES

17    SAYING I THINK THERE WAS A SCHEME AND THAT'S IT, BUT THERE'S NO

18    EVIDENCE THAT YOUR CLIENT WAS A VICTIM OF THAT SCHEME UNLESS

19    THERE IS EVIDENCE THAT YOUR CLIENT WAS A VICTIM OF THAT SCHEME.

20              MR. SCHAINBAUM:  WELL, LET ME JUST PUT IT THIS WAY,

21    THEY PUT THE OPERATING GUIDELINES IN.  THE CIRCUMSTANTIAL

22    EVIDENCE IN THIS CASE IS IF THE SCHEME SAID TARGET VICTIMS LIKE

23    HIGH NET WORTH PEOPLE, PREMIER PEOPLE LIKE MR. DESAI, AND THEY

24    WENT AROUND AND THAT'S WHAT THEY DID, AND THAT'S HOW --

25              THE COURT:  THEY DID TO OTHER PEOPLE?
```

1           MR. SCHAINBAUM:  RIGHT.

2           THE COURT:  BUT IF THERE'S NO EVIDENCE THAT THEY DID

3    THAT TO YOUR CLIENT, THEN WHAT IS THE RELEVANCE?

4           MR. SCHAINBAUM:  WELL, IT'S JUST LIKE IF YOU WAKE UP

5    IN THE MORNING AND YOU LOOK AT THE GROUND AND IT IS WET AND YOU

6    THINK, OH, LIKE IT DID SATURDAY.

7           THE COURT:  BUT THAT'S GENERAL.  WE CAN ASSUME IT

8    RAINS COUNTYWIDE, CITYWIDE, BUT WE'RE TALKING SPECIFIC AS TO

9    DID IT RAIN ON YOUR CLIENT'S HOUSE?

10          MR. SCHAINBAUM:  YEAH, RIGHT.  AND DID IT RAIN ON --

11   FROM THE BRANCH?

12      AND WHAT YOU HAVE TO HAVE HERE IS -- THIS IS A CLASSIC

13   CASE OF CIRCUMSTANTIAL EVIDENCE.  I MEAN --

14          THE COURT:  SO I GUESS FROM YOUR PERSPECTIVE, AND

15   I'M NOT TRYING TO GET INTO THE DEFENSE CASE YET, I'M NOT TRYING

16   TO MANIPULATE THAT AT ALL OR TELL YOU HOW TO PUT IT ON OR WHEN,

17   BUT I'M JUST, AS WE SAID, I THINK, LAST PERHAPS THURSDAY OR

18   FRIDAY, UNLESS THERE'S A NEXUS OR A CONNECTION OF THIS CONDUCT

19   WITH YOUR CLIENT, IF THIS EVIDENCE COMES IN, IT MAY BE THAT

20   ABSENT THE NEXUS, THE COURT WOULD STRIKE ALL OF THIS EVIDENCE.

21      I DON'T THINK THAT YOU CAN JUST PUT IN THIS EVIDENCE BUT

22   THEN HAVE NO CONNECTION TO YOUR CLIENT AND THEN SOMEHOW ARGUE

23   TO THE JURY THAT MY CLIENT IS A VICTIM BECAUSE AFTER ALL,

24   EVERYBODY ELSE WAS.

25          MR. SCHAINBAUM:  WELL, IF THE CIRCUMSTANTIAL

1        EVIDENCE SUPPORTS THAT ONE OF THE FACTORS, THE FOUNDATION OF

2        THE SCHEME WAS TO TARGET A CERTAIN GROUP, A CERTAIN CLASS,

3        PREMIER HIGH NET WORTH PEOPLE, THAT'S ENOUGH UNDER

4        CIRCUMSTANTIAL EVIDENCE FOR THE JURY TO SAY, YES, HE WAS WITHIN

5        THAT CLASS OR THAT GROUP OF VICTIMS OR, NO, WE DON'T UNDERSTAND

6        IT.

7            BUT WHAT YOU'RE ASKING FOR, AND MAYBE I'M MISHEARING YOU,

8        IS THAT YOU WANT SOME DIRECT EVIDENCE OF, YOU KNOW, THIS

9        PARTICULAR STRATEGY BEING PARTICULARLY WORKED ON MR. DESAI.

10       WELL, HE DID UTTER THAT COMMENT IN WASHINGTON, BUT PUT THAT

11       ASIDE.

12           I BELIEVE UNDER THE CASES THAT I HAVE READ AND UNDER WHAT

13       I CONSIDER CLASSIC CIRCUMSTANTIAL EVIDENCE, YOU CAN PUT ON THIS

14       KIND OF EVIDENCE PIECE BY PIECE.  AND IT'S UP FOR THE JURY TO

15       GIVE IT WHATEVER WEIGHT IT WANTS, NO WEIGHT, OR 100 PERCENT

16       WEIGHT, OR ANYTHING IN BETWEEN, BUT TO DEPRIVE AND PUT NOTHING

17       ON MEANS THAT THE TRIAL IS TILTED AWAY FROM REALLY BEING FAIR

18       TO UNDERSTAND WHAT REALLY HAPPENED HERE.

19               THE COURT:  SO I APPRECIATE WHAT YOU'RE SAYING, SIR,

20       BUT THE RULES OF EVIDENCE DON'T TILT TO ONE SIDE OR THE OTHER.

21       IT'S JUST THE RULES.

22               MR. SCHAINBAUM:  CORRECT.  AND THE RULES ARE -- AND

23       I UNDERSTAND THE PROBLEM HERE IS THAT YOU'RE LOOKING AT THIS

24       WITH SOME KIND OF DIRECT EVIDENCE.

25           AND I'M LOOKING AT IT FROM CIRCUMSTANTIAL EVIDENCE, WHICH

1      IS A GREAT COMPONENT WHEN IT WORKS FOR THE GOVERNMENT, AND A

2      GREAT COMPONENT IN TAXPAYER CASES OF ANY KIND BECAUSE IT IS

3      DIFFICULT AT TIMES TO HAVE DIRECT EVIDENCE.

4           WE HAVE THE CLOSEST THING TO DIRECT EVIDENCE IS THE

5      PARAMETERS, THE CONDITIONS, THE TERMS OF THE SCHEME OR THE

6      STRATEGY.  AND WHAT THE COURT IS LOOKING FOR IS SOME DIRECT

7      EVIDENCE THAT I SAY IS SUFFICIENT BY THE CIRCUMSTANTIAL

8      EVIDENCE THAT MR. DESAI IS WITHIN THE CLASS OF VICTIMS OF WHAT

9      THEY TARGETED PREMIER --

10          THE COURT:  SO YOU WANT TO PUT MR. BANERJEE ON THE

11     STAND, AND HE WILL TESTIFY THAT SOMEONE AT THE BANK, THIS

12     REPRESENTATIVE BANK, MADE THE STATEMENT TO HIM THAT HE COULD --

13     HE DIDN'T HAVE TO WORRY ABOUT PAYING TAXES?

14          MR. SCHAINBAUM:  CORRECT.  AND IT'S NOT SOMEONE OF

15     THE BANK.  IT'S AN AGENT OF VANDANA KATJU.

16          THE COURT:  THIS GENTLEMAN WHO WORKS AT THE BANK AND

17     MS. KATJU IS HIS SUPERVISOR?

18          MR. SCHAINBAUM:  OR HIS BOSS.

19          THE COURT:  WHATEVER.

20          MR. SCHAINBAUM:  WHATEVER.

21          THE COURT:  IS HE GOING TO SAY THAT VANDANA KATJU

22     TOLD ME TO TELL HIM THIS?

23          MR. SCHAINBAUM:  NO.

24          THE COURT:  IS HE GOING TO CONNECT VANDANA KATJU IN

25     ANY DIRECT WAY WITH HIS COMMENT TO --

1            MR. SCHAINBAUM:  HE'S GOING TO DIRECT VANDANA KATJU

2    IN AN INDIRECT WAY BY HAVING BEEN TOLD BY SUKRANT GUPTA WHAT

3    THE BENEFITS WERE OF PUTTING THE MONEY THROUGH THE

4    REPRESENTATIVE BANK.  AND YOU HAVE TO THEN UNDERSTAND UNDER THE

5    AGENCY THEORY SHE MANAGES AND CONTROLS THE BANK.  SHE

6    TESTIFIED --

7            THE COURT:  I THINK YOU'RE GOING A LITTLE TOO FAR.

8    I THINK YOU'RE ASKING FOR A LITTLE TOO MUCH.

9        SHE HAS TESTIFIED, NO, I DIDN'T KNOW ANYTHING ABOUT THIS.

10   WE HAVE EVIDENCE NOW THAT SHE WAS PRESENT AT A MEETING IN

11   SOUTHERN CALIFORNIA, TUSCAN I BELIEVE IT WAS, OR SOMEBODY ELSE

12   MADE THE PITCH AND SHE WAS PRESENT.

13           MR. SCHAINBAUM:  WELL, I THINK THE WITNESS SAID THAT

14   HE DIDN'T KNOW EXACTLY WHO MADE THE PITCH BUT SHE WAS PRESENT.

15           THE COURT:  HE DIDN'T SAY SHE MADE IT.

16           MR. SCHAINBAUM:  HE DIDN'T SAY SHE DIDN'T MAKE IT.

17   HE DIDN'T KNOW.

18           THE COURT:  IF YOU WANT TO GO WITH YOUR INFERENCE,

19   THE INFERENCE IS PRETTY CLEAR THAT SHE DIDN'T BUT THAT'S FOR

20   THE JURY TO DECIDE.

21           MR. SCHAINBAUM:  YEAH, CORRECT.  I GO WITH THAT.

22           THE COURT:  SO SHE DIDN'T -- THERE'S NO EVIDENCE

23   THAT SHE MADE A DIRECT PITCH TO THAT WITNESS, AND NOW YOU WANT

24   TO PUT THIS WITNESS ON TO TESTIFY THAT A PITCH WAS MADE TO HIM

25   BY SOMEONE OTHER THAN VANDANA KATJU WHEN SHE WASN'T PRESENT IN

```
 1        THE COURTROOM.

 2            IS THAT WHAT YOU WANT TO DO?

 3                MR. SCHAINBAUM:  I WANT TO PUT ON EVIDENCE THAT THIS

 4    WITNESS, ONE, MADE A DEPOSIT AFTER HEARING A PITCH FROM

 5    SUKRANT GUPTA WHO DIRECTLY REPORTED TO VANDANA KATJU; TWO, THAT

 6    AFTER A WHILE HE THEN WENT INTO THE OVDI PROGRAM AND THAT

 7    RESOLVED THE MATTER.

 8        SO THERE'S TWO DIFFERENT POINTS THAT I WANT TO PUT HIM ON

 9    FOR.

10                THE COURT:  OKAY.  MS. SISKIND.

11                MS. SISKIND:  NOTHING FURTHER, YOUR HONOR.

12                THE COURT:  YOU KNOW, MR. SCHAINBAUM, I THINK IT'S

13    PREMATURE TO PUT THIS ON WITHOUT A FURTHER FOUNDATION.  SO I'M

14    GOING TO SUSTAIN AN OBJECTION AS TO THIS WITNESS PRESENTLY AT

15    THIS TIME.  I DON'T SEE THAT FOUNDATIONAL CONNECTION YET.  I

16    AGREE YOU WOULD BE ABLE TO PUT EVIDENCE ON OF A CIRCUMSTANTIAL

17    NATURE, BUT I THINK IT'S TOO ATTENUATED OF THE TESTIMONY OF

18    VANDANA KATJU.

19                MR. SCHAINBAUM:  MY POINT GOES BACK TO THAT IT'S

20    CIRCUMSTANTIAL EVIDENCE, AND WE SHOULD BE ALLOWED TO PUT HIM ON

21    FOR WHATEVER WEIGHT IT IS WORTH SO THE JURY CAN HAVE IT EITHER

22    TO ACCEPT IT OR REJECT IT.

23        AND IT'S A CLEAR FACT THAT SUKRANT GUPTA WORKED FOR

24    VANDANA KATJU.  AND SO UNDER ANY AGENCY THEORY SHE WAS THE

25    PRINCIPAL AND THE PRINCIPAL CAN BE PRESUMED TO HAVE KNOWLEDGE,
```

1601

1    WHICH SHE DENIED, WHICH IS ANOTHER REASON WHY THIS WITNESS IS

2    IMPORTANT TO TESTIFY THAT HE, BASED UPON THE STATEMENTS MADE TO

3    SUKRANT GUPTA, WORKED FOR VANDANA KATJU AND THERE WAS A SALES

4    PITCH.

5        SO IF YOU DON'T LET THIS EVIDENCE IN, IN THIS KIND OF A

6    CASE, YOU ARE REALLY PRECLUDING EVIDENCE THAT WOULD GO TO

7    WILLFULNESS AND LACK OF WILLFULNESS TO NEGATE.  AND

8    SUKRANT GUPTA ALSO REPRESENTED IN HIS OWN CAPACITY WHETHER HIS

9    BOSS WAS VANDANA KATJU OR NOT, HSBC'S BANK, AS ONE OF THE

10   BANKERS.

11       SO THERE IS, UNDER WHAT, 801(D)(2) STATEMENTS OF AN AGENT.

12   I THINK YOU NEED TO LET THIS EVIDENCE IN FOR WHATEVER IT IS

13   WORTH BECAUSE IT'S NOT MUCH EVIDENCE BUT IT'S SOME EVIDENCE FOR

14   THE JURY TO CONSIDER.

15       AND THEN IF YOU BELIEVE THAT AFTER YOU LISTEN TO ALL OF

16   THE OTHER EVIDENCE THAT IT DOES NOT MEET YOUR STANDARD OF WHAT

17   I SAY IS CIRCUMSTANTIAL EVIDENCE HERE, THEN YOU CAN STRIKE IT

18   AND TELL THE JURY TO DISREGARD IT.

19           THE COURT:  THANK YOU.  AND THEN THE SECOND PART OF

20   IT IS THE OVDI TESTIMONY?

21           MR. SCHAINBAUM:  CORRECT.

22           THE COURT:  AND THEN I THINK WE MOVE OFF TRAIL A

23   LITTLE BIT.  I'M NOT SURE WHY THAT IS RELEVANT.  WHAT HAPPENED

24   TO THIS PARTICULAR WITNESS?

25           MS. SISKIND:  WELL, HE TESTIFIED THAT AS A RESULT OF

```
 1    WHAT HAPPENED HE WAS ALLOWED TO ENTER INTO THE OVDI PROGRAM AND

 2    COMPLETED IT AND HE FINISHED.  AND ALSO THE GOVERNMENT HAS

 3    GRANTED TWO OF THEIR WITNESSES OVDI STATUS AFTER THE

 4    NONPROSECUTION AGREEMENT, WHICH IS AN INTERESTING SET OF

 5    CIRCUMSTANCES.

 6         SO THE JURY CAN UNDERSTAND HERE IT GOES TOWARDS BIAS, IT

 7    GOES TOWARDS PREJUDICE, AND IT GOES TOWARDS TELLING THAT

 8    CERTAIN AUGURS, BRADY, EXCULPATORY, FAVORITISM OF THE CERTAIN

 9    GROUP VERSUS MR. DESAI.

10         THEY CAN ARGUE, WELL, WE HAVE THE AUTHORITY TO NOT LET

11    ANYONE IN THAT WE DON'T WANT.

12              THE COURT:  THEN WE GET INTO HIS CASE AND WHY WAS

13    HIS CASE -- WHY WAS THAT OTHER WITNESS AFFORDED THAT

14    OPPORTUNITY?  I THINK WE START MOVING ON A TANGENT THAT IS

15    COLLATERAL I THINK.

16              MR. SCHAINBAUM:  IT'S NOT HIS CASE.  THE GOVERNMENT

17    PUT IN ON DIRECT BEFORE I EVEN GOT TO CROSS-EXAMINE THAT THEY

18    HAD A NONPROSECUTION AGREEMENT, AND THEN SUBSEQUENT TO THE

19    NONPROSECUTION AGREEMENT THEY ENTERED AMENDED THEIR RETURNS AND

20    ENTERED INTO OVDI AND IT SHOWS A CERTAIN AMOUNT OF FAVORITISM

21    AND SWEETHEART DEAL, ALL THAT AUGERS EVER TALKED IN THE SUPREME

22    COURT.

23         SO YOU'RE ENTITLED TO SHOW THAT A GROUP OF PEOPLE WHO WERE

24    SIMILARLY SITUATED TO THIS DEFENDANT ENTERED INTO THE PROGRAM

25    AND COMPLETED IT, BUT THIS DEFENDANT HAS BEEN KIND OF SINGLED
```

1    OUT FOR THE PROSECUTION.  THE JURY CAN DO WHAT THEY WANT WITH

2    IT.  IT'S BIASSED.  IT'S PREJUDICED.  IT'S FAVORITISM.  IT'S

3    ALL OF THOSE.

4         AND IF WE DON'T HAVE THAT IN THERE, THEN WE HAVE ANOTHER

5    FACTOR OR NEXUS WIPED OUT BECAUSE IN ALL OF THE YEARS I HAVE

6    NEVER HEARD WHEN THE GOVERNMENT DOES THINGS LIKE THEY HAVE DONE

7    HERE, WHEN THEY DO FAVORITISM TO CERTAIN WITNESSES AND THEY

8    BRING IT OUT, YOU HAVE WIDE LATITUDE TO GET EVIDENCE IN AS TO

9    THE PARAMETERS OF THE CONTEXT OF THAT PARTICULAR DEAL.

10        AND THAT'S WHAT IT IS HERE, IT'S A DEAL.  THEY MADE A

11   DEAL, AND IT'S FAVORITISM, AND THEY HAVE GONE AFTER MR. DESAI

12   AND THERE'S OTHER EVIDENCE.  YOU SEE, THERE'S TWO KINDS OF

13   EVIDENCE:  EVIDENCE OF A DEAL, AGREEMENT, FAVORITISM; AND THEN

14   THERE'S EVIDENCE OF A CLASS OF VICTIMS THAT WERE TARGETED.  I

15   MEAN, THERE'S ENOUGH CIRCUMSTANTIAL EVIDENCE TO SHOW THAT HE

16   WAS TARGETED.

17        EVEN THE I.R.S. AT THE BEGINNING WENT AFTER JOHN DOE

18   SUMMONS AND THEY PUT INTO THE RECORD A JOHN DOE SUMMONS

19   DECLARATION OF MR. REEVES THAT WE'LL HAVE TO TAKE UP AT A

20   SUBSEQUENT TIME.

21        BUT TO PRECLUDE ALL OF THIS EVIDENCE IS TO REALLY DENY THE

22   DEFENDANT ANY EVIDENCE OF LACK OF WILLLFULNESS.

23             THE COURT:  WELL, YOU KNOW, I DISAGREE WITH YOU

24   THERE.  THERE IS OTHER EVIDENCE AVAILABLE TO DO THAT.

25             MR. SCHAINBAUM:  WELL, MAYBE THERE IS.

```
 1                    THE COURT:  IT SOUNDS LIKE YOU'RE NOW ARGUING FOR A

 2     SELECTIVE PROSECUTION.

 3                    MR. SCHAINBAUM:  NO, I'M NOT.

 4                    THE COURT:  IT SURE SOUNDED LIKE IT.

 5                    MR. SCHAINBAUM:  YEAH, IT'S CLOSE, BUT AS THEY SAY

 6     "CLOSE BUT NO CIGAR AT THE MOMENT."  OKAY.  I'M NOT ARGUING

 7     THAT AT THE MOMENT, BUT I AM ARGUING EXTREME BIAS AND PREJUDICE

 8     AND FAVORITISM AND THE JURY SHOULD KNOW THAT.

 9                    THE COURT:  MS. SISKIND.

10                    MS. SISKIND:  FIRST, YOUR HONOR, THE WITNESS'S

11     ENTRY, MS. KATJU'S AND MS. KUMAR'S ENTRY INTO THAT PROGRAM WAS

12     NOT PART OF THEIR NONPROSECUTION AGREEMENT.  THEY BOTH

13     CLARIFIED THAT.  IT WAS SOMETHING THAT THEY APPLIED FOR

14     SEPARATELY AFTER ENTERING INTO THE NONPROSECUTION AGREEMENT.

15          AND THERE'S BEEN NO TESTIMONY OR NO EVIDENCE THAT THIS

16     DEFENDANT EVEN APPLIED OR ATTEMPTED TO ENTER THE PROGRAM OR WAS

17     DENIED ADMISSION.

18          SO TO SAY THAT THEIR ENTRY INTO THE PROGRAM EXPRESSES

19     DISPARATE TREATMENT OR FAVORITISM, THERE'S BEEN NO EVIDENCE

20     THAT MR. DESAI EVEN TRIED TO GET INTO THE PROGRAM, WHICH

21     EXISTED LONG BEFORE HE WAS INDICTED.

22                    MR. SCHAINBAUM:  WELL, YOU KNOW, IN THE REAL WORLD

23     IT'S KIND OF LUDICROUS WHAT MS. SISKIND JUST SAID.  I MEAN, THE

24     TIME EVENT, THE SEQUENCE IS SUCH THAT APRIL OF 2013, WHEN

25     MS. SISKIND IN AUGUST OF 2012 HAD THIS WITNESS, AND DIDN'T EVEN
```

```
 1    GET IT CLOSE BY NOT ASKING THE RIGHT QUESTIONS TO WHEN THEY

 2    GAVE THEM NONPROSECUTION AGREEMENTS.

 3        AND UNDER ALL OF THE RULES, WHEN YOU HAVE THAT KIND OF

 4    CONTACT, THE I.R.S. DOES NOT PERMIT YOU TO GO INTO OVDI.  THEY

 5    WENT INTO OVDI AND THEY'RE IN IT, AND IT SHOWS THAT THERE'S A

 6    CERTAIN AMOUNT OF WHAT YOU WOULD CALL A WINK OR THE DEAL OR

 7    WHATEVER.

 8        AND I THINK THE JURY IS ENTITLED TO UNDERSTAND THE REAL

 9    WORLD HERE.  AND IT GOES TO THE BIG PICTURE OF WHAT HAPPENED.

10    I MEAN --

11            THE COURT:  DO YOU HAVE ANOTHER WITNESS READY TO GO

12    THIS MORNING OTHER THAN MR. BANERJEE?

13            MR. SCHAINBAUM:  I BELIEVE SO.

14            THE COURT:  WHO WOULD THAT BE?  LET'S TALK ABOUT

15    THAT WITNESS FOR A MOMENT.

16            MR. SCHAINBAUM:  THAT'S RAVI GONDIPALLI WHO WAS THE

17    TAXPAYER PREPARER FOR VANDANA KATJU.

18            MS. SISKIND:  AND THAT'S THE WITNESS THAT WE

19    PROVIDED THE CASE ON FRIDAY AS A BASIS FOR OUR OBJECTION TO HIS

20    TESTIMONY.

21            THE COURT:  AND WHAT IS THE BASIS?  WHAT WILL THIS

22    WITNESS TESTIFY TO?

23            MR. SCHAINBAUM:  VANDANA KATJU SAID THAT HER C.P.A.

24    NEVER ASKED HER ABOUT FBARS OR FOREIGN BANK ACCOUNTS.  THIS

25    WITNESS WILL TESTIFY TO THE CONTRARY AND THAT VANDANA KATJU DID
```

1    MAKE A STATEMENT TO HIM, AS I UNDERSTAND, BECAUSE WE GOT A

2    LETTER FROM MS. SISKIND AFTER THEY INTERVIEWED THIS WITNESS

3    SAYING THAT HE, THE TAXPAYER PREPARER, ASKED HER A QUESTION,

4    AND SHE SAID, OH, I DID HAVE FOREIGN BANK ACCOUNTS BUT I CLOSED

5    THEM.  SHE SAID, YES, I HAD FOREIGN BANK ACCOUNTS, BUT I CLOSED

6    THEM.  SO IT'S NOT NECESSARY TO FILE FBARS.

7        SO THAT GOES TO HER STATEMENT THAT HER C.P.A. NEVER ASKED

8    HER ABOUT FOREIGN BANK ACCOUNTS OR FBARS.

9            MS. SISKIND:  FIRST, YOUR HONOR, SHE SAID SHE

10   DOESN'T RECALL WHETHER SHE WAS EVER ASKED BECAUSE I ASKED HER

11   THAT QUESTION ON DIRECT, AND I THINK IT WAS ASKED AGAIN ON

12   CROSS.

13       AND BOTH TIMES SHE DID NOT CATEGORICALLY DENY EVER HAVING

14   A CONVERSATION WITH HER RETURN PREPARER.  SHE SAID SHE DOESN'T

15   REMEMBER WHETHER HER RETURN PREPARER EVER ASKED HER ABOUT IT.

16   SO IT IS A SIGNIFICANT DIFFERENCE.

17       BUT THE BASIS FOR OUR OBJECTION IS THAT THIS IS

18   IMPEACHMENT BY EXTRINSIC EVIDENCE ON A COLLATERAL MATTER.

19       AND THE HIGA CASE, WHICH WE HANDED TO COURT AND COUNSEL ON

20   FRIDAY, H-I-G-A, ADDRESSES WHAT DOES IT MEAN FOR A MATTER TO BE

21   COLLATERAL?  IT'S A NINTH CIRCUIT CASE, AND IT PROVIDES A

22   DEFINITION THAT COMES OUT OF MCCORMICK ON EVIDENCE.

23       IT SAYS, "A COLLATERAL CONTRADICTION IS TYPICALLY ONE ON A

24   POINT NOT RELATED TO THE MATTERS AT ISSUE BUT DESIGNED TO SHOW

25   THAT THE WITNESS'S FALSE STATEMENT ABOUT ONE THING IMPLIES A

         1          PROBABILITY OF FALSE STATEMENTS ABOUT THE MATTERS AT ISSUE."

         2              AND THAT'S EXACTLY WHAT THIS SITUATION IS.  THE

         3      CIRCUMSTANCES SURROUNDING THE PREPARATION OF MS. KATJU'S 2008

         4      TAX RETURN IS NOT A MATTER AT ISSUE IN THIS CASE.

         5              THE DEFENSE IS ATTEMPTING TO USE AN ALLEGED FALSE

         6      STATEMENT THAT SHE MADE IN COURT ABOUT THAT MATTER TO SHOW THAT

         7      SHE CAN'T BE BELIEVED BY THE JURY ON THE THINGS THAT REALLY ARE

         8      AT ISSUE IN THIS CASE, INCLUDING ADVICE THAT SHE GAVE TO THE

         9      DEFENDANT AND THE MANAGEMENT OF HIS ACCOUNTS.

        10              THIS IS VERY DIFFERENT FROM IMPEACHING HER ABOUT ADVICE

        11      SHE GAVE TO TAXPAYERS PREPARERS OR THINGS THAT COME CLOSER TO

        12      THE HEART OF THIS CASE.

        13              I WILL NOTE THAT SHE WAS IMPEACHED OR ATTEMPTED TO BE

        14      IMPEACHED ON HER CROSS-EXAMINATION BY THIS STATEMENT.  WE HAD

        15      THE LETTER THAT MR. SCHAINBAUM REFERENCES WE HAD DISCLOSED IN

        16      THE MIDDLE OF HER CROSS-EXAMINATION AND MR. SCHAINBAUM ASKED

        17      HER QUESTIONS, ISN'T IT TRUE THAT WHEN YOUR 2008 TAX RETURN WAS

        18      BEING PREPARED, YOUR RETURN PREPARER ASKED YOU ABOUT FOREIGN

        19      BANK ACCOUNTS X, Y, AND Z, AND I THINK SHE SAID SHE DOESN'T

        20      RECALL THAT OCCURRING.

        21              BUT THE ISSUE WAS WHETHER NOW HER HAVING DENIED THAT,

        22      THEY'RE PERMITTED TO BRING IN A WITNESS TO IMPEACH HER ON THAT

        23      COLLATERAL MATTER.

        24                  THE COURT:  AND DID YOU HAVE THE LETTER WHEN YOU HAD

        25      HER ON CROSS-EXAMINATION?

1           MR. SCHAINBAUM:  YES.

2           THE COURT:  SO YOU COULD HAVE USED THAT TO REFRESH

3     HER RECOLLECTION?

4           MS. SISKIND:  WELL, IT WASN'T A LETTER FROM HER.  IT

5     WAS A LETTER FROM ME TO MR. SCHAINBAUM.

6           THE COURT:  OH, I SEE.

7           MS. SISKIND:  AND AFTER WE INTERVIEWED THIS WITNESS

8     AND HE TOLD US CERTAIN THINGS, AND WE DISCLOSED THAT TO THE

9     DEFENSE.

10          THE COURT:  I SEE.

11          MS. SISKIND:  ONE OF THE THINGS THAT THE CASE LAW ON

12    IMPEACHMENT BY EXTRINSIC EVIDENCE ON COLLATERAL MATTERS MAKES

13    CLEAR IS THAT SOMETIMES WHEN YOU CROSS-EXAMINE A WITNESS AND

14    IMPEACH THEM, YOU JUST HAVE TO ACCEPT THEIR ANSWER AND THERE IS

15    NOT GOING TO BE AN OPPORTUNITY TO PUT IN EXTRINSIC EVIDENCE.

16          AND IN THIS CASE THE WAY THAT THE NINTH CIRCUIT DEFINES A

17    COLLATERAL CONTRADICTION IS EXACTLY WHAT WE HAVE HERE.  WE'RE

18    DEALING WITH SOMETHING THAT DOES NOT GO TO THE HEART OF ANY

19    ISSUE FOR THE JURY.  IT JUST GOES TO HER TRUTHFULNESS AND

20    CREDIBILITY.

21          AND TO ALLOW THE DEFENSE TO MAKE AN ARGUMENT, SHE LIED

22    ABOUT THIS AND WHAT ELSE IS SHE LYING ABOUT?  BUT THAT THERE IS

23    A SERIOUS ISSUE WITH ALLOWING THE DEFENSE TO BRING IN EXTRINSIC

24    EVIDENCE TO IMPEACH EVERY LITTLE COLLATERAL MATTER IN THE

25    WITNESS'S TESTIMONY.

```
 1                 THE COURT:  MR. SCHAINBAUM.

 2                 MR. SCHAINBAUM:  MR. ALLEN WOULD LIKE TO DISCUSS

 3      THIS.

 4                 THE COURT:  OKAY.

 5                 MR. ALLEN:  YOUR HONOR, I DID REVIEW THE CASE THAT

 6      THE GOVERNMENT PROVIDED ON FRIDAY.

 7           I HAVE A MORE UP-TO-DATE CASE AS WELL, BUT I JUST WANT TO

 8      MAKE THE POINT THAT THE GOVERNMENT ARGUES THIS IS A COLLATERAL

 9      MATTER, BUT I JUST WANT TO REFRESH EVERYONE'S RECOLLECTION THAT

10      THE GOVERNMENT MADE THIS AN ISSUE IN THIS CASE AT PAGE 359 OF

11      THE TRANSCRIPT.  MS. KATJU WAS ASKED THE QUESTION:  "WHEN YOU

12      WERE HAVING YOUR 2006, '07, '08 RETURNS PREPARED BY A C.P.A.,

13      DO YOU RECALL WHETHER THOSE C.P.A.'S EVER ASKED YOU IF YOU HAD

14      A FOREIGN BANK ACCOUNT?"

15           THE RESPONSE WAS "I DON'T RECALL THAT."

16           BUT THEY MADE THAT AN ISSUE, AND THEY SAID "DO YOU RECALL

17      IF ANYBODY EVER ASKED YOU WHETHER YOU HAD A FOREIGN BANK

18      ACCOUNT?"  SO I THINK THEY MADE IT AN ISSUE.

19           AND THEN I WENT AND RESEARCHED THEIR CASE.  AND ONE OF THE

20      RULES OF EVIDENCE THAT THEY DISCUSS WAS 613.  AND 613 DISCUSSES

21      EXTRINSIC EVIDENCE OF A PRIOR CONSISTENT STATEMENT OF WITNESS.

22           I THINK WE'RE ONLY LOOKING AT HALF OF THE RULE.

23      "EXTRINSIC EVIDENCE OF A PRIOR INCONSISTENT STATEMENT BY A

24      WITNESS IS NOT ADMISSIBLE UNLESS THE WITNESS IS AFFORDED AN

25      OPPORTUNITY TO EXPLAIN OR DENY THE SAME AND THE OPPOSITE PARTY
```

1    IS AFFORDED AN OPPORTUNITY TO INTERROGATE THAT WITNESS THEREON

2    OR THE INTERESTS OF JUSTICE OTHERWISE REQUIRE."

3        SO THIS WITNESS HAS HAD AN OPPORTUNITY TO EXPLAIN IT.  THE

4    GOVERNMENT MADE IT AN ISSUE, ASKED THE QUESTION, AND MADE IT AN

5    ISSUE FOR THE JURY AND SHE OFFERED HER RESPONSE.

6        NOW, I ALSO RECALL THAT EARLIER IN THIS TRIAL WE HAD A

7    BATTLE OVER WHETHER OR NOT THE PROPER FOUNDATION WAS WAIVED FOR

8    DOCUMENTS.  AND ONE OF THE ARGUMENTS THE DEFENSE MADE WAS,

9    WELL, HOW ARE WE GOING TO CROSS-EXAMINE SOMEONE ON THESE

10   DOCUMENTS WHEN WE DON'T KNOW WHO CREATED THEM?

11       AND I THINK THE RESPONSE OR THE DISCUSSION WAS, WELL,

12   VANDANA KATJU AND AARTI KUMAR WILL BE HERE TO DISCUSS THE

13   EXHIBITS AND THE DOCUMENTS, AND WE CAN DO CROSS-EXAMINATION

14   THROUGH THESE TWO WITNESSES.  SO I THINK THAT THE CREDIBILITY

15   OF THESE WITNESSES IS EXTREMELY IMPORTANT IN THIS CASE NOW.

16           THE COURT:  WHICH WITNESSES ARE YOU REFERRING TO

17   NOW?

18           MR. ALLEN:  WELL, VANDANA KATJU, FOR INSTANCE, FOR

19   THIS WITNESS, AS FAR AS IMPEACHMENT.

20       I THINK THE CREDIBILITY OF THIS WITNESS, VANDANA KATJU, IS

21   EXTREMELY IMPORTANT IN THIS CASE AND BECAUSE THE JURY IS GOING

22   TO WEIGH THE CREDIBILITY OF THE DOCUMENTS THROUGH

23   VANDANA KATJU.

24       SCOTT MACIEJEWSKI KNEW NOTHING ABOUT THOSE DOCUMENTS OTHER

25   THAN THAT MAYBE THEY'RE MAINTAINED ON SOME SERVER IN THE UNITED

1    STATES, BUT THE CREDIBILITY IS REALLY OF VANDANA KATJU.

2         SO I DIRECT THE COURT TO THE CASE OF NINTH CIRCUIT UNITED

3    STATES V. ADAMSON, 291 FEDERAL 3D 606.

4              THE COURT:  DO YOU HAVE A COPY FOR ME?

5              MR. ALLEN:  I DO.

6              THE COURT:  AND COUNSEL?

7              MR. ALLEN:  YES, I DO.  MAY I APPROACH, YOUR HONOR?

8              THE COURT:  YES.

9              MR. ALLEN:  AND AT PAGE 612 THERE'S A DISCUSSION

10   ABOUT THE CONFRONTATION CLAUSE AND THE CREDIBILITY OF

11   WITNESSES.  AND THE FOURTH PARAGRAPH ON 612, WHICH IS ACTUALLY

12   PAGE 4 OF THE ACTUAL DOCUMENT IS, "CENTRAL TO THE CONFRONTATION

13   IS THE RIGHT FOR THE DEFENDANT TO EXAMINE A WITNESS'S

14   CREDIBILITY.  (AT THE CORE OF THE CONFRONTATION CLAUSE IS THE

15   RIGHT OF EVERY DEFENDANT TO TEST THE CREDIBILITY OF WITNESSES

16   THROUGH CROSS-EXAMINATION.)  WHEN EXPLORING THE CREDIBILITY OF

17   A GOVERNMENT WITNESS WHO TESTIFIES AGAINST A CRIMINAL DEFENDANT

18   AT TRIAL, IT IS AXIOMATIC THAT THE DEFENDANT MAY EMPLOY THE

19   WITNESS'S PRIOR INCONSISTENT STATEMENTS IN ORDER TO IMPEACH THE

20   CREDIBILITY OF THE WITNESS.  A PRIOR INCONSISTENT STATEMENT IS

21   ADMISSIBLE TO RAISE THE SUGGESTION THAT IF A WITNESS MAKES

22   INCONSISTENT STATEMENTS, THEN HIS ENTIRE TESTIMONY MAY NOT BE

23   CREDIBLE."

24         SO IN THIS CASE WE HEARD DIRECT AND CROSS OF

25   VANDANA KATJU.  AND WHEN THE GOVERNMENT WAS ASKING QUESTIONS

1    SHE WAS QUITE PRECISE, AND THEN SHE ADOPTED THE RESPONSE OF "I

2    DON'T RECALL" QUITE FREQUENTLY DURING CROSS-EXAMINATION.

3        SO I THINK THE JURY IS ENTITLED TO UNDERSTAND WHAT SHE

4    MEANS BY "I DON'T RECALL."  THIS IS PRETTY CLEAR EVIDENCE THAT

5    THIS TAX RETURN PREPARER ASKED HER THE QUESTION AND SHE

6    RESPONDED JUST THREE OR FOUR YEARS AGO TO THIS QUESTION.

7            THE COURT:  SO IF A WITNESS SAYS I DON'T RECALL, IS

8    THAT WITNESS SUBJECT TO PRIOR INCONSISTENT STATEMENTS?  IS "I

9    DON'T RECALL" AN INCONSISTENT STATEMENT?

10           MR. ALLEN:  I THINK THAT'S FOR THE JURY TO DETERMINE

11   WHETHER OR NOT SHE'S BEING TRUTHFUL WHEN SHE SAYS SHE DOESN'T

12   RECALL.

13           THE COURT:  DON'T WE HAVE TO TALK ABOUT THAT FIRST

14   LEGALLY TO SEE IF IT IS A PRIOR INCONSISTENT STATEMENT TO SEE

15   WHETHER IT'S ADMISSIBLE?

16           MR. ALLEN:  CORRECT.  I THINK IT IS INCONSISTENT

17   BECAUSE I THINK WHAT SHE'S RESPONDING TO IS A DIRECT QUESTION

18   BY THE GOVERNMENT.

19           THE COURT:  SHE SAID I DON'T REMEMBER.

20           MR. ALLEN:  CORRECT.

21           THE COURT:  I DON'T REMEMBER.

22           MR. ALLEN:  WELL, I THINK IT'S UP TO THE JURY TO

23   DETERMINE WHETHER OR NOT SHE REMEMBER WHEN SHE WAS ON THE

24   WITNESS STAND.  AND IF THERE IS TESTIMONY THAT I HAD A

25   PROCEDURE.  I HANDED PEOPLE A DOCUMENT AND I ASKED THE QUESTION

1    DIRECTLY TO MY AND --

2              THE COURT:  AND THAT'S ADMISSIBLE BECAUSE?

3              MR. ALLEN:  TO SHOW THAT MS. KATJU DID KNOW THAT SHE

4    HAD BEEN ASKED THE QUESTION.

5              THE COURT:  AND IS THAT CALLED IMPEACHMENT?

6              MR. ALLEN:  YES.

7              THE COURT:  SO IT IMPEACHES -- SHE SAYS I DON'T

8    REMEMBER AND SO THIS IS IMPEACHMENT SAYING, OH, ACTUALLY SHE

9    DOES REMEMBER?

10             MR. ALLEN:  WELL, THE JURY CAN DETERMINE WHETHER OR

11   NOT SHE REMEMBERS BASED ON HER RESPONSE.

12             THE COURT:  I'M STILL TRYING TO GET OVER THE

13   LEGAL -- THE OBJECTION.

14        THE CASE YOU HANDED ME, AND I JUST READ THE FOLLOWING

15   PARAGRAPH, THERE WAS A PLEA AGREEMENT AND SOMEBODY WAS SILENT

16   DURING A CONVERSATION AND THEN TESTIFIED CONTRARY SUBSEQUENT.

17        AND SO THIS -- IT SOUNDS LIKE THAT IS A PRIOR INCONSISTENT

18   STATEMENT, IN OTHER WORDS, THE SILENCE OF THE CONVERSATION

19   COULD BE DEEMED TO FALL UNDER THIS IMPEACHMENT.

20             MR. ALLEN:  SURE.  BUT I BELIEVE THE JURY IS

21   ENTITLED -- EVEN JUST BY SAYING I DON'T RECALL AND I DON'T

22   REMEMBER, YOU KNOW, IF THAT STATEMENT WAS MADE YESTERDAY, SHE

23   COULD STILL SAY I DON'T REMEMBER.

24        BUT I THINK THE JURY WOULD BE ENTITLED TO HEAR, WELL,

25   DON'T YOU KNOW YOU JUST SPENT AN HOUR YESTERDAY DISCUSSING THIS

1       MATTER?  AND THE JURY CAN DETERMINE, WOW, I DON'T REALLY

2       BELIEVE HER THAT SHE SAID I DON'T RECALL.  SHE SAID I DON'T

3       RECALL OR I DON'T REMEMBER TO A MAJORITY OF THE QUESTIONS ON

4       CROSS, BUT SHE REMEMBERED A LOT OF OLD HISTORICAL EVENTS,

5       INCLUDING THE DATE THAT SHE MOVED TO CALIFORNIA FROM NEW YORK,

6       WHICH IT WAS QUITE CLEAR TO HER EXACTLY WHEN THAT HAPPENED.

7            BUT CONVENIENTLY THE RESPONSE WAS THAT "I DON'T RECALL"

8       AND "I DON'T REMEMBER" AS TO SOME OF THE OTHER ISSUES.

9               THE COURT:  SO IS IT A COLLATERAL MATTER?

10              MR. ALLEN:  IT MAY -- I THINK THIS IS WITHIN THE

11      DISCRETION OF THE TRIAL JUDGE, AND THAT'S WHAT THE CASE DOES

12      STAND FOR, BUT I THINK THAT COLLATERAL OR NOT, I BELIEVE THE

13      GOVERNMENT MADE IT AN ISSUE.  THEY DIDN'T HAVE TO ASK THE

14      QUESTION.  IF IT WAS COLLATERAL TO THEM, THEY COULD HAVE LEFT

15      IT ALONE.

16           BUT THEY PUT THE QUESTION TO THE WITNESS AND THE JURY

17      HEARD THE QUESTION.  SO THE JURY NOW IS THINKING, WHAT, WHAT IS

18      THE RESOLUTION OF THIS QUESTION?

19           OH, THE WITNESS SAYS SHE DOESN'T RECALL.  BUT THE TAX

20      RETURN PREPARER SAID I TOLD EVERYBODY THIS AND THIS IS A PRETTY

21      HARD THING NOT TO RECALL THIS.

22              THE COURT:  SO THE LOGICAL EXTENSION OF THAT IS THAT

23      IF THE TAXPAYER PREPARER SAYS I TOLD EVERYBODY THIS, THEN THE

24      GOVERNMENT WOULD BE PERMITTED TO PUT ON SOME OF HIS OTHER

25      CLIENTS WHO SAID, NO, HE NEVER TOLD ME.  AND THEN YOU'LL PUT

1    OTHER CLIENTS TO SAY, YES, BUT HE TOLD ME.  AND THEN WE'LL

2    COUNT UP, I GUESS, WHOEVER HAS THE MOST WITNESSES.

3              MR. ALLEN:  AND THEN IT WILL SNOW.

4              THE COURT:  IS THAT HOW IT WORKS?

5              MR. ALLEN:  NO, YOUR HONOR.

6              THE COURT:  DO YOU WHAT I'M SAYING?  AND THAT'S WHAT

7    THE COLLATERAL RULE IS, THE COLLATERAL RULE ON EXTRINSIC

8    EVIDENCE I THINK IS DESIGNED TO PREVENT.

9              MR. ALLEN:  SURE.  BUT I DON'T THINK THAT THIS IS

10   PURELY A COLLATERAL MATTER.  THE GOVERNMENT PUT IT AT ISSUE.

11   THE GOVERNMENT MADE THIS PART OF THE CASE AS TO HER

12   CREDIBILITY.

13        SURE, DECIDING THIS QUESTION DOESN'T ANSWER WHETHER OR NOT

14   THE DEFENDANT IS GUILTY OR NOT GUILTY OF THE CRIMES ALLEGED IN

15   THIS CASE, BUT I THINK THE CREDIBILITY OF THIS WITNESS IS

16   EXTREMELY IMPORTANT GIVEN THAT THE DOCUMENTS THAT THE JURY IS

17   GOING TO DECIDE WHETHER OR NOT TO RELY UPON ARE ONLY

18   CORROBORATED OR UTILIZED AND RELIED UPON BY THIS WITNESS WHO

19   HAD NOT GREAT KNOWLEDGE OF HOW THESE DOCUMENTS WERE CREATED.

20              THE COURT:  OKAY.

21              MS. SISKIND:  I WOULD JUST POINT OUT THAT THIS IS

22   EXACTLY THE DEFINITION IN HIGA OF WHAT IS A COLLATERAL MATTER.

23   AND THE CASE THE DEFENSE CITES RELATES TO CROSS-EXAMINING A

24   WITNESS WITH INCONSISTENT STATEMENTS DURING CROSS-EXAMINATION.

25        I DON'T THINK IT SAYS ANYTHING ABOUT WHEN EXTRINSIC

1    EVIDENCE CAN BE BROUGHT IN.

2        HIGA ADDRESSES EXTRINSIC EVIDENCE, AND IT DEFINES A

3    COLLATERAL MATTER BY ASKING THE QUESTION:  COULD THE FACT HAVE

4    BEEN SHOWN IN EVIDENCE FOR ANY PURPOSE INDEPENDENTLY OF THE

5    CONTRADICTION?  AND THE ANSWER ON THIS FACT IS CLEARLY, NO.  IF

6    IT WASN'T FOR AN ATTEMPT TO SHOW CONTRADICTION, THIS WITNESS'S

7    TESTIMONY WOULD HAVE NO RELEVANCE.  AND THAT IS THE EXACT

8    DEFINITION OF WHAT A COLLATERAL MATTER IS FOR IMPEACHMENT

9    PURPOSES.

10        SO WE WOULD SUBMIT THAT IT'S INADMISSIBLE.

11            THE COURT:  I DO SEE THAT THE CASE YOU CITED IS A

12    CONFRONTATION CLAUSE ISSUE AND THERE WAS CROSS-EXAMINATION, AS

13    THERE WAS WITH THIS WITNESS, BUT I THINK IT'S THE CASE YOU CITE

14    ANDERSON, MR. ALLEN, IS DIFFERENT.

15            MR. ALLEN:  YOUR HONOR, I FOUND ANOTHER CASE, UNITED

16    STATES VERSUS V. LEPP, L-E-P-P, BUT IT WAS NOT PUBLISHED.

17    THERE'S NO PRECEDENTIAL VALUE, AND I DON'T HAVE A COPY WITH ME

18    RIGHT NOW.

19        THAT CASE, I DON'T HAVE THE CITE BUT I MAY HAVE IT THIS

20    AFTERNOON OR TOMORROW MORNING, BUT IN THAT CASE THE GOVERNMENT

21    WAS SEEKING TO USE EVIDENCE AND THE JUDGE ALLOWED THAT EVIDENCE

22    IN CITING THE WIDE LATITUDE OR THE DISCRETION OF THE TRIAL

23    JUDGE TO DECIDE WHETHER OR NOT THIS IS RELEVANT EVIDENCE AND

24    THE PURPOSE OF -- IF THE PURPOSE OF USING IT IS IMPEACHMENT,

25    BUT THE TRIAL JUDGE HAS WIDE DISCRETION.

1           THE COURT:  ALL RIGHT.  THANK YOU.  SO LET ME ASK

2     YOU, WHAT OTHER WITNESSES DO YOU HAVE AVAILABLE THIS MORNING?

3           MR. SCHAINBAUM:  WELL, WE HAVE X, WITNESS X, WHO,

4     JUST TO GIVE YOU A PREVIEW, WILL TESTIFY ABOUT THE SCHEME AND

5     WILL TIE IT TO VANDANA KATJU.

6           MS. SISKIND:  AND, YOUR HONOR, WE WOULD OBJECT

7     UNLESS HE CAN TIE THE SCHEME TO ASHVIN DESAI, WHICH BASED ON

8     OUR UNDERSTANDING OF THIS WITNESS'S KNOWLEDGE, HE WILL NOT BE

9     ABLE TO DO.

10          MR. SCHAINBAUM:  AGAIN, IT THEN BECOMES A CLASSIC

11    CIRCUMSTANTIAL EVIDENCE CASE.  THEY TARGETED A CERTAIN CLASS OF

12    PEOPLE, VICTIMS, WHO WERE PREMIER CLIENTS OR HIGH NET WORTH

13    PEOPLE.

14         SO THIS IS KIND OF TYPICAL IN THESE KIND OF WHITE COLLAR

15    CRIME OR TAXPAYER CASES.  I MEAN, WE'RE FORTUNATE HERE THAT WE

16    HAVE MORE BECAUSE WE HAVE A PERCIPIENT TO THE SCHEME, TO THE

17    STRATEGY.

18         YOU ASKED ME SOMEWHERE IN THE MIDDLE OF TRIAL PREPARATION,

19    WELL, MR. SCHAINBAUM, CAN YOU SHOW SOMETHING ABOUT THE DETAILS

20    OF THE SCHEME?  AND FORTUNATELY WE WERE ABLE TO DISCOVER

21    WITNESS X.

22         SO, YEAH, HE'S HERE, AND WE CAN GO AT IT.  AND THERE ARE

23    SOME OTHER PROBLEMS WITH THIS THAT WE NEED TO TALK ABOUT AND A

24    HOUSEKEEPING MATTER.

25          THE GOVERNMENT WAS GIVEN TWO WITNESSES THAT THEY PUT ON

1    THE WITNESS STAND HERE, VANDANA KATJU, NONPROSECUTION AGREEMENT

2    WHICH EQUAL IMMUNITY; THEY GAVE AARTI KUMAR, ANOTHER GOVERNMENT

3    WITNESS, IMMUNITY.

4         SO I WOULD ASK ON THE RECORD THROUGH THE COURT IF THEY

5    WILL GRANT WITNESS X IMMUNITY, A NONPROSECUTION AGREEMENT.

6              THE COURT:  DO YOU CARE TO RESPOND, MS. SISKIND?

7              MS. SISKIND:  ONLY THAT IT'S PREMATURE.  THE COURT

8    SHOULD FIRST MAKE A RULING AS TO WHETHER HE'S GOING TO TESTIFY.

9    IF HE'S NOT GOING TO TESTIFY, THEN WE DON'T HAVE TO GET INTO

10   WHETHER THE NINTH CIRCUIT STANDARD FOR COMPELLED IMMUNITY

11   APPLIES.

12             THE COURT:  IS THIS WITNESS GOING TO TESTIFY -- TELL

13   ME THE NEXUS BETWEEN THIS WITNESS TESTIFYING AS TO IMPEACH

14   EITHER AARTI KUMAR OR VANDANA KATJU.

15             MR. SCHAINBAUM:  HE WILL TESTIFY THAT HE HAS HAD

16   DIRECT CONTACT WITH VANDANA KATJU, PARTICIPATED WITH HER IN HER

17   GOING AROUND REGARDING THE SCHEME AND THE STRATEGY AND HIS

18   RESISTANCE TO THE SCHEME OR STRATEGY AND HER REACTION TO THAT.

19        AND HE WILL TESTIFY AS TO THE DETAILS OF THE SCHEME AND

20   STRATEGY USING SUCH COMPONENTS AS THE HONEY TRAP AND DUAL

21   HEADER, WHICH WE ALREADY HAD A PREVIEW FROM MR. O'HAGAN CLAIMS

22   HE KNEW NOTHING ABOUT THIS, HE WROTE SOMETHING IN A LETTER

23   ABOUT DUAL HEADER, H-E-A-D-E-R.

24             THE COURT:  SO IT SOUNDS LIKE THIS WOULD BE

25   IMPEACHMENT EVIDENCE AS TO VANDANA KATJU AND PERHAPS

```
 1   AARTI KUMAR?

 2           MS. SISKIND:  WELL, THE GOVERNMENT, OTHER THAN

 3   MR. SCHAINBAUM'S PROFFER, THE GOVERNMENT HAS NO INFORMATION

 4   THAT HE HAS THAT KIND OF IMPEACHMENT EVIDENCE.  WITNESS X CAME

 5   IN AND GAVE A PROFFER TO THE GOVERNMENT.  I BELIEVE THE COURT

 6   HAS A COPY OF THAT MEMORANDUM OF INTERVIEW BECAUSE IT WAS

 7   ATTACHED TO A PLEADING.

 8       AND IF THE COURT LOOKS AT WHAT HE TOLD THE GOVERNMENT ON,

 9   I BELIEVE, IT WAS IN JUNE OR JULY OF LAST YEAR, EVERYTHING HE

10   KNOWS ABOUT THE SCHEME HE LEARNED FROM SOMEONE ELSE.  THERE WAS

11   NO MENTION -- HE MENTIONS IN THAT PROFFER HE KNOWS THE NAME OF

12   VANDANA KATJU, BUT THERE WAS NO INDICATION THAT HE WENT AROUND

13   DOING ANYTHING WITH HER, HAD ANY CONVERSATIONS WITH HER ABOUT

14   ANY SCHEME.

15       I BELIEVE THAT THE SECTION IN HIS MEMORANDUM OF INTERVIEW

16   WHERE HE'S TALKING ABOUT THE SCHEME STARTS OUT WITH

17   "ANKUSH TANDON TOLD ME THAT" AND THEN HE GOES ON FOR A WHILE

18   AND TALKS ABOUT THINGS THAT HE KNOWS.

19       ONE THING WE HADN'T MENTIONED YET IS THAT THIS INDIVIDUAL

20   DID NOT WORK FOR HSBC INDIA.  HE NEVER WORKED IN EITHER OF THE

21   REPRESENTATIVE OFFICES IN NEW YORK OR FREMONT.  HE WAS EMPLOYED

22   BY HSBC UNITED STATES IN THE SOUTH ASIAN BANKING UNIT WHICH

23   SERVICES ACCOUNTS HELD HERE IN THE UNITED STATES AND NOT

24   ACCOUNTS LOCATED IN INDIA.  AND THERE'S NOTHING AT ISSUE IN

25   THIS CASE ABOUT THE DEFENDANT HAVING ACCOUNTS IN THE U.S.
```

1        SO WE HAVE SOME SERIOUS HEARSAY PROBLEMS WITH RESPECT TO

2   HOW HE KNOWS WHAT HE KNOWS.  AND IF THE COURT IS GOING TO ALLOW

3   HIS TESTIMONY BASED ON MR. SCHAINBAUM'S TESTIMONY THAT HE WENT

4   AROUND WITH MS. KATJU SOMEHOW, I THINK WE NEED SOME MORE FACTS

5   ON THAT.

6            THE COURT:  I'LL TAKE MR. SCHAINBAUM ON HIS WORD.

7   HE'S AN OFFICER OF THE COURT.  HE INDICATED THAT THIS IS THE

8   INFORMATION THAT YOU'RE GOING TO ELICIT FROM THIS WITNESS.

9            MR. SCHAINBAUM:  RIGHT.  AND WE ALSO HAVE, MR. ALLEN

10  REMINDS ME, OF THIS TAPE RECORDING WHERE HE GOES BACK AND FORTH

11  ABOUT THE SCHEME AND HIS INVOLVEMENT WITH VANDANA KATJU.  I

12  DON'T HAVE A PRECISE PAGE OF THE TRANSCRIPT.

13       BUT ALSO I WOULD TENDER TO THE GOVERNMENT NOW SOMETHING

14  THAT WE MARKED TRIPLE OOO, I GUESS.

15            MR. ALLEN:  TRIPLE U.

16            MR. SCHAINBAUM:  TRIPLE U.  IT'S CALLED EXECUTIVE IT

17  WAS MANAGEMENT, HSBC U.S.A. OF YAKUB MATHEW, AND I TENDER IT TO

18  THE GOVERNMENT.

19       AND ALSO, YOUR HONOR, MAY I APPROACH?  I HAVE A COPY FOR

20  THE COURT.

21            THE COURT:  YES.

22            MR. SCHAINBAUM:  THANK YOU, YOUR HONOR.  I'LL HAND

23  THIS TO MS. GARCIA.

24       YOUR HONOR, I ALSO NOTE AND MR. ALLEN POINTS OUT TO ME IN

25  THE LOWER RIGHT HAND CORNER THERE'S A BATES NUMBER HSBC-DOJ,

1621

1    WHICH I SUSPECT IS THE ACRONYM FOR DEPARTMENT OF JUSTICE,

2    TRIPLE 01785.  SO I BELIEVE THE ORIGIN OF HOW WE GOT THIS

3    DOCUMENT, IT WAS FROM THE DEPARTMENT OF JUSTICE.

4         AND, YOUR HONOR, ON PAGE 2, YOU MIGHT WANT TO LOOK AT

5    BULLET POINT 2.  IT SAYS, "TO LEVERAGE NRI CLIENT PORTFOLIO FOR

6    INCREASED SHARE OF CLIENT WALLET," W-A-L-L-E-T.

7              MR. ALLEN:  YOUR HONOR, I HAVE A COPY OF THE EXHIBIT

8    FOR THE COURT REPORTER IF I CAN APPROACH?

9              THE COURT:  OH, YES, THANK YOU.

10        WELL, COUNSEL, IF THIS WITNESS WAS GOING TO TESTIFY AS AN

11   IMPEACHMENT WITNESS AS TO VANDANA KATJU'S PRIOR TESTIMONY ABOUT

12   HER KNOWLEDGE AND INVOLVEMENT, HE WOULD BE PERMITTED TO TESTIFY

13   ABOUT THAT.

14             MS. SISKIND:  YOUR HONOR, THEN WE GET INTO A BIGGER

15   PROBLEM OF QUALIFIED IMMUNITY.  THIS WITNESS HAS SERIOUS FIFTH

16   AMENDMENT ISSUES, AND IN ORDER FOR THE GOVERNMENT TO FULLY

17   EXPLORE HIS CREDIBILITY ON CROSS-EXAMINATION, WE IMAGINE HE'S

18   GOING TO INVOKE HIS FIFTH AMENDMENT PRIVILEGE AGAINST

19   SELF-INCRIMINATION, WHICH GETS US INTO THE QUESTION ABOUT EVEN

20   GIVEN THE IMPEACHMENT VALUE OF HIS TESTIMONY, IF IT EVEN

21   EXISTS, IS THIS AN APPROPRIATE CIRCUMSTANCE FOR THE COURT TO

22   COMPEL THE GOVERNMENT TO IMMUNIZE HIM?

23        THE LEADING CASE ON THAT IN THE NINTH CIRCUIT CURRENTLY IS

24   THE STRAUB CASE, S-T-R-A-U-B.  AND TITLE 18 AUTHORIZES THE

25   GOVERNMENT, THE EXECUTIVE BRANCH OF THE GOVERNMENT, TO IMMUNIZE

1   WITNESSES.  AND THE COURTS, INCLUDING THE NINTH CIRCUIT, HAS

2   RECOGNIZED THAT BECAUSE OF DUE PROCESS CONCERNS THERE ARE

3   CERTAIN CIRCUMSTANCES, EXCEPTIONAL CASES THE NINTH CIRCUIT

4   CALLS THEM, IN WHICH THE JUDICIAL BRANCH SHOULD STEP IN EVADING

5   SEPARATION OF POWERS AND ORDER THE GOVERNMENT, ORDER THE

6   EXECUTIVE BRANCH TO GRANT IMMUNITY.

7       AND THE TEST IN THE NINTH CIRCUIT, THERE'S A TWO-PRONG

8   TEST.  THE FIRST PRONG IS RELEVANCE, WHICH IT SEEMS THE COURT

9   HAS FOUND AT LEAST SOME RELEVANCE TO HIS TESTIMONY FOR

10  IMPEACHMENT.

11      SO THE SECOND PRONG HAS TO DO WITH WHETHER THE PROSECUTION

12  GRANTED IMMUNITY TO ONE WITNESS WHILE SELECTIVELY DENYING IT TO

13  ANOTHER WHOSE TESTIMONY WOULD DIRECTLY CONTRADICT THE IMMUNIZED

14  GOVERNMENT WITNESS.

15      THE NINTH CIRCUIT SAYS IN HERE THAT IT IS ACTUALLY GOING

16  TO THE RARE CASE IN WHICH A WITNESS'S TESTIMONY DIRECTLY

17  CONTRADICTS THAT OF ANOTHER GOVERNMENT WITNESS.

18      IN THE STRAUB CASE THE SITUATION WAS TOUCH THAT THE

19  GOVERNMENT ACTUALLY GRANTED IMMUNITY TO 11 DIFFERENT PEOPLE

20  WHILE ONLY DENYING IT TO 1 DEFENSE WITNESS WHO COULD CONTRADICT

21  WHAT A GOVERNMENT WITNESS SAID.

22      IT'S A NARROW SET OF CIRCUMSTANCES THAT WE'RE DEALING WITH

23  AND THAT'S WHY THE COURT IN STRAUB TALKED ABOUT IT ONLY BEING

24  AN APPROPRIATE REMEDY IN THE EXCEPTIONAL CASE.

25      IN THAT SITUATION IT WAS A GOVERNMENT WITNESS AND A

1    PROPOSED DEFENSE WITNESS HAD TWO DIFFERENT VERSIONS OF A

2    CONVERSATION ABOUT WHETHER THE DEFENDANT ADMITTED TO SHOOTING

3    SOMEONE.  IT WAS A VERY DISCRETE ISSUE.

4        IT WAS NOT SOME BROADER THEORY OF IMPEACHMENT.  IT WAS A

5    DIRECT CONTRADICTION OF A STATEMENT MADE BY AN IMMUNIZED

6    GOVERNMENT WITNESS, AND I DON'T THINK THAT'S WHAT WE HAVE HERE.

7        THE TESTIMONY THEY WANT TO ELICIT MAY BE SOME KIND OF

8    BROADER IMPEACHMENT, BUT THEY WOULD HAVE TO POINT TO A SPECIFIC

9    STATEMENT FROM THE WITNESS THAT IS GOING TO BE DIRECTLY

10   CONTRADICTED.  AND THEN THE COURT WOULD HAVE TO WEIGH WHETHER

11   THIS IS AN APPROPRIATE CASE TO EXERCISE THIS REALLY

12   EXTRAORDINARY REMEDY OF COMPELLING THE EXECUTIVE BRANCH TO

13   GRANT SOMETHING THAT IS GENERALLY WITHIN ITS FULL AUTHORITY TO

14   EITHER GRANT IT OR NOT.

15       AND I WOULD ENCOURAGE THE COURT TO LOOK AT STRAUB AND LOOK

16   AT SOME OF THE LANGUAGE IN THERE.  AND IT'S -- IT REALLY IS

17   LIMITED TO TYPES OF CIRCUMSTANCES THAT IT THINKS IT SHOULD

18   APPLY TO.  AND IT DOES TALK ABOUT RARE CASES AND EXCEPTIONAL

19   CASES.

20       AND I WOULD NOTE THAT IN STRAUB THE COURT PUT EMPHASIS ON

21   THE FACT THAT THE DEFENSE WITNESS AT ISSUE WAS THE ONLY DEFENSE

22   WITNESS WHO COULD CONTRADICT A GOVERNMENT WITNESS, WHICH IS NOT

23   THE SITUATION WE HAVE HERE.  WE'VE ALREADY HAD A WITNESS TAKE

24   THE STAND TO PROVIDE SOME IMPEACHMENT ON MS. KATJU.

25              THE COURT:  WELL, I APPRECIATE THAT.  WE'LL TAKE A

1    BREAK, AND I'LL READ THE CASE.  IT'S 538 F.3D 1147.

2          MR. SCHAINBAUM:  AND, YOUR HONOR, ALSO THERE'S AN

3    EARLIER CASE, BUT STRAUB, AS MS. SISKIND SAID, IS THE LATEST

4    STATEMENT AND IN THAT STRAUB CASE THEY GO THROUGH THE HISTORY

5    OF THIS TYPE OF IMMUNITY SO YOU'LL BE ADVISED ON THE PREMISES.

6       BUT THERE WAS ANOTHER CASE WHERE THEY CAME OUT WITH A

7    SIMILAR RESULT THAT YOU MIGHT WANT TO LOOK AT IT FOR BACKGROUND

8    CALLED UNITED STATES VERSUS WESTERDAHL, W-E-S-T-E-R-D-A-H-L,

9    NINTH CIRCUIT 1991 CITED AT 945 F.2D 1083.  AND, OF COURSE,

10   STRAUB IS A 2008 CASE.

11         THE COURT:  THANK YOU.  MS. SISKIND, THE FACT THAT

12   THERE HAS BEEN IMPEACHMENT TESTIMONY ALREADY AS TO THIS

13   WITNESS, THAT FACT ALONE I SUPPOSE IS SOMETHING THAT THE COURT

14   CAN CONSIDER IN REVIEWING THIS UNIQUE SITUATION.

15      HOWEVER, JUST THAT FACT ALONE, THE FACT THAT THE WITNESS

16   HAS BEEN IMPEACHED BY ONE DOES NOT NECESSARILY PRECLUDE THE

17   FACT --

18         MS. SISKIND:  THAT'S CORRECT, YOUR HONOR.

19         THE COURT:  -- THAT THERE IS OTHER IMPEACHMENT

20   EVIDENCE THAT SHOULD BE AFFORDED.

21         MS. SISKIND:  THAT'S CORRECT.  BUT I THINK IF THE

22   COURT LOOKS AT HOW STRONG THE STRAUB CASE TALKS ABOUT THE

23   CIRCUMSTANCE UNDER WHICH COMPELLED IMMUNITY IS APPROPRIATE.  IT

24   USES WORDS LIKE "RARE" AND "EXCEPTIONAL" AND THIS WAS THE ONLY

25   DEFENSE WITNESS WHO COULD CONTRADICT.  THAT'S SIGNIFICANT

 1        BECAUSE IN APPLYING THE STANDARD IN THAT CASE, IT'S IMPORTANT

 2        TO LOOK AT EXACTLY WHAT THE FACTS WERE IN STRAUB THAT LED THE

 3        NINTH CIRCUIT TO SAY, AND THIS WAS A CASE WHERE THE GOVERNMENT

 4        SHOULD HAVE BEEN REQUIRED TO GRANT IMMUNITY.

 5             AND IT REALLY DOES, I BELIEVE, DISTINGUISH IT FROM THE

 6        FACTS WE HAD HERE WHERE WITNESS X IS NOT THE ONLY DEFENSE

 7        WITNESS WHO CAN IMPEACH MS. KATJU.

 8             THE COURT:  WELL, I APPRECIATE THAT.  I'LL LOOK AT

 9        THE CASE AND SEE, BUT THE ALTERNATIVE IS TO, PERHAPS, DENY A

10        DEFENDANT AN OPPORTUNITY TO PRESENT EVIDENCE IN HIS OR HER

11        CASE.  IT MIGHT BE, PERHAPS, NOT EXONERATING, BUT CERTAINLY

12        EVIDENCE THAT WOULD ALLOW THE JURY TO TEST THE QUALITY AND

13        NATURE OF THE ACCUSATIONS AND THAT'S EQUALLY IMPORTANT.

14             MS. SISKIND:  YOUR HONOR, I WOULD POINT THE COURT TO

15        ONE MORE CASE AND IT HAS USEFUL LANGUAGE IN IT.  IT'S A NINTH

16        CIRCUIT CASE CALLED U.S. V. GAGE, G-A-G-E, IT'S 331 FEDERAL

17        APPENDIX 547.  AND IT HELPS EXPLAIN WHAT DIRECT CONTRADICTION

18        MEANS BECAUSE REALLY THAT'S THE CRUX OF THE STANDARD, NOT JUST

19        IMPEACHMENT GENERALLY BUT DIRECT CONTRADICTION.

20             AND IT SAYS, "DIRECT CONTRADICTION MEANS MORE THAN JUST

21        DIFFERENT SUBJECTIVE INTERPRETATIONS OF THE SAME FACTS."

22             SO WHEREAS DIRECT CONTRADICTION WOULD BE WITNESS ONE SAYS

23        THE LIGHT WAS RED AND WITNESS TWO SAYS IT WAS GREEN.  THIS IS

24        GETTING INTO MORE SHADES OF GREY IN TERMS OF HER INTERPRETATION

25        VERSUS HIS INTERPRETATION ABOUT WHAT WAS GOING ON AT THE BANK,

1     WHETHER IT WAS PERMISSIBLE, AND WHETHER OR NOT THERE WAS A

2     SCHEME.  IT'S NOT A BLACK AND WHITE ISSUE THAT YOU CAN DIRECTLY

3     CONTRADICT SOMEONE ON.

4           THE COURT:  BUT HER TESTIMONY IS THERE SHE WAS NO

5     SCHEME.  SHE WAS NOT AWARE OF ANY SCHEME, AND SHE DIDN'T

6     PARTICIPATE IN ANY SCHEME, AS I RECALL IT.

7           MS. SISKIND:  I THINK A LOT OF IT WAS SHE DIDN'T

8     HAVE ANY -- WHERE HE KEPT -- MR. SCHAINBAUM KEPT ASKING ABOUT

9     NRI STRATEGY AND NRI STRATEGY, AND SHE SAID I NEVER HEARD THAT

10    TERM.  BUT IF HE IS GOING TO SAY "I HAVE USED THE TERM TO HER,"

11    WELL, THAT MIGHT BE A DIRECT CONTRADICTION.

12        BUT I WOULD ENCOURAGE THE COURT TO LOOK AT HOW STRONG THE

13    LANGUAGE IS IN STRAUB AND HOW LIMITING THE NINTH CIRCUIT IS

14    TRYING TO BE CIRCUMSTANCES UNDER WHICH THE COURT SHOULD COMPEL

15    IMMUNITY.

16          THE COURT:  THANK YOU FOR THAT.  AND I'LL TAKE A

17    BREAK AND LOOK AT THESE CASES.

18        LET ME ASK YOU, MS. SISKIND, YOU HAVE GREAT CONFIDENCE

19    THAT THIS WITNESS WILL ASSERT HIS FIFTH AMENDMENT PRIVILEGE?

20          MS. SISKIND:  YES, YOUR HONOR.

21          MR. STEPANIAN:  YOUR HONOR MAY I BE HEARD?

22          THE COURT:  I DON'T KNOW WHO YOU ARE.

23          MR. STEPANIAN:  MY NAME IS MICHAEL STEPANIAN, AND I

24    REPRESENT GONDIPALLI.  YOU MADE REFERENCE TO MR. GONDIPALLI A

25    FEW MOMENTS AGO.  I DON'T KNOW WHETHER THE COURT HAS MADE AN

```
 1        ORDER AS WITH REFERENCE TO WHETHER OR NOT HE IS TO TESTIFY OR

 2        NOT.

 3            I HAVE A SUBPOENA FOR HIM THAT WAS ISSUED, AND I WAS JUST

 4        WONDERING, AND I'VE BEEN -- MR. SCHAINBAUM HAS BEEN KIND ENOUGH

 5        TO KEEP ME ON STANDBY SO THAT I WOULDN'T HAVE TO BE HERE, BUT I

 6        WAS WONDERING WHAT THAT RULING WOULD BE AND WHETHER OR NOT

 7        MR. GONDIPALLI WOULD BE EXCUSED FROM THE SUBPOENA.

 8                THE COURT:  I DON'T THINK THAT WE'RE GOING TO GET TO

 9        HIS TESTIMONY THIS MORNING, MR. STEPANIAN.

10            AND LET ME JUST INDICATE THAT, WE'RE LEAVING IN ABOUT --

11        WE'RE GOING TO BREAK TODAY TO ALLOW FOR, I THINK, ONE OF THE

12        DEFENSE COLLEAGUES NEEDS TO LEAVE IN ABOUT PROBABLY 90 MINUTES

13        OR 80 MINUTES OR SO.  SO I DOUBT SERIOUSLY WHETHER WE'RE GOING

14        TO GET TO THAT WITNESS TODAY.

15                MR. STEPANIAN:  SO TOMORROW?

16                THE COURT:  SO WHY DON'T YOU -- MAY I SUGGEST THAT

17        YOU SHOULD ASK YOUR COLLEAGUE, MR. SCHAINBAUM, IF HE WOULD

18        PERMIT YOU TO BE ON TELEPHONIC STANDBY.

19                MR. STEPANIAN:  HE HAS.  I HAVE BEEN IN E-MAIL

20        COMMUNICATIONS WITH HIS ASSISTANT.

21                THE COURT:  GOOD.

22                MR. STEPANIAN:  SO I HAVE A COURT APPEARANCE

23        TOMORROW AT 2:00 O'CLOCK IN SAN FRANCISCO.

24                THE COURT:  SAN FRANCISCO.

25                MR. STEPANIAN:  SO I'LL TRY TO PUT IT TOGETHER.
```

```
 1                THE COURT:  WELL, WE'LL BEAR THAT IN MIND,

 2     MR. STEPANIAN.

 3                MR. SCHAINBAUM:  THANK YOU, YOUR HONOR.

 4                THE COURT:  ALL RIGHT.  THANK YOU.  LET ME JUST ASK

 5     THIS ALSO, COUNSEL, IT'S ABOUT 12 MINUTES AFTER 10:00.

 6          WE ARE GOING TO BREAK AT 11:30 TODAY FOR YOUR CONVENIENCE,

 7     MR. SCHAINBAUM.

 8                MR. SCHAINBAUM:  THANK YOU, YOUR HONOR.

 9                THE COURT:  AND I WAS CURIOUS WHAT SHOULD WE DO WITH

10     OUR JURY THIS MORNING?

11                MS. SISKIND:  I THINK WE'RE GOING TO OBJECT ALSO TO

12     THE NEXT TWO WITNESSES THAT THE DEFENSE HAS INDICATED THAT

13     THEY'RE GOING TO CALL.  I CAN'T SEE US GETTING TO TESTIMONY

14     TODAY PERSONALLY.

15                THE COURT:  I THINK I SHOULD BRING THE JURY IN AND

16     THANK THEM FOR BEING HERE AND EXCUSE THEM FOR THE DAY, I REALLY

17     DO.  I DON'T WANT TO HAVE THEM SIT AROUND ANY LONGER FOR

18     15 MINUTES OF TESTIMONY.

19                MR. SCHAINBAUM:  RIGHT.  I THINK THAT'S A WISE

20     DECISION.

21                THE COURT:  LIZ, WHY DON'T WE BRING THEM IN, AND

22     WE'LL EXCUSE THEM TODAY.

23          (JURY IN AT 10:13 A.M.)

24                THE COURT:  PLEASE BE SEATED, FOLKS.  THANK YOU.

25     WE'RE ON THE RECORD IN THE DESAI MATTER.  ALL COUNSEL AND THE
```

1    DEFENDANT ARE PRESENT.  OUR JURY AND ALTERNATES ARE NOW

2    PRESENT, AND IT'S ABOUT A QUARTER AFTER 10:00 FOLKS.  AND I

3    ASKED YOU TO COLLECT YOURSELVES AT 9:00 O'CLOCK SO WE COULD

4    BEGIN TESTIMONY.

5        I BROUGHT YOU OUT HERE, FIRST OF ALL, NUMBER ONE, TO THANK

6    YOU FOR YOUR PATIENCE.  I APPRECIATE THAT.  IT'S DIFFICULT TO

7    WAIT IN THAT SMALL ROOM, AND I APPRECIATE THAT.  I HAVE TO

8    CONFESS TO YOU THAT I WOEFULLY UNDERESTIMATED MY NEED TO SPEAK

9    WITH THESE LAWYERS BEFORE WE CONTINUED WITH THIS CASE.  AND

10   WHAT I'M GOING TO DO -- AND I DON'T THINK THAT WE CAN

11   ACCOMPLISH THIS IN SUCH A MANNER THAT WE WOULD HAVE MEANINGFUL

12   EXAMINATION THIS MORNING.

13       MY SENSE IS THAT BY THE TIME I'M ASKING THESE QUESTIONS,

14   AND I'M ASKING THESE LAWYERS HELP AND ASSISTANCE, WE MIGHT HAVE

15   20 MINUTES LEFT FOR EXAMINATION, AND I THINK THAT'S NOT A GOOD

16   USE OF YOUR TIME.

17       SO I'M GOING TO EXCUSE YOU AT THIS TIME OR RECESS, RECESS

18   FOR THE DAY AND WE'LL START AGAIN TOMORROW MORNING.

19       AND WE'RE GOING TO START TOMORROW AT 9:30 JUST SO THAT I

20   CAN CONTINUE ANY OVERLAP, IF I HAVE ADDITIONAL QUESTIONS.

21       SO WE'LL START TOMORROW MORNING AT 9:30.  AND MY SENSE IS

22   THAT BETWEEN NOW, THIS EVENING, IF I HAVE TO MEET WITH THESE

23   LAWYERS THIS EVENING AFTER HOURS, WE'LL DO THAT TO ACCOMPLISH

24   WHAT WE NEED SUCH THAT WE CAN BEGIN EVIDENCE TOMORROW MORNING

25   AT 9:30.

1          SO I APOLOGIZE FOR THE INCONVENIENCE.  I'M GRATEFUL THAT

2     YOU SHOWED UP HERE ON TIME AND THAT YOU WAITED HERE DUTIFULLY,

3     AND I DO APOLOGIZE FOR THE INCONVENIENCE THIS MORNING.

4          I'M GOING TO GIVE YOU YOUR MORNING EARLY, I SUPPOSE, NOW,

5     BUT WE'LL SEE YOU TOMORROW MORNING AT 9:30 FOLKS.  THANK YOU

6     VERY MUCH.

7          (JURY OUT AT 10:15 A.M.)

8               THE COURT:  COUNSEL, WE'LL BE IN RECESS.

9               MS. SISKIND:  THANK YOU, YOUR HONOR.

10              MR. SCHAINBAUM:  THANK YOU, YOUR HONOR.

11        (RECESS FROM 10:15 A.M. UNTIL 11:03 A.M.)

12              THE COURT:  WE'RE BACK ON THE MATTER IN THE DESAI

13    MATTER.  ALL PARTIES PREVIOUSLY PRESENT ARE PRESENT ONCE AGAIN.

14    OUR JURY IS NOT PRESENT, AND WE EXCUSED THEM FOR THE DAY SO WE

15    CAN DISCUSS THIS ISSUE ABOUT WHETHER OR NOT THIS WITNESS, THE

16    NEXT WITNESS THAT YOU, THE DEFENSE, HAS IDENTIFIED WILL BE

17    IMMUNIZED BY THE GOVERNMENT OR NOT.

18         SO, MR. SCHAINBAUM, LET ME JUST ASK YOU TO STATE FOR THE

19    RECORD WHO YOUR NEXT WITNESS WOULD BE, PLEASE.

20              MR. SCHAINBAUM:  ALL RIGHT.  THE NEXT WITNESS SO FAR

21    IS KNOWN IN THE RECORD AS WITNESS X.  I CAN IDENTIFY HIM BY HIS

22    NAME IF THE COURT SO WISHES.

23              THE COURT:  LET'S DO THAT NOW.

24              MR. SCHAINBAUM:  OKAY.  THE WITNESS KNOWN AS WITNESS

25    X HAS A NAME OF YAKUB, Y-A-K-U-B, MATHEW, M-A-T-H-E-W.

1        THE COURT:  THANK YOU.  AND JUST AS A PROFFER, COULD

2   YOU INDICATE TO THE COURT WHAT THIS WITNESS WOULD TESTIFY TO?

3        MR. SCHAINBAUM:  THIS WITNESS WILL TESTIFY THAT HE,

4   AT ONE TIME, WAS EMPLOYED BY HSBC BANK AND WAS KNOWLEDGEABLE

5   ABOUT BANKING PRACTICES OF HSBC, INCLUDING WHAT IS CALLED AN

6   NRI STRATEGY OR SCHEME; AND THAT FURTHER HE WAS IN CONTACT WITH

7   VANDANA KATJU, WHO HE INDICATES WAS OPERATING THE SCHEME ON THE

8   WEST COAST UNDER PEOPLE LIKE DOMINIC O'HAGAN; AND HE WAS

9   KNOWLEDGEABLE ABOUT THE ELEMENTS OF THE SCHEME SUCH AS USE OF

10  THE TERMINOLOGY OR CODE FOR RELATIONSHIP MANAGERS IS THE HONEY

11  TRAP AND OPERATING THE SCHEME UNDER DUAL HEADER, WHICH COULD BE

12  INTERPRETED AS FRONTING FOR AN ACTUAL RETAIL OPERATION; AND

13  ACTUALLY WORKING THE RETAIL OPERATION BECAUSE HE KNEW THAT THEY

14  WERE TAKING BUSINESS AWAY FROM THE DOMESTIC U.S. AND PUTTING

15  U.S. DOLLARS IN INDIA; AND THAT THIS PARTICULAR SCHEME WENT WAY

16  UP.  AND THAT VANDANA KATJU WAS INTIMATELY INVOLVED IN THE

17  SCHEME AND EXECUTING THE SCHEME.

18        THE COURT:  SO HE WILL TESTIFY -- THE LAST SENTENCE

19  OF YOURS IS WHAT IS INTRIGUING TO ME, HE, THIS WITNESS, WILL

20  TESTIFY THAT VANDANA KATJU, A PREVIOUS WITNESS WHO TESTIFIED,

21  AS I UNDERSTAND IT, THAT THEY HAD NO PARTICIPATION, DID NOT

22  KNOW OF A SCHEME AND DID NOT PARTICIPATE IN A SCHEME, THIS

23  WITNESS WILL TESTIFY TO THE CONTRARY?

24        MR. SCHAINBAUM:  TO THE DIRECT CONTRARY BEING

25  PERCIPIENT.

1              THE COURT:  WITH VANDANA KATJU?

2              MR. SCHAINBAUM:  RIGHT.

3              THE COURT:  SO THIS WOULD BE OFFERED AS IMPEACHMENT?

4              MR. SCHAINBAUM:  YES.

5              THE COURT:  AS TO VANDANA KATJU?

6              MR. SCHAINBAUM:  CORRECT.

7              THE COURT:  OKAY.  MS. SISKIND.

8              MS. SISKIND:  I WOULD JUST INQUIRE FURTHER OF THAT

9     PROFFER.  WHEN WE SAY, "HE'S KNOWLEDGEABLE," IS THAT PERSONAL

10    KNOWLEDGE OR SOMETHING HE LEARNED FROM SOMEONE ELSE?  BECAUSE I

11    IMAGINE WE'RE GOING TO HAVE A LOT OF HEARSAY OBJECTIONS DURING

12    THIS TESTIMONY.

13             MR. SCHAINBAUM:  MY UNDERSTANDING OF THE EVIDENCE

14    AND WITH SPEAKING WITH THE WITNESS IS THAT HE HAS PERCIPIENT

15    PERSONAL KNOWLEDGE.

16             THE COURT:  OKAY.  MS. SISKIND.

17             MS. SISKIND:  I DON'T SEE HOW THAT'S POSSIBLE, BUT I

18    GUESS WE'LL HAVE TO SEE.

19             THE COURT:  OKAY.  SO, MS. SISKIND, LET ME ASK YOU,

20    THIS WITNESS IS -- WE NOW KNOW THE PROFFER FROM MR. SCHAINBAUM

21    AND HE HAS TOLD US ABOUT THAT.

22         AND HE'S PREPARED TO CALL THE WITNESS.  DO YOU WISH TO

23    STATE ANYTHING?

24             MS. SISKIND:  YES, YOUR HONOR.  WE EXPECT HIM TO

25    ASSERT HIS FIFTH AMENDMENT PRIVILEGE AGAINST

1    SELF-INCRIMINATION; AND THAT WE DO NOT BELIEVE THAT THE STRAUB

2    TEST FOR JUDICIAL COMPELLED IMMUNITY IS MET ON THESE FACTS; AND

3    THAT WE OPPOSE THE DEFENSE'S REQUEST FOR IMMUNITY FOR THE

4    REASONS STATED EARLIER BEFORE THE RECESS.

5            THE COURT:  OKAY.

6            MR. SCHAINBAUM:  YOUR HONOR, JUST TO MAKE THE RECORD

7    CLEAR, THROUGH THE COURT I REQUESTED THAT THE GOVERNMENT

8    THROUGH ITS DISCRETIONARY POWERS GRANT USE OF IMMUNITY TO THE

9    WITNESS KNOWN AS YAKUB MATTHEW IN ORDER TO DIRECTLY CONTRADICT

10   THE TESTIMONY OF VANDANA KATJU.

11           THE COURT:  ALL RIGHT.  THANK YOU.  SO THE WITNESS

12   IS NOT IN THE COURTROOM NOW AS I UNDERSTAND IT?

13           MS. SISKIND:  THAT IS CORRECT.

14           THE COURT:  ALL RIGHT.  IS THERE A REPRESENTATIVE OF

15   THE WITNESS PRESENT?

16           MR. SCHAINBAUM:  YES, HE IS HERE.

17           THE COURT:  IS THAT YOU, MR. SCHAINBAUM?

18           MR. SCHAINBAUM:  NO.  MR. WEINSTEIN.

19           MR. WEINSTEIN:  GOOD MORNING, YOUR HONOR.  MICHAEL

20   WEINSTEIN FROM THE LAW FIRM OF COLE, SCHOTZ, MEISEL, FORMAN &

21   LEONARD IN NEW JERSEY.  C-O-L-E, S-C-H-O-T-Z.  I'M COUNSEL FOR

22   WITNESS X, OTHERWISE KNOWN AS MR. MATHEW.

23           THE COURT:  THANK YOU.  GOOD MORNING.  THANK YOU FOR

24   BEING HERE.

25           MR. WEINSTEIN:  THANK YOU, JUDGE.

1           THE COURT:  AND I WONDER IF I COULD HEAR FROM YOU IN

2      REGARDS TO YOUR CLIENT.  MS. SISKIND HAS INDICATED THAT IF THIS

3      WITNESS WERE CALLED, YOUR CLIENT WERE CALLED TO TESTIFY THAT HE

4      WOULD ASSERT HIS FIFTH AMENDMENT -- YOU CAN COME TO THE

5      LECTERN.

6           MR. WEINSTEIN:  THANK YOU, JUDGE.

7           THE COURT:  -- HE WOULD ASSERT HIS FIFTH AMENDMENT

8      PRIVILEGE?

9           MR. WEINSTEIN:  THAT'S CORRECT, YOUR HONOR.  THE

10     EXPECTATION IS THAT THE GOVERNMENT WOULD ANSWER QUESTIONS THAT

11     WOULD LIKELY PROVOKE MY CLIENT'S FIFTH AMENDMENT PRIVILEGE,

12     WHICH RAISES A NUMBER OF CONCERNS ON HIS BEHALF I'D LIKE TO

13     SAY.

14        WE HAVE TRIED TO DISCUSS THESE ISSUES WITH THE GOVERNMENT,

15     BUT THEY ARE UNWILLING TO EXTEND ANY IMMUNITY TO HIM AT THIS

16     TIME.

17          THE COURT:  I SEE.

18        I GUESS, MS. SISKIND, I'M CURIOUS ABOUT ANY FIFTH

19     AMENDMENT ISSUE THAT HE MIGHT HAVE JUST BASED ON THE TESTIMONY

20     HERE.  HE'S A PERCIPIENT WITNESS TO MS. KATJU APPARENTLY.

21          MS. SISKIND:  YOUR HONOR, THERE ARE MATTERS THAT WE

22     WOULD EXPLORE ON CROSS-EXAMINATION THAT BEAR ON HIS CREDIBILITY

23     PERSONALLY THAT UNDOUBTEDLY WOULD INVOKE HIS FIFTH AMENDMENT

24     PRIVILEGE RELATING TO HIS PERSONAL CONDUCT AND TRUTHFULNESS IN

25     THE PAST AND CONDUCT WITH RESPECT TO TAX RETURNS AND THINGS OF

1    THAT NATURE THAT GO TO HIS CREDIBILITY AND THE WEIGHT THAT THE

2    JURY SHOULD GIVE THE TESTIMONY.

3        THOSE MATTERS WOULD BE EXPLORED ON CROSS-EXAMINATION AND

4    IN ADDITION TO MATTERS THAT BEAR DIRECTLY ON THE SUBSTANCE OF

5    THE TESTIMONY.  AND I AGREE WITH HIS COUNSEL'S INTERPRETATION

6    THAT THERE ARE FIFTH AMENDMENT ISSUES HERE.

7            THE COURT:  OKAY.  ALL RIGHT.

8            MR. WEINSTEIN:  JUDGE, I THINK -- I MEAN, I BELIEVE

9    THE GOVERNMENT HAS MADE IT VERY CLEAR THAT AS PART OF THEIR

10   CROSS-EXAMINATION THEY WILL ATTEMPT OBVIOUSLY TO ASK QUESTIONS

11   AND INQUIRE OF SUBJECT AREAS WHICH WILL CERTAINLY TOUCH UPON

12   FIFTH AMENDMENT.

13       I, ON BEHALF OF HIM, I REPRESENT TO YOU THAT I AM MOST

14   CONCERNED ABOUT THAT, AND HE IS CONCERNED ABOUT THAT.  AND I

15   DON'T THINK THAT HE WILL BE ABLE TO TESTIFY TO MANY OF THE

16   QUESTIONS THAT THEY ASK HIM AND THEREBY HE WOULD BE PREVENTED

17   FROM BEING ABLE TO FULLY AND COMPREHENSIVELY TESTIFY IN THIS

18   SITUATION.  AND THAT'S A PROBLEM, YOUR HONOR.

19           THE COURT:  I SEE.  AND SO IT SOUNDS LIKE THE ISSUE

20   THAT IS BEFORE THE COURT THEN IS ONE OF WHETHER OR NOT THE USE

21   OF IMMUNITY WOULD BE ORDERED AT THIS POINT BY THE COURT OR AT

22   LEAST ORDERED THROUGH THE GOVERNMENT BY THE COURT.

23           MR. WEINSTEIN:  THAT'S CORRECT, YOUR HONOR.  AND MY

24   READING OF THE STRAUB CASE IS THAT YOU HAVE THE DISCRETION TO

25   ORDER IT, AND I WOULD ASK THE COURT TO CONSIDER THAT AND, IN

1    FACT, ORDER IT.

2         I THINK, AS THE DEFENSE ATTORNEYS HAVE LAID OUT, THERE'S A

3    SIGNIFICANT BASIS TO DO SO.

4         I BELIEVE THIS CIRCUIT ESPECIALLY IS AMENABLE TO ARGUMENTS

5    ON JUDICIAL IMMUNITY, AND I THINK IT GIVES YOU, THE TRIAL JUDGE

6    HERE IN THE NORTHERN DISTRICT, THE DISCRETION IN THIS SITUATION

7    TO ALLOW FOR JUDICIAL IMMUNITY.

8         IT'S VERY CLEAR, AS DEFENSE COUNSEL HAS STATED, THAT MY

9    CLIENT HAS PERSONAL FIRST-HAND KNOWLEDGE OF MANY OF THE EVENTS

10   THAT ARE AT ISSUE HERE AS WELL AS THAT WILL BECOME AN ISSUE

11   DURING THE DIRECT AND CROSS-EXAMINATION.

12        AND SO I'M CONCERNED NOT ONLY FOR HIS PERSONAL KNOWLEDGE

13   OF IT AND HIS INABILITY TO TESTIFY ON THAT PERSONAL FIRST-HAND

14   KNOWLEDGE BECAUSE OF HIS INVOCATION OF THE FIFTH AMENDMENT.

15        SO I DON'T KNOW IF HIS TESTIMONY WOULD BE FULLY AND

16   COMPLETE IF HE DID NOT HAVE JUDICIAL IMMUNITY AT THIS POINT

17   BECAUSE HE WOULD BE ASSERTING HIS FIFTH AMENDMENT.

18             THE COURT:  THANK YOU.

19             MR. WEINSTEIN:  THANK YOU, JUDGE.

20             THE COURT:  MR. SCHAINBAUM, ANYTHING FURTHER?

21             MR. SCHAINBAUM:  NO, I JUST -- AS THEY WOULD SAY IN

22   THE PARLANCE TO HIS ARGUMENT AND STATEMENTS ONE WORD: DITTO.

23             THE COURT:  MS. SISKIND?

24             MS. SISKIND:  ONLY TO REMIND THE COURT THAT THIS IS

25   A VERY SIGNIFICANT THING THAT IS BEING REQUESTED HERE.  WHEN

1    COURTS GRANT IMMUNITY TO WITNESSES, IT'S ESSENTIALLY THE

2    JUDICIAL BRANCH HAVING THE POWER TO SINGLE HANDEDLY END THE

3    EXECUTIVE BRANCH INVESTIGATIONS, AND THAT'S SOMETHING THAT I

4    HOPE THE COURT CONSIDERS IN ITS ANALYSIS.

5              THE COURT:  THANK YOU.  ANYTHING FURTHER?

6              MR. WEINSTEIN:  NO.  MAY I RETURN, JUDGE?

7              THE COURT:  THANK YOU.

8              MR. WEINSTEIN:  THANK YOU FOR THE COURTESY OF

9    ARGUMENT, JUDGE.

10              THE COURT:  THANK YOU.  AND THANK YOU FOR BEING

11    HERE.

12         WELL, THIS IS -- AND THANK YOU FOR CITING THE CASES THAT

13    YOU DID.  THE CASE THAT MS. SISKIND CITED, THE STRAUB CASE, WAS

14    VERY HELPFUL.  AND, OF COURSE, NO TWO CASES ARE EVER THE SAME.

15    THEY'RE ALWAYS DIFFERENT, BUT WE LOOK TO PRECEDENT TO GIVE US

16    SOME TYPE OF GUIDANCE AS TO HOW TO PROCEED IN A PARTICULAR

17    MANNER.

18         LOOKING AT THE TWO-PRONG TEST HERE, WHICH THE COURT MUST

19    DO, THE FIRST PRONG IS EASIER, OF COURSE, THAN THE SECOND IN

20    THIS CASE AND THAT IS, IS THIS TESTIMONY RELEVANT?

21         AND I THINK I HAVE INDICATED PREVIOUSLY, AND BASED ON THE

22    REPRESENTATION AND PROFFER OF MR. SCHAINBAUM, THAT THIS

23    PARTICULAR TESTIMONY, WHICH IS IN THE FORM AND NATURE OF

24    IMPEACHMENT TESTIMONY, ONE OF THE GOVERNMENT'S FIRST WITNESS IN

25    THIS CASE, AND AS THE COURT PERCEIVES, A VERY IMPORTANT

1    WITNESS, ONE OF THE VERY IMPORTANT WITNESSES IN THIS PARTICULAR

2    CASE.

3          SO IT DOES HAVE A HIGH DEGREE OF RELEVANCE.  THE JURY IS

4    GOING TO WEIGH ALL OF THE CREDIBILITY, THE CREDIBILITY, EXCUSE

5    ME, OF ALL OF THE WITNESSES, AND MS. KATJU IS A VERY IMPORTANT

6    WITNESS FOR THE GOVERNMENT IN THAT REGARD.

7          AND THE JURY MUST DETERMINE HOW MUCH WEIGHT AND

8    CREDIBILITY TO GIVE TO HER TESTIMONY.  IMPEACHMENT TESTIMONY IS

9    IMPORTANT TO ASSIST THE JURY IN THAT TASK.  AND BASED ON THE

10   PROFFER BY MR. SCHAINBAUM, THE COURT FINDS THAT THERE IS

11   RELEVANCE TO THE IMPEACHMENT NATURE OF THIS PARTICULAR

12   TESTIMONY.

13         THE NEXT TEST IS WHETHER OR NOT, THERE'S TWO TESTS,

14   WHETHER OR NOT THE FIRST WOULD BE DID THE GOVERNMENT

15   INTENTIONALLY CAUSE A DEFENSE WITNESS TO INVOKE HIS FIFTH

16   AMENDMENT?  I SEE NO EVIDENCE OF THAT HERE.  THERE'S NO

17   EVIDENCE OF THAT HERE IN THIS PARTICULAR CASE.

18         WE DO KNOW THAT THE GOVERNMENT DID, DID OFFER CERTAIN

19   BENEFITS TO OTHER WITNESSES, NONPROSECUTION AGREEMENTS TO OTHER

20   WITNESSES WHO TESTIFIED.  MS. KATJU WAS ONE OF THEM WHO

21   RECEIVED THAT.

22         HOWEVER, ON EXAMINATION, I THINK MS. SISKIND SEEMED TO

23   INDICATE THAT, AND THE WITNESS SEEMED TO INDICATE, THAT THERE

24   WAS NO CONNECTION OR EXCHANGE FOR HER TESTIMONY NOR

25   AARTI KUMAR'S TESTIMONY FOR RECEIPT OF THAT BENEFIT.

1           THE ALTERNATIVE PRONG, I SUPPOSE, IS WHETHER OR NOT -- I

2    THINK THE COURT IN STRAUB REFERRED TO IT AS A SELECTED DENIAL

3    OF IMMUNITY HAD THE EFFECT AND HAS THE EFFECT OF DISTORTING THE

4    FACT FINDING PROCESS.  AND THAT'S REALLY WHERE THE FOCUS OF, I

5    THINK, THIS COURT'S SCRUTINY AND YOUR ARGUMENTS SHOULD BE IN

6    THAT REGARD.

7           AND I'M HAPPY TO INVITE YOU TO COMMENT AS TO THAT SECOND

8    ALTERNATIVE PRONG ALSO AS TO WHETHER OR NOT THIS DENIAL OF

9    IMMUNITY HAS THE EFFECT OF DISTORTING THE FACT FINDING PROCESS.

10          AND I'M HAPPY TO HEAR, MR. SCHAINBAUM, DO YOU WANT TO GO

11   FIRST, SIR?

12             MR. SCHAINBAUM:  RIGHT.  IT DOES DENY AND DISTORT

13   THE FACT FINDING PROCESS BECAUSE MS. KATJU TESTIFIED NUMEROUS

14   TIMES AND NUMEROUS WAYS ABSOLUTELY NO SCHEME, ABSOLUTELY NO

15   STRATEGY, I CAN'T RECALL, I DON'T REMEMBER.  THIS WITNESS IS

16   PERCIPIENT AND IS PART OF THE OVERALL LEVELING OF THE PLAYING

17   FIELD TO HAVE A FAIR TRIAL.

18          I THINK THE NINTH CIRCUIT EMPHASIZED THAT THE IMPORTANCE

19   OF THIS PARTICULAR PRONG IS TO MAKE SURE THAT WE HAVE A

20   CONSTITUTIONALLY FAIR TRIAL.

21          THEY EVEN WENT OUT OF THEIR WAY IN THE ARGUMENT TO SAY

22   EVEN CERTAIN RULES OF EVIDENCE AND PRIVILEGES COULD BE SET

23   ASIDE FOR THE PURPOSES OF HAVING A FAIR TRIAL.

24          SO WITH THE ELEMENT OF DIRECT CONTRADICTION ESTABLISHED

25   HERE AND BECAUSE HE'S PERCIPIENT, IT WOULD ONLY BE A FAIR TRIAL

1    FOR THE JURY TO WEIGH, AS THE COURT SAID, ALL OF THE WITNESSES

2    AND ALL OF THE FACTS AND EVENTS TO DETERMINE WHAT REALLY

3    HAPPENED, IN SHORT, THE TRUTH OF THE MATTER HERE, THE TRUTH OF

4    THE CIRCUMSTANCES AND THAT BEARS ON ULTIMATELY WILLFULNESS.

5         THE GOVERNMENT'S CASE HAS GOT TO PROVE BEYOND A REASONABLE

6    DOUBT THAT ALL OF THE CONDUCT HERE WAS WILLFULNESS BY THE

7    DEFENDANT, AND WE'RE ENTITLED TO SHOW THAT HE WAS NOT IN ANY

8    WAY WILLFULNESS.

9         SO TO ME THE EFFECT OF DENYING THE ABILITY OF MR. MATHEWS

10   TO TESTIFY DENIES THE ABILITY TO GET AT THE TRUTH OF THE

11   MATTER, AND IT DOESN'T LEVEL THE PLAYING FIELD.

12        IT'S THE SAME THING WITH STRAUB.  THEY HAD 11 WITNESSES

13   WHO SAID WHATEVER, AND THEY HAD 1 WITNESS WHO WAS CONTRADICTORY

14   AND THE NINTH CIRCUIT SAID IT IS IMPORTANT TO HAVE THAT WITNESS

15   TESTIFY, OTHERWISE THE FACT FINDING PROCESS WAS DISTORTED.  AND

16   I SAID BY ANALOGY, THE SAME CIRCUMSTANCE EXISTS HERE.

17             THE COURT:  SO, MR. SCHAINBAUM, I'D LIKE YOU TO

18   COMMENT A LITTLE BIT ON THE, I SUPPOSE, THE -- WHAT THE COURT

19   IS BEING ASKED TO DO, WHICH IS IN EFFECT TO STEP OVER THE

20   SEPARATION OF GOVERNMENT, AND ASK THE GOVERNMENT HERE AND TO

21   ORDER THEM TO GRANT IMMUNITY TO A CASE WHICH IN ESSENCE JUST

22   COMPLETELY ELIMINATES A POSSIBLE CRIMINAL PROSECUTION THAT THEY

23   MIGHT HAVE AGAINST SOMEBODY WHO NOTWITHSTANDING THE FACT ENJOYS

24   THE PRESUMPTION OF INNOCENT.

25             NONETHELESS, THE GOVERNMENT ENJOYS THE OPPORTUNITY TO

1    CROSS-EXAMINE SOMEBODY IF THEY FEEL THAT THAT PERSON HAS

2    VIOLATED STATUTES OR LAWS OF THE GOVERNMENT.

3         AND YOU'RE ASKING ME TO BASICALLY TELL THE GOVERNMENT, AND

4    TO PUT IT IN THE VERNACULAR, TO GIVE SOMEBODY A PASS.  THAT'S

5    PRETTY SIGNIFICANT, WOULDN'T YOU AGREE?

6              MR. SCHAINBAUM:  YOU KNOW, THIS BRINGS UP AN

7    INTERESTING VIEW.  YOU ARE A JUDICIAL BRANCH.  THE GOVERNMENT

8    IS IN THE EXECUTIVE BRANCH.  THEY HAVE HAD SO MANY OPTIONS IN

9    DOING WHAT THEY SAY THEY WERE GOING TO DO AND DOING WHAT THEY

10   SAY THAT THEY HAVEN'T DONE.

11        MR. MATHEW IS NOT A NEW PERSON.  IT GOES BACK.  THEY HAVE

12   KNOWN ABOUT HIM FOR A LONG TIME.  MS. KATJU IS NOT A NEW PERSON

13   EITHER.  MS. KUMAR -- MS. KATJU IS A BETTER EXAMPLE BECAUSE

14   THEY'VE ALREADY PUT HER UP ON THE WITNESS STAND IN WISCONSIN

15   AND HAD HER TESTIFY AND SELECTIVELY KEPT AWAY FROM THIS AREA.

16        I THINK IT'S EASY FOR ME TO SAY HERE, HAVING ALSO BEEN AT

17   THE DEPARTMENT OF JUSTICE FOR A LONG TIME, IT'S -- IN THIS CASE

18   THIS KIND OF EXECUTIVE DECISION IS REALLY IN THE CONTEXT OF

19   FAIRNESS, IN THE CONTEXT OF WHAT TO DO RIGHT.  IT'S NOT WHAT

20   THE JUSTICE DEPARTMENT IS SAYING, IT'S NOT TO WIN OR LOSE.

21   IT'S TO BE FAIR AND JUST.

22        AND IN THIS CASE IT'S ONLY FAIR TO HAVE ALL OF THE TRUTH

23   COME OUT AND SEE WHAT THE JURY DOES.  I DON'T BELIEVE IT'S A

24   BIG SACRIFICE THAT MR. MATHEW IS GOING TO GET IMMUNITY, AND

25   THAT -- I DON'T KNOW WHETHER IT'S GOING TO COVER IT.  USE

1      IMMUNITY REALLY JUST COVERS WHAT YOU USE AND THE ISSUES

2      INVOLVED HERE.  MAYBE MR. MATHEW HAS OTHER PROBLEMS, MAYBE HE

3      DOESN'T.

4          BUT IN THE LONG, BIG PICTURE OF THE CONSTITUTION AND WHAT

5      IS FAIR AND JUST, IT'S A NO-BRAINER.  YOU'RE NOT STEPPING INTO

6      WHAT THE DEPARTMENT OF JUSTICE ON ITS OWN SHOULD HAVE DONE.  I

7      MEAN, I TALK A LITTLE BIT ABOUT THAT WITH SOME FASHION BECAUSE

8      OF MY OWN HISTORY.

9          SO IN ALL FAIRNESS, TO GET A TRUTHFUL TRIAL -- I MEAN,

10     THIS DEFENDANT IS FACING EIGHT FELONY CHARGES.  THEY ACTUALLY

11     CHARGED HIM.  THEY HAVEN'T CHARGED MR. MATHEW, AND THEY HAVE

12     KNOWN ABOUT HIM FOR SEVERAL YEARS.

13              THE COURT:  AND IF I GRANT THIS IMMUNITY REQUEST,

14     THEY WILL NEVER BE ABLE TO.

15              MR. SCHAINBAUM:  YOUR HONOR, I'M NOT AS SMART AS YOU

16     ARE.  I DON'T KNOW THAT.  I DON'T KNOW IF MS. SISKIND KNOWS

17     THAT.  I DON'T KNOW WHAT CHARGES THAT THEY'RE LOOKING AT, IF

18     ANY.  I DON'T KNOW WHAT HIS VALUE TO THEM IS IN THE GRAND JURY

19     IN SOUTH FLORIDA.  I REALLY DON'T KNOW.

20         ALL I KNOW IS ABOUT THIS CASE AND THIS EVIDENTIARY

21     PROCEEDING AND THE QUEST FOR TRUTH AND JUSTICE AND FAIRNESS,

22     AND THAT'S ALL I THINK THE COURT SHOULD BE ATTUNED TO.

23         I DON'T THINK THAT YOU'RE INVADING ON THE EXECUTIVE

24     BRANCH.  I THINK IN REALITY, THAT'S WHAT THE NINTH CIRCUIT CAME

25     OUT WITH THE STRAUB CASE AND PAINFULLY WENT THROUGH THE

1    ANALYSIS.

2         I THINK THAT THIS IS CLEARLY, SQUARELY WITHIN STRAUB.  AND

3    WHETHER OR NOT THEY CAN INDICT HIM OR CHARGE HIM OR EVER WANT

4    TO CHARGE HIM REMAINS STILL THEIR EXECUTIVE DECISION.

5         BECAUSE MS. SISKIND HAS NOT SAID, WELL, HERE ARE THE

6    CHARGES THAT WE WERE GOING TO DO, AND WE CAN'T DO THEM.

7         NOW, IF SHE ADDRESSED THAT, I COULD ADDRESS YOU BETTER AND

8    TELL YOU, WELL, MAYBE THEY CAN'T DO THAT BUT MAYBE THEY CAN

9    CHARGE HIM WITH THIS OTHER CHARGE IF APPLICABLE.

10        BUT THE CRITERIA HERE IS WHAT IS RIGHT?  AND WHAT IS RIGHT

11   CONSTITUTIONALLY AND WHAT IS FAIR AND TO HAVE A SIXTH

12   AMENDMENT, FIFTH AMENDMENT CONSTITUTIONAL DUE PROCESS FAIR

13   TRIAL, AND I THINK TO LEVEL THE PLAYING FIELD.

14        THEY PUT VANDANA KATJU UP.  THEY PUT AARTI KUMAR UP.  THEY

15   GAVE THEM THE NONPROSECUTION AGREEMENT.  THEY GAVE THEM THE

16   SWEETHEART DEAL WITH OVDI.  WE SHOULD AT LEAST BE ABLE TO HAVE

17   CONTRADICTORY EVIDENCE THROUGH A WITNESS WHO IS NOT FEARFUL OF

18   HIS OWN FIFTH AMENDMENT RIGHTS.

19             THE COURT:  OKAY.  THANK YOU.  MS. SISKIND.

20             MS. SISKIND:  THE ISSUE THE COURT ASKED US TO

21   ADDRESS IS WHETHER NOT GRANTING IMMUNITY TO MR. MATHEW WOULD

22   DISTORT THE FACT FINDING PROCESS.

23        AND I THINK THE FACTS IN STRAUB ARE A CLEAR EXAMPLE UNDER

24   WHICH NOT GRANTING IMMUNITY TO THE DEFENSE WITNESS WOULD HAVE

25   DESTROYED THE FACT FINDING PROCESS.  BECAUSE HE WAS, AS THE

1    COURT POINTS OUT, THE ONLY WITNESS WHO WAS CAPABLE OF PROVIDING

2    CONTRADICTORY TESTIMONY TO THE GOVERNMENT WITNESS.

3         THAT'S NOT THE FACTS TO THIS CASE.  THE DEFENSE HAS

4    ALREADY CALLED ONE WITNESS SO FAR, AND THERE MAY BE OTHER

5    OTHERS, WHO WAS ABLE TO CONTRADICT SOMETHING VANDANA KATJU

6    SAID.

7         SO THIS IS NOT THE KIND OF STARK SITUATION THAT WAS

8    EXISTING IN STRAUB WHERE IT WAS THE DEFENSE'S ONLY SHOT OF

9    ATTACKING A CRUCIAL GOVERNMENT WITNESS.

10        AND THE COURT RECOGNIZES THE IMPORTANCE OF MS. KATJU IN

11   THIS CASE.  AND THE DEFENSE HAS ALREADY STARTED DOWN THE PATH

12   OF IMPEACHING HER THROUGH CONTRADICTION, THIS WITNESS ON FRIDAY

13   BEING AN ABSOLUTE PRIME EXAMPLE OF THAT.

14        THE OTHER REASON WHY DENYING IMMUNITY TO MR. MATHEW WOULD

15   NOT DISTORT THE FACT FINDING PROCESS IS BECAUSE THERE'S A

16   CERTAIN EXTENT TO WHICH THE CONTRADICTION AT THE OFFERING IS

17   GOING TO BE COLLATERAL TO THE FACTS AT ISSUE IN THIS CASE.

18        IF HE TESTIFIES AS MR. SCHAINBAUM PROFFERED, HE WOULD

19   CONTRADICT MS. KATJU ABOUT WHETHER THERE WAS A SCHEME, WHETHER

20   SHE WAS AWARE OF THE SCHEME.  IT STILL DOES NOT GET US TO WAS

21   THE DEFENDANT A VICTIM OF THE SCHEME?

22        NOW, IF HE WAS GOING TO TAKE THE STAND AND SAY I HEARD

23   MS. KATJU TELL MR. DESAI HIS ACCOUNT WAS NOT TAXABLE, THAT'S A

24   VERY DIFFERENT SITUATION BECAUSE IT GOES TO THE HEART OF WHAT

25   WE'RE TALKING ABOUT IN THIS CASE AND THAT'S THIS DEFENDANT'S

1    STATE OF MIND AND HIS WILLFULNESS.

2         BUT TO THE EXTENT THAT HE'S GOING TO PROVIDE ANY

3    CONTRADICTORY TESTIMONY, IT'S ON A MATTER THAT IS SLIGHTLY

4    REMOVED FROM THAT CORE ISSUE.  IT'S ABOUT WHETHER THERE WAS

5    SOME BROADER SCHEME AND AS THE COURT CONTINUES TO POINT OUT,

6    THERE'S BEEN NO NEXUS TO CONNECT SUCH A SCHEME TO THE

7    DEFENDANT.

8         SO I WOULD SUBMIT, NO, IT WOULD NOT DISTORT THE FACT

9    FINDING PROCESS BECAUSE IT DOES NOT GO TO THE CORE ISSUES OF

10   WILLFULNESS IN THIS CASE.

11        AND WHILE I RECOGNIZE THAT THE SEPARATION OF POWERS ISSUE

12   IS NOT AN ELEMENT OF THE STRAUB TEST, THE COURT TALKED ABOUT IT

13   FIRST BEFORE GOING INTO THE ANALYSIS.  AND IT'S CERTAINLY THE

14   BACKDROP AGAINST WHICH THE COURT SHOULD MAKE ITS DECISION.

15             THE COURT:  ALL RIGHT.  THANK YOU.

16             MR. SCHAINBAUM:  YOUR HONOR, MR. MATHEW IS AN

17   EXTRAORDINARY WITNESS WITH PERCIPIENT DETAILED KNOWLEDGE, AND

18   SO FAR I DON'T BELIEVE THAT THE GOVERNMENT HAS CITED WHICH

19   WITNESS SHE BELIEVES WE WOULD CALL THAT WOULD HAVE THE SAME

20   EXTRAORDINARY KNOWLEDGE OF, YOU KNOW, WHAT OCCURRED AND

21   VANDANA KATJU'S PRECIPITATION.

22        AND, AGAIN, I SAY TO YOU THERE IS DIRECT AND

23   CIRCUMSTANTIAL EVIDENCE WHICH PROVES A CASE.  MR. MATHEW FALLS

24   SQUARELY WITHIN BOTH DIRECT AND CIRCUMSTANTIAL EVIDENCE AS TO

25   HOW THIS SCHEME OPERATED AND BY INFERENCE YOU COULD ATTRIBUTE

1    OR NOT, BUT IT'S FOR THE JURY WHETHER MR. DESAI WAS WITHIN THE

2    CLASS OF VICTIMS.

3         BUT PRIMARILY, YOU HAVE -- THE NINTH CIRCUIT HAD NO

4    PROBLEM WITH THE EXECUTIVE ONCE THEY DID THEIR ANALYSIS OF THE

5    TWO PRONG TEST.  AND HERE IT'S CLEAR THAT MR. MATHEW IS INSIDE

6    OF THE BANK AND HE IS VERY PERCIPIENT TO WHAT HAS HAPPENED.

7              THE COURT:  BUT THAT'S -- THAT IN AND OF ITSELF IS

8    NOT RELEVANT.

9         WHAT IS RELEVANT FOR THE TESTIMONY IS THAT YOU MADE YOUR

10   PROFFER, MR. SCHAINBAUM, IS THAT THIS WITNESS HAD INTIMATE

11   CONVERSATIONS WITH A PREVIOUS WITNESS AND HE CAN IMPEACH THAT

12   WITNESS'S TESTIMONY.  THAT'S WHAT -- THAT'S THE VALUE, I THINK,

13   AND THE RELEVANCE OF THIS PARTICULAR PIECE OF TESTIMONY.

14        I JUST DON'T WANT TO MISLEAD YOU INTO THINKING THAT THIS

15   WITNESS IS GOING TO COME IN AND HE'S GOING TO BE ABLE TO

16   TESTIFY ABOUT SOME GRAND SCHEME OR A SCHEME.  THE VALUE OF THIS

17   WITNESS IS AN IMPEACHMENT WITNESS.  HE'S GOING TO IMPEACH OR HE

18   WOULD IMPEACH, IF HE WERE TO TESTIFY, HE WOULD IMPEACH THE

19   STATEMENTS OF VANDANA KATJU.  THAT'S WHAT HE WOULD DO.

20        NOW, IT MAY BE THAT HE'LL TESTIFY IN HIS TESTIMONY

21   EXPLAINING THAT HE MAY TOUCH ON SOMETHING ELSE, BUT HE'S NOT

22   GOING TO GET ON THE STAND AND SAY, YES, I'M AN EMPLOYEE AT THE

23   BANK, WERE HE TO TESTIFY, I'M AN EMPLOYEE AT THE BANK AND THERE

24   WAS A SCHEME AND HERE'S WHAT THE SCHEME IS.  OH, AND BY THE

25   WAY, I ALSO TALKED TO VANDANA KATJU ABOUT THIS.

```
 1          DO YOU SEE WHAT I'M SAYING?

 2              MR. SCHAINBAUM:  YES, I HEAR WHAT YOU'RE SAYING.

 3     YES.  BUT HE MIGHT TESTIFY HAVING PERSONAL CONTACTS, AND

 4     ESPECIALLY WITH MS. KATJU, HERE ARE THE ELEMENTS OF WHAT WE

 5     TALKED ABOUT.

 6              THE COURT:  WELL, THAT GETS DOWN TO THAT ISSUE ABOUT

 7     HER KNOWLEDGE AND HER IMPEACHMENT, WHICH WOULD BE CONTRARY TO

 8     HER TESTIMONY ABOUT KNOWLEDGE ABOUT THIS, AND THAT'S GOING TO

 9     BE -- I THINK WE'VE HEARD FROM THE GOVERNMENT, THAT'S GOING TO

10     BE A SURGICAL TYPE PROCESS, IT SOUNDS LIKE.  IT'S GOING TO BE A

11     VERY THIN VENEER, EACH QUESTION, AND IT SOUNDS LIKE WE'LL ALL

12     BE CALLED TO LOOK AT THE RULES OF EVIDENCE IF THERE ARE

13     OBJECTIONS AS TO THAT, SOME OF THOSE QUESTIONS.

14          IT MIGHT BE OUTSIDE, SHALL WE SAY, THE NATURE OF

15     IMPEACHMENT.

16              MR. SCHAINBAUM:  RIGHT.  BUT INCLUSIVE IN

17     IMPEACHMENT YOU HAVE TO -- SHE FLAT OUT ABSOLUTELY SAID NO

18     STRATEGY, NO SCHEME.

19          AND HE, IN SAYING I KNOW THAT THAT'S DIFFERENT, AND HERE'S

20     WHY I KNOW, AND LAYS OUT WHAT HE KNOWS THAT SHE KNOWS.

21              THE COURT:  WELL, AGAIN, THERE HAS TO BE SOMETHING

22     THAT SHE SHARES THAT KNOWLEDGE.

23              MR. SCHAINBAUM:  RIGHT.

24              THE COURT:  AND THERE HAS TO BE SOMETHING VERY CLEAR

25     TO ESTABLISH THAT SHE SHARES THAT KNOWLEDGE AND HE HAS
```

```
 1    INFORMATION AS TO HOW SHE SHARES THAT KNOWLEDGE.  I'M NOT

 2    TRYING TO FRAME THE CONCEPT HERE, BUT I GUESS WHAT I'M

 3    SUGGESTING IS THAT THIS IS NOT AN OPEN DOOR.  IT'S A VERY

 4    PROFOUND REMEDY THAT YOU'RE ASKING AND THAT THE PARTIES ARE

 5    PUTTING BEFORE THE COURT NOW, AND I TAKE MS. SISKIND'S COMMENTS

 6    SERIOUSLY.

 7              MR. SCHAINBAUM:  I TAKE IT SERIOUSLY ALSO.  AND, YOU

 8    KNOW, I HAVE EXPRESSED TO YOU THAT, ONCE AGAIN, THE DEPARTMENT

 9    OF JUSTICE SHOULD HAVE DONE IN AN EXECUTIVE MANNER WHAT THE

10    COURT IS CONSIDERING.

11         AND IT'S CLEAR FROM THE WHOLE TOTAL OF CIRCUMSTANCES, YOU

12    CAN'T PUT YOUR HEAD IN THE SAND AND TURN AWAY FROM WHAT THE

13    CIRCUMSTANCES ARE.

14              THE COURT:  THAT'S ONE INTERPRETATION OF THEIR

15    CONDUCT, I SUPPOSE.

16              MR. SCHAINBAUM:  PARDON ME.

17              THE COURT:  THAT'S ONE INTERPRETATION OF THEIR

18    CONDUCT, I SUPPOSE, BUT I'M CERTAIN THERE ARE MANY OTHERS THAT

19    GUIDE THEIR DECISION.

20              MR. SCHAINBAUM:  WELL, I WOULD JUST FOLLOW THE

21    DICTATE THE NINTH CIRCUIT IN STRAUB.

22              THE COURT:  ANYTHING FURTHER, MS. SISKIND?

23              MS. SISKIND:  NO, YOUR HONOR.

24              THE COURT:  THIS IS A VERY DIFFICULT PROBLEM THAT

25    YOU HAVE PLACED BEFORE THE COURT.  ON THE ONE HAND WE DO HAVE
```

1    TO WEIGH THIS SEPARATION OF POWERS, AND THIS IS A VERY UNIQUE,

2    UNIQUE REMEDY THAT HAS BEEN ASKED AND PUT UPON THE COURT.  THE

3    COURT HAS TO BALANCE AND MUST BALANCE, AND I THINK THE

4    GOVERNMENT CONCEDES THIS, THERE HAS TO BE FAIRNESS IN THE

5    TRIAL.  THERE HAS TO BE FAIRNESS IN THE TRIAL.  I HAVE ALREADY

6    INDICATED THAT THERE'S NO SHOWING THAT THERE IS ANY INTENTIONAL

7    ACTION OR CONDUCT BY THE GOVERNMENT.

8        SO REALLY WHAT WE'RE LOOKING AT, WHAT THIS COURT IS

9    LOOKING AT, IS IF THIS WITNESS IS NOT GOING TO GET TO TESTIFY,

10   WOULD THERE BE A DISTORTION OF THE FACT FINDING PROCESS?  I

11   HAVE TALKED ABOUT THE VALUE OF THE FIRST WITNESS THAT THE

12   GOVERNMENT CALLED, WHICH IS MS. KATJU.

13       THIS WITNESS IS GOING TO BE CALLED TO, IN ESSENCE, IMPEACH

14   STATEMENTS SHE MADE ABOUT HER KNOWLEDGE OF CERTAIN CONDUCT OF

15   THE BANK.  IT SOUNDS LIKE THAT'S THE PROFFER THAT

16   MR. SCHAINBAUM WAS MAKING.

17       ANS AS HE INDICATES, THAT IF THE JURY DOES NOT RECEIVE

18   THIS EVIDENCE, CRITICAL IMPEACHMENT EVIDENCE OF A WITNESS,

19   THEY, THE JURY, WOULD NOT, WOULD NOT BE ABLE TO JUDGE FULLY THE

20   NATURE AND QUALITY AND CHARACTER OF HER TESTIMONY.

21       AND I AGREE WITH THAT.  I THINK THAT THIS TESTIMONY IS

22   IMPEACHMENT, LIMITED IMPEACHMENT TESTIMONY THAT IT IS, REALLY

23   GOES TO THE HEART OF ONE OF THE GOVERNMENT'S CRITICAL WITNESSES

24   AND TO NOT ALLOW A JURY TO AT LEAST HEAR IMPEACHMENT TESTIMONY

25   ABOUT THAT WOULD DISTORT THE FACT FINDING PROCESS.

1          SO I DO FIND THAT THE SECOND ALTERNATIVE, THE SECOND PRONG

2     HAS BEEN MET IN THE STRAUB CASE AS WELL.  SO THAT WOULD BE MY

3     FINDING.

4          MS. SISKIND, I SUPPOSE YOU NEED TO ACT ACCORDINGLY?

5               MS. SISKIND:  YES, YOUR HONOR.  AND I THINK I'VE

6     INDICATED DURING SOME PRETRIAL HEARINGS WE WOULD NEED A TWO-DAY

7     TURNAROUND ON THAT.  THE PROCESS HAS ALREADY BEEN STARTED, BUT

8     I NEED TO TAKE WHAT YOUR HONOR RULED TODAY AND PUT IT IN THE

9     APPLICATION.

10         THE TAX DIVISION DOES NOT HAVE INDEPENDENT AUTHORITY TO

11    GRANT IMMUNITY.  IT HAS TO GO THROUGH THE CRIMINAL DIVISION OF

12    THE DEPARTMENT OF JUSTICE.  SO THAT PROCESS WILL BE COMPLETED

13    AS SOON AS WE LEAVE COURT TODAY.

14               THE COURT:  OKAY.

15               MS. SISKIND:  AND I CAN'T PROMISE THAT WE'LL HAVE IT

16    DONE IN TIME FOR THIS WITNESS TO TESTIFY TOMORROW.

17               THE COURT:  UNDERSTOOD.

18         RECOGNIZING THAT, AND FOR PURPOSES OF PROCEEDING,

19    MR. SCHAINBAUM, DO YOU HAVE OTHER WITNESSES TO CALL FOR

20    TOMORROW?

21               MR. SCHAINBAUM:  WELL, WE DO HAVE A LITTLE

22    HOUSEKEEPING PROBLEM.  OUR EXPERT WITNESS, MARK MATTHEWS, HAS

23    TO BE IN ATLANTA TONIGHT AND HE'S GOING TO BE LEAVING --

24               THE COURT:  I THOUGHT IT WAS LOS ANGELES.

25               MR. SCHAINBAUM:  NO, THAT'S MR. LAFFER.

```
1                    THE COURT:  OH.

2                    MR. SCHAINBAUM:  THERE'S ANOTHER WITNESS NAMED, NOT

3       TO BE CONFUSED WITH MR. MATHEW, IT'S MARK MATTHEWS, FORMER

4       DEPARTMENT OF JUSTICE CHIEF, FORMER CHIEF OF C I.D.

5                    THE COURT:  OKAY.

6                    MR. SCHAINBAUM:  HE WAS AN EXPERT.  HE WILL BE HERE

7       SOME TIME TUESDAY MORNING, WHEN EXACTLY I DON'T KNOW.

8                    THE COURT:  TOMORROW MORNING?

9                    MR. SCHAINBAUM:  YES.  COULD I SUGGEST SOMETHING?

10      AND THEN I'LL HAVE TO REVIEW THE LIST, BUT THAT'S WHAT WAS

11      GOING TO HAPPEN.

12          IS THERE ANY WAY LET'S SAY THAT THE COURT CAN

13      PROVISIONALLY ON A CONDITION SUBSEQUENT GRANT IMMUNITY TO BE IF

14      THE CONDITION SUBSEQUENT ARISES WHERE THE DEPARTMENT OF JUSTICE

15      COMES THROUGH WITH THEIR ADMINISTRATIVE IMMUNITY, THEN THEIR

16      IMMUNITY TAKES OVER AND THE COURT'S ORDER IS SATISFIED TO BE

17      WITHDRAWN OR NULLIFIED?

18                   THE COURT:  I'M NOT COMFORTABLE DOING THAT.

19                   MR. SCHAINBAUM:  OKAY.  IT WAS JUST A THOUGHT.

20                   THE COURT:  NO.  IT'S A CREATIVE THOUGHT, BUT I

21      DON'T HAVE FEEL COMFORTABLE DOING IT THAT WAY.

22                   MR. SCHAINBAUM:  OKAY.

23                   THE COURT:  BUT I APPRECIATE THE OFFER.

24                   MS. SISKIND:  SO I UNDERSTAND THAT MR. MARK MATTHEWS

25      WILL BE THE FIRST WITNESS UP TOMORROW?
```

```
 1              MR. ALLEN:  NOT UNTIL NOON.

 2              MS. SISKIND:  SO WHO WILL BE THE FIRST WITNESS UP

 3    TOMORROW?

 4              THE COURT:  I'VE ASKED THE JURY TO RETURN AT 9:30

 5    TOMORROW MORNING.

 6              MR. SCHAINBAUM:  WE WOULD THEN BRING THE TWO

 7    WITNESSES WHO WERE HERE THIS MORNING, MR. RAVI GONDIPALLI WHO

 8    HAD HIS LAWYER HERE WHO APPROACHED THE BENCH.

 9              THE COURT:  MR. STEPANIAN?

10              MR. SCHAINBAUM:  CORRECT, AND MR. BANERJEE.

11              MS. SISKIND:  AND I THINK THE COURT AS OF ABOUT AN

12    HOUR AND A HALF AGO SAID YOU WERE NOT GOING TO PERMIT THEM TO

13    TESTIFY.

14              THE COURT:  WELL, I DON'T THINK I STATED THAT

15    SPECIFICALLY.

16              MS. SISKIND:  WELL, AT THIS POINT IN TIME.

17              THE COURT:  THAT'S RIGHT, I DID SAY AT THIS POINT IN

18    TIME AND I WOULD CONTINUE WITH THAT, MR. SCHAINBAUM, FINALLY.

19    I'M NOT SAYING THAT THEY'RE NOTE PERMITTED TO TESTIFY, BUT I

20    THINK YOU HAVE HEARD ME TALK ABOUT THE CONDITION PRECEDENT THAT

21    WOULD BE REQUIRED AT LEAST IN MY JUDGMENT BEFORE THEIR

22    TESTIMONY WOULD BE PERMITTED.

23              MR. SCHAINBAUM:  THAT'S RIGHT.  ANOTHER ISSUE,

24    MR. ALLEN ADVISES ME THAT ONE DOMINIC O'HAGAN AND BASANT KEDIA

25    WILL COME.
```

```
 1                MS. SISKIND:  AND WE'RE GOING TO HAVE RELEVANCE

 2    OBJECTIONS TO BOTH OF THEIR TESTIMONY?

 3                THE COURT:  OKAY.  LET'S GO THROUGH THAT THEN.

 4    O'HAGAN, WHAT IS YOUR PROFER ON O'HAGAN?

 5                MR. SCHAINBAUM:  THAT'S INTERESTING.  O'HAGAN CLAIMS

 6    THAT HE DOESN'T KNOW TOO MUCH OR HE KNOWS VERY LITTLE OR HE

 7    DOESN'T KNOW ANYTHING ABOUT NRI STRATEGY OR HOW IT OPERATES.

 8         THERE'S A LETTER THAT WE ALREADY SUBMITTED WHERE HE USES

 9    THE TERM "DUAL HEADER."  SO HE'S ANOTHER IMPEACHMENT WITNESS

10    FOR VANDANA KATJU AND AARTI KUMAR.

11                MS. SISKIND:  ONLY IF HE HAS A CONNECTION TO

12    VANDANA KATJU.

13                THE COURT:  IS THERE ANY EVIDENCE THAT HE WOULD

14    TESTIFY THAT HE AND VANDANA KATJU HAD CONVERSATIONS ABOUT THIS

15    AND THAT SHE TESTIFIED, OR EXCUSE ME, THAT SHE MADE A STATEMENT

16    TO HIM WITH KNOWLEDGE OF THIS SCHEME AND OTHER THINGS?  IS

17    THERE ANY EVIDENCE OF THAT?  I THINK THAT WOULD BE THE

18    CONNECTION?

19                MR. SCHAINBAUM:  I CAN'T MAKE THAT STATEMENT BECAUSE

20    MR. O'HAGAN IS REALLY UNDER THE OLD WAY I WOULD CALL HIM AS AN

21    ADVERSE WITNESS, AND HE'S SOMEWHAT HOSTILE.

22         HE'S REPRESENTED, BY THE WAY, BY LARRY HILL, WHO

23    REPRESENTS VANDANA KATJU AND REPRESENTS AARTI KUMAR.  SO I

24    BROUGHT THAT TO THE COURT'S ATTENTION.

25         AND THEN MR. BASANT KEDIA, THE OTHER WITNESS, IS ALSO
```

1      REPRESENTED BY LARRY HILL.

2              THE COURT:  YES.

3              MR. SCHAINBAUM:  BUT BASANT KEDIA IS ON THAT TAPE

4      RECORDING AND HE DOES HAVE KNOWLEDGE.

5          TO THE EXTENT THAT I WOULD HAVE TO REVIEW THE TAPE

6      RECORDING AND ACTUALLY IN LOGICAL PLACE, IT WOULD BE BETTER TO

7      HAVE MR. MATHEW TESTIFY FIRST AND THEN BASANT KEDIA AND

8      DOMINIC O'HAGAN.

9          BUT I DON'T WANT TO HAVE THE JURY, YOU KNOW, NOT HAVE

10     SOMETHING TO LISTEN TO IF WE COULD DO THAT.  I'M VERY SENSITIVE

11     TO THAT.

12         SO IF -- IT'S SORT OF A PERPLEXING PROBLEM.

13             THE COURT:  I'M NOT SURE THAT JUST BASED ON YOUR

14     PROFFER THAT O'HAGAN'S TESTIMONY IS RELEVANT OR ADMISSIBLE.  SO

15     MAYBE YOU SHOULD SPEAK TO THAT.  WHAT IS YOUR PROFFER?

16             MR. SCHAINBAUM:  WELL, IT WOULD BE RELEVANT AND

17     ADMISSIBLE BECAUSE HE DOES KNOW, AS THE COURT, I THINK, SAID HE

18     PROBABLY KNOWS MORE THAN WHAT HE PUT IN HIS DECLARATION.  I

19     MEAN, WE PROVIDED A LETTER TO SHOW THAT.

20         SO HIS EXPLANATION MIGHT BE SHORT, BUT IT WOULD BE IN

21     TERMS OF GETTING OUT WHAT HE REALLY KNOWS.  AND SO THAT'S WHY I

22     DON'T KNOW AT THIS POINT WHAT, IF ANY, CONVERSATIONS HE HAD

23     WITH VANDANA KATJU.

24         I CAN ONLY SURMISE THAT HE DID BECAUSE HE WAS THE HEAD OF

25     THE WEST COAST RETAIL OPERATION.

1        THE COURT:  SO, AGAIN, HERE AGAIN, IF HE HAD DIRECT

2   CONVERSATIONS WITH VANDANA KATJU AND SHE SAID SOMETHING IN

3   THOSE CONVERSATIONS THAT WAS CONTRARY TO HOW SHE TESTIFIED HERE

4   AT THE TRIAL, THAT, TOO, WOULD BE CLASSIC IMPEACHMENT TESTIMONY

5   AND IT WOULD BE ADMISSIBLE WITHOUT MORE.

6        BUT HIM GETTING ON THE STAND AND BEING ASKED ABOUT A

7   SCHEME, IF ONE EXISTED, AND HIS KNOWLEDGE OF A SCHEME, WOULD

8   NOT BE RELEVANT AT THIS POINT, MR. SCHAINBAUM.  I WOULD SUSTAIN

9   A RELEVANCE OBJECTION.  I'M JUST TELLING YOU THAT FOR YOUR

10   PURPOSES.

11        MR. SCHAINBAUM:  RIGHT.  AND THE DIFFICULTY I HAVE

12   IS THAT I DON'T HAVE ENOUGH INFORMATION BECAUSE SUDDENLY AFTER

13   TALKING TO HIM FOR A WHILE AFTER WE FOUND HIM, AFTER WE GO FIND

14   HIM, HE PUT US OFF AND THE NEXT THING WE RECEIVED WAS AN E-MAIL

15   FROM LARRY HILL SAYING HE WASN'T GOING TO PERMIT ANY MORE

16   INTERVIEWS AND WOULD I WITHDRAW THE SUBPOENA.

17        I THINK I BROUGHT THAT UP TO THE COURT.

18        THE COURT:  YES, I THINK WE HAD THAT DISCUSSION.

19        MR. SCHAINBAUM:  AND THEN I THINK I PRODUCED A

20   LETTER.

21        THE COURT:  YOU DID.

22        MR. SCHAINBAUM:  THAT SORT OF IMPEACHES

23   MR. O'HAGAN'S LACK OF KNOWLEDGE TO SHOW THAT HE DOES HAVE

24   KNOWLEDGE BECAUSE HE USED ONE OF THE KEY TERMS OF THE SCHEME.

25        THE COURT:  AGAIN, IT WOULD HAVE TO GET BACK TO ONE

1        OF THE WITNESSES, EITHER MS. KATJU OR MS. KUMAR, WHO TESTIFIED.

2        NOW, IF YOU HAVE THAT NEXUS, SHE COULD -- EXCUSE ME -- HE COULD

3        TESTIFY AS TO IMPEACHMENT AS TO THOSE TWO WITNESSES.

4                    MR. SCHAINBAUM:  RIGHT.  AND AS TO --

5                    THE COURT:  SO WITHOUT THAT, AS I HAVE SAID, I'M NOT

6        GOING TO PERMIT HIM TO TESTIFY ABOUT THE SCHEME.  I DON'T FIND

7        THAT RELEVANT AT THIS POINT.

8                    MR. SCHAINBAUM:  THE NEXT WITNESS, BASANT KEDIA, I

9        BELIEVE, DOES HAVE KNOWLEDGE OF VANDANA KATJU AND THE SCHEME

10       AND IT'S MEMORIALIZED IN THIS TRANSCRIPT OF THE RECORDING THAT

11       WE PROVIDED TO THE COURT.

12                   MS. SISKIND:  AND ON THAT POINT I WOULD DIRECT THE

13       COURT TO THE STATEMENT THAT MR. KEDIA MAKES IN THAT RECORDING

14       SAYING WHAT HE KNOWS -- HE USES THE WORD "RUMOR."  HE KNOWS

15       THINGS BASED ON RUMOR.

16           SO HE KNOWS WHO VANDANA KATJU IS.  I THINK THERE'S NO

17       DOUBT ABOUT THAT.  BUT I DON'T BELIEVE THERE'S ANYTHING IN THAT

18       RECORDING WHERE HE WAS A PARTY TO A CONVERSATION WHICH

19       VANDANA KATJU WAS GIVING ANY ADVICE OR ANYTHING OF THAT NATURE.

20           I THINK AT ONE POINT MR. MATHEW KEEPS TRYING TO BAIT HIM

21       AND SAYING YOU HAVE HEARD THIS, YOU HAVE HEARD THAT, HAVEN'T

22       YOU?  AND THEN AT ONE POINT HE SAYS I HEARD THINGS THROUGH

23       RUMOR FROM OTHER CLIENTS, BUT I DON'T BELIEVE THERE'S ANYTHING

24       IN THAT TAPE THAT SUPPORTS HIM HAVING PERSONAL KNOWLEDGE OF THE

25       CONDUCT OR STATEMENTS OF MS. KATJU OR MS. KUMAR.

```
 1            MR. SCHAINBAUM:  I BELIEVE HE'S KNOWLEDGEABLE

 2     BECAUSE HE WOULD -- AGAIN, IT'S SORT OF HE WASN'T IN THE NRI --

 3     WHAT DO YOU CALL IT? -- REPRESENTATIVE OFFICE, BUT HE, FROM HIS

 4     POSITION, HE HAD KNOWLEDGE.  PARTICULARLY THERE'S ONE PART

 5     WHERE HE SAYS I WAS GOING TO HAVE A WEALTH MANAGEMENT

 6     CONFERENCE WITH A CLIENT TO GET THEM TO INVEST WHEN THEY CALLED

 7     US AND SAID NRI'S STRATEGY SAID THAT THEY WERE GOING TO GO

 8     ELSEWHERE AND PUT THEIR DOLLARS ELSEWHERE.

 9            OUTSIDE OF THAT, HE'S ALSO MARRIED TO NEHA SINGHAL, WHO

10     HAS KNOWLEDGE BECAUSE SHE WAS IN THE NRI STRATEGY AND CAME OUT

11     HERE.  SO THAT'S THE EXTENT OF MY KNOWLEDGE RIGHT NOW BECAUSE

12     IT'S VERY DIFFICULT WHEN ALL OF A SUDDEN YOU'RE TALKING TO

13     SOMEONE AND THEY CUT YOU OFF, NOT LIKE THE GOVERNMENT, AND THEY

14     GO GET THE SAME COUNSEL THAT VANDANA KATJU HAS, THAT

15     AARTI KUMAR HAS, AND THAT DOMINIC O'HAGAN HAS.

16            SO WE HAVE ONE LAWYER REPRESENTING FOUR PEOPLE AND I'M

17     UNABLE TO BE MORE HELPFUL THAN THAT, YOUR HONOR.  I'M SORRY.

18            THE COURT:  NO.  I APPRECIATE YOUR EFFORTS, BUT I

19     JUST REITERATE WHAT I HAVE INDICATED PREVIOUSLY IN OUR

20     CONVERSATIONS ABOUT MR. O'HAGAN.

21            MR. SCHAINBAUM:  SO THAT BRINGS US TO THE

22     HOUSEKEEPING PROBLEM.  I MEAN, YOU KNOW, WE HAVE A JURY COMING

23     AT 9:30, AND WE WANT TO HAVE SOME TESTIMONY.

24            SO THE MOST LOGICAL TESTIMONY IS TO HAVE THAT OF

25     MR. MATHEW, AND WE WOULD HOPE THAT THE GOVERNMENT WOULD GET
```

1    SOME KIND OF A TEMPORARY OKAY ON IMMUNITY AND THEN WE CAN

2    PROCEED.

3              THE COURT:  IN THE ABSENCE OF THAT, DO YOU HAVE ANY

4    OTHER EVIDENCE TO OFFER TOMORROW?

5              MR. SCHAINBAUM:  THERE WOULD BE -- WELL, MARK

6    MATTHEWS WILL BE COMING.  THE QUESTION IS WHEN DOES HE ARRIVE

7    ON TUESDAY?

8         WE DO HAVE THE PROBLEM WITH DAN REEVES WHO OBTAINED THE

9    JOHN DOE SUMMONS AND HAS A DECLARATION THAT HAS BEEN IN

10   QUESTION.

11             THE COURT:  I INVITE YOU TO RECALL MY COMMENTS ABOUT

12   THE HEARSAY ISSUE AND THE DOUBLE AND, PERHAPS, TRIPLE HEARSAY

13   ABOUT THAT.

14             MR. SCHAINBAUM:  YEAH, I HAVE THAT.  AND ONE WAY

15   AROUND THAT IS TO, BECAUSE IT'S IN THIS COURTHOUSE, TO CERTIFY

16   THE DECLARATION AND PUT IT IN THE RECORD AS A PUBLIC RECORD.

17   SO I WOULD DO THAT.

18        BUT THAT STILL DOESN'T GET US TESTIMONY, AND WHAT WE'RE

19   LOOKING FOR IS SOME TESTIMONY.

20             THE COURT:  MS. SISKIND, DID YOU WANT TO BE HEARD ON

21   SOMETHING?

22             MS. SISKIND:  ONLY THAT THESE ISSUES WITH THESE

23   WITNESSES WE HAVE BEEN DISCUSSING FOR MONTHS, AND THE COURT HAS

24   PREVIEWED THE COURT'S RULINGS ON IT FOR MONTHS.  AND I FIND IT

25   INCREDIBLE THAT THE DEFENSE DOESN'T HAVE ANY RELEVANT WITNESSES

1    TO TESTIFY GIVEN THAT THEY HAVE KNOWN ABOUT THE COURT'S IDEAS

2    ABOUT THESE WITNESSES FOR SOME TIME NOW.  IT'S NOT LIKE THIS IS

3    THE FIRST TIME THIS MORNING THAT WE HAVE OBJECTED TO THESE

4    WITNESSES.

5            THE COURT:  SO, MR. SCHAINBAUM, ANY OTHER WITNESSES

6    THAT YOU COULD CALL TOMORROW?

7            MR. SCHAINBAUM:  WELL, WE COULD CALL THE SUMMARY

8    WITNESS OUT OF TURN MR. LAFFER.

9            THE COURT:  I GUESS WHAT I'M INQUIRING, AND THE

10   REASON I'M DOING THIS IS TO TELL YOU THAT YOU ALL HEARD ME TO

11   INVITE THE JURY TO COME AT 9:30 TOMORROW MORNING.

12           MR. SCHAINBAUM:  CORRECT.

13           THE COURT:  AND THEY'RE COMING TO HEAR EVIDENCE, AND

14   I WANT TO MAKE SURE YOU HAVE SOMETHING TO OFFER THEM, AND IT'S

15   YOUR TURN.

16           MR. SCHAINBAUM:  YES, AND I WANT TO MAKE SURE I DO

17   AS WELL.  SO MY PREFERENCE IS TO HAVE MR. MATHEW, YAKUB MATHEW,

18   TO TESTIFY.

19           THE COURT:  ASSUMING THAT'S NOT GOING TO COME TO

20   FRUITION, AND WE TAKE MS. SISKIND ON HER WORD THAT WHEN WE

21   FINISH HERE SHE'S GOING TO USE ALL OF HER BEST EFFORTS TO

22   ACCOMPLISH THAT.

23           MS. SISKIND:  IT'S ALMOST 3:00 P.M. ON THE EAST

24   COAST.

25           MR. SCHAINBAUM:  SO WHAT WE WOULD DO IS WE WOULD

1      PROBABLY THEN CALL MR. LAFFER.  HE'S A SUMMARY WITNESS.

2      BECAUSE I DON'T BELIEVE THAT THERE'S ANYTHING HERE THAT HE

3      CAN'T TESTIFY ABOUT.

4              THE COURT:  ALL RIGHT.

5              MR. SCHAINBAUM:  AND THAT WOULD BE A LENGTHY

6      WITNESS.  AND THEN AS A RESULT OF THAT --

7              MS. SISKIND:  THAT WOULD GIVE US PLENTY OF TIME TO

8      RESOLVE THE YAKUB MATHEW ISSUE.

9              THE COURT:  YES, IT SOUNDS LIKE IT.

10             MS. SISKIND:  I WANT TO HAND UP ONE THING TO THE

11     COURT.

12             THE COURT:  YES.

13             MS. SISKIND:  MARK MATTHEWS, WHO IS THE EXPERT

14     TESTIFY WHO WILL BE TESTIFYING NEXT OR AT SOME TIME SOON, THE

15     COURT MAY RECALL THAT WE HAD A HEARING ON APRIL 5TH, OF THIS

16     YEAR WHERE THE COURT ADDRESSED A MOTION IN LIMINE WE FILED AS

17     TO SOME OF THE PROPOSED TOPICS OF HIS TESTIMONY.

18         I HAVE A COPY OF THE PORTION OF THE TRANSCRIPT WHERE THE

19     COURT ACTUALLY MADE SOME ACTUAL RULINGS ABOUT WHAT HE COULD OR

20     COULD NOT TESTIFY TO, AND I'LL HAND THAT TO THE DEFENSE, AND

21     FOR THE COURT'S REFERENCE ABOUT WHAT WAS ALREADY RULED ON SO WE

22     DON'T HAVE TO DISCUSS IT AGAIN.

23             MR. SCHAINBAUM:  WELL, WE DO HAVE TO DISCUSS IT,

24     YOUR HONOR, BECAUSE PRIOR TO GIVING IMMUNITY TO VANDANA KATJU

25     AND AARTI KUMAR AND OPENING THE DOOR ON OVDI, BECAUSE I THINK

1      SOMEWHERE IN HERE YOU TALKED ABOUT, HOWEVER, IF THE GOVERNMENT

2      OPENS THE DOOR, THERE WOULD BE A DIFFERENT KIND OF TESTIMONY.

3          THIS IS A DIFFERENT CASE THAN IT WAS WHEN THIS TRANSCRIPT

4      AND WHEN WE WERE HERE.  AND I FEEL STRONGLY ABOUT THIS.

5              MS. SISKIND:  WELL, WE HAVE NOT RECEIVED AN UPDATED

6      EXPERT NOTIFICATION.  THE ONLY EXPERT NOTICE THAT WE EVER

7      RECEIVED IS THE ONE WE ADDRESSED AT THIS HEARING, THE

8      NONPROSECUTION AGREEMENT REFERENCED TO IN MAY.

9          IF THERE IS SOME OTHER ADDITIONAL TOPIC OF EXPERT

10     TESTIMONY THAT THEY INTEND TO ELICIT, WE SHOULD HAVE NOTICE OF

11     IT TODAY.

12             MR. SCHAINBAUM:  WE INTEND TO ELICIT EVERYTHING THAT

13     WAS OPENED ON THE DOOR BY PUTTING UP TWO WITNESSES AND GOING ON

14     DIRECT EXAMINATION ON THE NONPROSECUTION AGREEMENT, ON OVDI, ON

15     AMENDED TAX RETURNS.

16             THE COURT:  SO I THINK YOU SHOULD PROBABLY PUT

17     SOMETHING IN WRITING SINCE YOU HAVE THE REST OF THE DAY TODAY,

18     AND WE'LL MEET TOMORROW AT 8:30 A.M.

19             MR. SCHAINBAUM:  WE WILL.

20             MS. SISKIND:  AND WE'LL NEED TO ADDRESS THOSE

21     BECAUSE I THINK OVDI AND NONPROSECUTION AGREEMENT, WHETHER

22     RELEVANT OR NOT, IS NOT AN APPROPRIATE TOPIC FOR EXPERT

23     TESTIMONY, AND WE CAN ADDRESS THAT TOMORROW MORNING.

24             THE COURT:  AND WE'LL HAVE THAT CONVERSATION AT

25     8:30.

1           MR. SCHAINBAUM:  I MEAN, THAT'S A PROCEDURE.  THAT'S

2     A REALLY KNOWN PROCEDURE.

3           THE COURT:  AND WE'LL TALK A PROCEDURE HERE AS WE'RE

4     GOING TO RECESS FOR THE DAY, AND WE'LL TALK ABOUT THIS AT 8:30

5     TOMORROW MORNING AND I INVITE YOUR WRITTEN --

6           MR. SCHAINBAUM:  WE WILL DO THAT.  WE WILL BECAUSE I

7     FEEL STRONGLY ABOUT THIS.

8           THE COURT:  OKAY.  GOOD.  ANYTHING FURTHER?

9           MS. SISKIND:  NO, YOUR HONOR.

10          MR. SCHAINBAUM:  ONLY ONE THING BEFORE I GO.  WE

11    RESERVE THE RIGHT IF MARK MATTHEWS SHOWS UP EARLIER THAN, YOU

12    KNOW, THAN I ANTICIPATE, TO PUT HIM ON FIRST.  I WANT TO GIVE

13    THEM NOTICE.

14          MS. SISKIND:  WELL, EITHER MR. LAFFER OR

15    MR. MATTHEWS WILL BE THE FIRST WITNESS.  EITHER ONE WE'LL BE

16    PREPARED FOR.

17          MR. WEINSTEIN:  JUDGE, MAY I ASK A QUESTION?

18          THE COURT:  YES.

19          MR. WEINSTEIN:  I DON'T MEAN TO GET IN BETWEEN THE

20    TWO HERE.

21          THE COURT:  PLEASE, APPROACH.

22          MR. WEINSTEIN:  PERHAPS THE GOVERNMENT COULD CHECK

23    WITH THE INDIVIDUALS BACK AT THE DEPARTMENT OF JUSTICE IN

24    WASHINGTON, WHO ARE WELL AWARE OF THIS SITUATION OUT HERE IN

25    CALIFORNIA, AND WHO ARE WELL AWARE OF MR. MATTHEWS'S SITUATION,

```
1        AND WHO HOPEFULLY HAVE MAYBE ADVANCED THINGS OVER THE WEEKEND

2        AND THEY CAN MOVE THINGS QUICKLY BECAUSE MR. MATTHEWS IS

3        OBVIOUSLY AWAY FROM HIS JOB IN THE NEW YORK CITY AREA.  AND I

4        WOULD JUST ASK THAT ALL CONSIDERATION BE GIVEN TO HIM

5        INTERNALLY AT THE JUSTICE DEPARTMENT TO TRY TO HAVE HIS

6        TESTIMONY PROVIDED AS QUICKLY AS POSSIBLE.

7                  THE COURT:  OKAY.  MS. SISKIND.

8                  MR. WEINSTEIN:  MAYBE SHE CAN REPORT BACK.

9                  THE COURT:  AND YOU HAVE CONTACT INFORMATION?

10                 MS. SISKIND:  FOR MR. WEINSTEIN?

11                 THE COURT:  YES.

12                 MR. WEINSTEIN:  YES.  SHE'S BEEN VERY HELPFUL.

13                 THE COURT:  YOU CAN KEEP HIM POSTED ABOUT THAT.

14       THAT WILL BE HELPFUL IF THAT COMES --

15                 MS. SISKIND:  I MEAN, I HAVE TO ACTUALLY WRITE A

16       MEMO TO THE CRIMINAL DIVISION TO THE DEPARTMENT OF JUSTICE TO

17       SEEK AUTHORIZATION.  IT'S A FORMAL PROCESS.  IT'S NOT INFORMAL

18       AT ALL AS THE COURT MAY IMAGINE.

19                 THE COURT:  IT'S NOT A PHONE CALL.

20                 MS. SISKIND:  AND IT'S A FORM I HAVE TO FILL OUT AND

21       HAVE IT SUBMITTED, AND THEN WE'LL HAVE IT SUBMITTED THIS

22       AFTERNOON AND I DON'T CONTROL THE PROCESS AFTER THAT.

23                 MR. SCHAINBAUM:  I HAVE AN URGE TO SPEAK ON THAT,

24       BUT I'M NOT.

25                 THE COURT:  I APPRECIATE YOUR RESTRAINT, BUT I'M
```

1664

1     ALWAYS HAPPY TO HEAR YOU.

2              MR. WEINSTEIN:  THANK YOU, JUDGE.

3              MS. SISKIND:  THANK YOU, YOUR HONOR.

4              MR. ALLEN:  THANK YOU, YOUR HONOR.

5              THE COURT:  YOU'RE WELCOME.

6         (COURT CONCLUDED AT 11:50 A.M.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                         CERTIFICATE OF REPORTER

4

5

6

7        I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8   STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9   280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10  CERTIFY:

11       THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12  A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13  ABOVE-ENTITLED MATTER.

14

15
                            _____
16                          IRENE RODRIGUEZ, CSR, CRR
                            CERTIFICATE NUMBER 8076
17

18
                            DATED:  SEPTEMBER 23, 2013
19

20

21

22

23

24

25